## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| NORTH FORK WIND, LLC; GARNET A. ANDERSON; CHARLES L.M. ANDERSON; HELEN CARLSON; MARDELL HOCHSTEIN; MARVIN HOCHSTEIN; ELDON KRONBERG; PATRICIA KRONBERG; RANDALL REPENNING; DEAN STUECKRATH; STEPHANIE STUECKRATH; ANGELA WAMBERG; and DAN WAMBERG, | Case No. _____ |
| Plaintiffs | |
| vs. | |
| KNOX COUNTY, NEBRASKA; THE KNOX COUNTY BOARD OF SUPERVISORS; THE KNOX COUNTY PLANNING COMMISSION; MARTY O'CONNOR; PATRICK J. LISKA; JAMES SOKOL, JR.; KEVIN MACKEPRANG; DANNY SCHOLTE; and JIM BORGMANN, in their official capacities as KNOX COUNTY SUPERVISORS; KELSY JELINEK, KNOX COUNTY ZONING ADMINISTRATOR; DOUG DESHAZER; DEAN WILKEN, ROBERT GANZ, NEIL CLAUSEN; ROBERT LARSEN; JIM KOTROUS; KEITH NIELSEN; GREG KUHLMAN; and DAVID A. ARENS in their official capacities as Members of the KNOX COUNTY PLANNING COMMISSION, | **COMPLAINT** |
| Defendants. | |

## **INTRODUCTION**

1.      This action seeks declaratory, injunctive, and monetary relief necessitated

by Knox County, Nebraska's sudden, arbitrary, and targeted more-than-three-fold

increase of its setback limits from non-participating dwellings for windfarm developments, with the intention of banning wind energy as a viable enterprise in Knox County and precluding Plaintiff, North Fork Wind, LLC ("North Fork Wind"), from completing the North Fork Wind Project ("Wind Farm"), a planned state-of-the-art 600-megawat commercial wind energy conversion system ("CWECS"), that had been under development for years and in which North Fork Wind had invested millions, all with the full knowledge of Knox County's Board of Supervisors, Planning Commissioners, and Zoning Administrator.

2.    Plaintiffs Garnet A. Anderson, Charles L.M. Anderson, Helen Carlson, Mardell Hochstein, Marvin Hochstein, Eldon Kronberg, Patricia Kronberg, Randall Repenning, Dean Stueckrath, Stephanie Stueckrath, Angela Wamberg, and Dan Wamberg (collectively, the "Landowners") entered into contracts with North Fork Wind, in the form of leases and easements, granting North Fork Wind the right to use their property for the Wind Farm in exchange for escalating rents as the Wind Farm is built and operated.

3.    Knox County, through the actions of its Zoning Administrator, Planning Commission, and Board of Supervisors adopted commercially reasonable zoning regulations for CWECS in November of 2023, with public notice and opportunities for the public to comment (the "2023 Zoning Resolution").

4.    In early 2024, Michael Kumm, and certain individuals who refer to themselves as the "Wind Watchers," among others, organized opposition to the Wind Farm by proposing a slate of new CWECS amendments. The unequivocal goal of the proposed amendments was to prohibit or otherwise prevent North Fork Wind's construction of the Wind Farm in Knox County.

5.      On July 24, 2024, the Knox County Board of Supervisors ("Board") voted 5-1 to adopt a 1.25-mile (6,600 feet) setback for wind turbines from non-participating dwellings, well beyond the prior setback of 2,000 feet. Also on that date, the Board adopted a new requirement that North Fork Wind obtain a security bond for decommissioning the Wind Farm in an amount to be determined by the Board, in their sole discretion, and that North Fork Wind must have Knox County added as an additional insured on North Fork Wind's policies for the Wind Farm (collectively, the 1.25-mile setback, bond, and insurance requirements are the "Amendments").

6.      As set forth below, Defendants adopted the Amendments to prevent North Fork Wind's and the Landowners' (collectively, the "Plaintiffs") constitutionally protected use of their property in Knox County for the Wind Farm. Plaintiffs require judicial intervention to remedy the violation of their federal and state law rights, including the Contracts Clause and the Fifth and Fourteenth Amendments of the U.S. Constitution, corollary provisions of the Nebraska Constitution, 42 U.S.C. § 1983, and 28 U.S.C. § 2201.

## THE PARTIES

7.      Plaintiff North Fork Wind is a limited liability company organized under the laws of Delaware, authorized to do business in Nebraska, with its principal place of business in Bloomington, Minnesota.

8.      Plaintiff Garnet A. Anderson is a taxpayer and the owner of real property in Knox County, Nebraska.

9.      Plaintiff Charles L.M. Anderson is a taxpayer and the owner of real property in Knox County, Nebraska.

10. Plaintiff Helen Carlson is a taxpayer and the owner of real property in Knox County, Nebraska.

11. Plaintiff Mardell Hochstein is a taxpayer and the owner of real property in Knox County, Nebraska.

12. Plaintiff Marvin Hochstein is a taxpayer and the owner of real property in Knox County, Nebraska.

13. Plaintiff Eldon Kronberg is a taxpayer and the owner of real property in Knox County, Nebraska.

14. Plaintiff Patricia Kronberg is a taxpayer and the owner of real property in Knox County, Nebraska.

15. Plaintiff Randall Repenning is a taxpayer and the owner of real property in Knox County, Nebraska.

16. Plaintiff Dean Stueckrath is a taxpayer and the owner of real property in Knox County, Nebraska.

17. Plaintiff Stephanie Stueckrath is a taxpayer and the owner of real property in Knox County, Nebraska.

18. Plaintiff Angela Wamberg is a taxpayer and the owner of real property in Knox County, Nebraska.

19. Plaintiff Dan Wamberg is a taxpayer and the owner of real property in Knox County, Nebraska.

20. Defendant Knox County, Nebraska (the "County") is a county and political subdivision under the laws of Nebraska.

21.      Defendant the Knox County Board of Supervisors is the governing body and board of the County.

22.      Defendant the Knox County Planning Commission is a sub-board of the County, whose members are appointed by the Board, and who make recommendations to the Board regarding development proposals, zoning changes, and conditional use permits, among others.

23.      Defendant Marty O'Connor ("O'Connor") is a Knox County Supervisor and a citizen of Nebraska. O'Connor is sued in his official capacity as a Knox County Supervisor.

24.      Defendant Patrick J. Liska ("Liska") is a Knox County Supervisor and a citizen of Nebraska. Liska is sued in his official capacity as a Knox County Supervisor.

25.      Defendant Danny Scholte ("Scholte") is a Knox County Supervisor and a citizen of Nebraska. Scholte is sued in his official capacity as a Knox County Supervisor.

26.      Defendant Jim Borgmann ("Borgmann") is a Member of the Knox County Board of Supervisors and a citizen of Nebraska. Borgmann is sued in his official capacity as a Knox County Supervisor.

27.      James Sokol, Jr. ("Sokol") is a member of the Knox County Board of Supervisors and a citizen of Nebraska. Sokol is sued in his official capacity as a Knox County Supervisor.

28.      Kevin Mackeprang ("Mackeprang") is a Member of the Knox County Board of Supervisors and citizen of Nebraska. Mackeprang is sued in his official capacity as a Knox County Supervisor.

29.    Defendant Kelsy Jelinek ("Jelinek") is the Knox County Zoning Administrator and a citizen of Nebraska. Jelinek is sued in her official capacity as a Knox County Zoning Administrator.

30.    Defendant Doug DeShazer ("DeShazer") is a Knox County Planning Commissioner and a citizen of Nebraska. DeShazer is sued in his official capacity as a Knox County Planning Commissioner.

31.    Defendant Dean Wilken ("Wilken") is a Knox County Planning Commissioner and a citizen of Nebraska. Wilken is sued in his official capacity as a Knox County Planning Commissioner.

32.    Defendant Robert Ganz ("Ganz") is a Knox County Planning Commissioner and a citizen of Nebraska. Ganz is sued in his official capacity as a Knox County Planning Commissioner.

33.    Defendant, Neil Clausen ("Clausen") is a Knox County Planning Commissioner and a citizen of Nebraska. Clausen is sued in his official capacity as a Knox County Supervisor.

34.    Defendant Robert Larsen ("Larsen") is a Knox County Planning Commissioner and a citizen of Nebraska. Larsen is sued in his official capacity as a Knox County Planning Commissioner.

35.    Defendant Jim Kotrous ("Kotrous") is a Knox County Planning Commissioner and a citizen of Nebraska. Kotrous is sued in his official capacity as a Knox County Planning Commissioner.

36.    Defendant Keith Nielsen ("Nielsen") is a Knox County Planning Commissioner and a citizen of Nebraska. Nielsen is sued in his official capacity as a Knox County Planning Commissioner.

37.    Defendant Greg Kuhlman ("Kuhlman") is a Knox County Planning Commissioner and a citizen of Nebraska. Kuhlman is sued in his official capacity as a Knox County Planning Commissioner.

38.    Defendant David Ahrens ("Ahrens") is a Knox County Planning Commissioner and a citizen of Nebraska. Ahrens is sued in his official capacity as a Knox County Planning Commissioner.

<u>**JURISDICTION AND VENUE**</u>

39.    This action arises under the laws of the United States thereby conferring subject matter jurisdiction on this Court pursuant to 28 U.S.C. §§ 1331 and 1443 because Counts I through IV arise under federal law, specifically under 42 U.S.C. § 1983, and the United States Constitution.

40.    This Court has supplemental jurisdiction over the remaining state law claims in Count V under 28 U.S.C. § 1367(a). *See, e.g.*, *Country Club Ests., L.L.C. v. Town of Loma Linda*, 213 F.3d 1001, 1003 (8th Cir. 2000); *Cottrell v. Duke*, 737 F.3d 1238, 1244 (8th Cir. 2013) (internal citation omitted) (acknowledging that federal courts have a "virtually unflagging . . . obligation to exercise the jurisdiction given them.").

41.    This Court is further authorized to issue the declaratory and injunctive relief requested under 28 U.S.C. §§ 2201–2202 and Rules 57 and 65 of the Federal Rules of Civil Procedure.

42.     Venue in this Court is proper pursuant to 29 U.S.C. § 1391(b). All acts complained of herein occurred within this judicial district.

## **BACKGROUND**

43.     North Fork Wind is a wholly owned subsidiary of National Grid Renewables Development, LLC ("NG Renewables"), an experienced developer of renewable energy Wind Farms throughout the United States, having developed thirteen (13) wind projects totaling over 2,200 megawatts located across six (6) states, including Nebraska, and are currently operating three (3) of the developed facilities.

44.     Since at least 2017, North Fork Wind has been carefully developing the Wind Farm, a state-of-the-art commercial CWECS to be constructed in Knox County.

45.     By the time the Board voted on July 24, 2024, North Fork Wind had entered into agreements with landowners in Knox County covering more than 45,000 acres of land, through which North Fork Wind had secured property rights in the form of leases and easements for the sole purpose of constructing the Wind Farm.

46.     By the date this suit was initiated, North Fork Wind had invested over $12,183,000 developing the Wind Farm, including but not limited to:

     a. Securing its place in the queue with the Southwest Power Pool ("SPP"), the independent, not-for-profit regional transmission organization that operates under the regulatory authority of the Federal Energy Regulatory Commission ("FERC") to coordinate, control, and monitor the use of the electric transmission system and manage the flow of high-voltage electricity across multiple U.S. states. To secure its queue positions for the

Wind Farm, North Fork Wind posted financial security deposits in the total amount of $16,765,072, of which $7,791,268 is nonrefundable.

b.  Over $1,568,502 in lease and easement payments to landowners; and

c.  Over $1,000,000 performing analyses needed to develop a Wind Farm layout that complied with the 2023 Zoning Resolution and prepare associated permit applications.

47.  The Wind Farm is anticipated to bring over $5,800,000 in payments to landowners per year (over $115,000,000 in payments to landowners over 20 years), $2,820,000 per year in tax revenue for Knox County ($56,000,000 over 20 years), $150,000 per year in donations to the local charitable fund ($3,000,000 over 20 years) millions of dollars in new tax revenue, and temporary and permanent jobs to Knox County — tangible benefits to the local economy that will multiply over time.

48.  The total value of the Wind Farm is over $1,300,000,000.

49.  The Wind Farm will also provide clean, renewable energy to the electrical grid in Nebraska, consistent with bipartisan state and federal policy. *See, e.g.*, 26 U.S.C. § 45 (providing a federal tax incentive for renewable energy production); *Neb. Rev. Stat.* § 66-901, which states:

> The Legislature hereby finds and declares that the use of … wind energy in Nebraska: (1) Can help reduce the nation's reliance upon irreplaceable domestic and imported fossil fuels; (2) can reduce air and water pollution resulting from the use of conventional energy sources; (3) requires effective legislation and efficient administration of state and local programs to be of greatest value to its citizens; and (4) is of such importance to the

public health, safety, and welfare that the state should take appropriate action to encourage its use. … As the use of … wind energy devices increases, the possibility of future shading and obstruction of such devices by structures or vegetation will also increase. The Legislature therefor declares that the purpose of sections 66-901 to 66-914 is to promote the public health, safety, and welfare by protecting access to … wind energy as provided in sections 66-901 to 66-914.

50.     In 2020, the Board adopted a Comprehensive Plan, which expressly affirmed Knox County's support for CWECS, and, specifically, the Wind Farm. A true and correct copy of the Comprehensive Plan, as found on Knox County's official website, is attached as **Exhibit A**.

51.     On or about November 15, 2023, the Board adopted a Zoning Resolution with, among other regulations specific to CWECS, a two thousand-foot setback from non-participating dwellings for commercial wind turbines, and a decommissioning plan. A true and correct copy of the 2023 Zoning Resolution, as found on Knox County's official website, is attached as **Exhibit B**.

52.     The express purpose of the Comprehensive Plan and the 2023 Zoning Resolution is to promote the public health, safety, and general welfare; preserve and protect agricultural land uses; promote opportunities for rural residents; support increased renewable energy production; and establish guidelines for the siting, construction, and operation of CWECS.

53.     Specifically, the 2023 Zoning Resolution states at Article 8, §§ 8.08.01 and 8.08.02:

It is the purpose of this regulation to promote the safe, effective, and efficient use of commercial/utility grade wind energy systems within Knox County. … Knox County finds that wind energy is an abundant, renewable, and non-polluting energy resource. The County, through this regulation, will permit Commercial/Utility Grade Wind Energy Systems so that this clean, renewable energy resource can be utilized in a cost-effective and timely manner. (Ex. B).

54.    The 2023 Zoning Resolution further requires an applicant seeking a conditional use permit to site and construct a CWECS in Knox County to provide certain information and documents in their application, including, the following:

a.  The name(s) of project applicant.

b.  The name of the project owner.

c.  The legal description and address of the project.

d.  A description of the project including number, type, name plate generating capacity, tower height, rotor diameter, and total height of all wind turbines and means of interconnecting with the feeder lines.

e.  Site layout, including the location of property lines, wind turbines, electrical grid, and all related accessory structures. This site layout shall include distances and be drawn to scale.

f.  Engineer's certification.

g.  Documentation of land ownership or legal control of the property.

h.  The latitude and longitude of individual wind turbines.

i.   A USGS topographical map, or map with similar data, of the property and surrounding area, including any other CWECS not owned by the applicant, within 10 rotor distances of the proposed CWECS.

j.   Location of wetlands, scenic, and natural areas (including bluffs) within 1,320 feet of the proposed CWECS.

k.   An Acoustical Analysis that certifies that the noise requirements within this regulation can be met.

l.   FAA and NDA review and permit shall be provided to the County once completed. Any action by the County shall be contingent upon FAA and NDA approval and construction shall not begin until said approval is received.

m.  Location of all known Communication Towers within two miles of the proposed CWECS.

n.   Decommissioning Plan including the financial means to implement the plan.

o.   Description of potential impacts on nearby CWECS and wind resources on adjacent properties not owned by the applicant.

(*Id*., § 8.08.04).

55.   The 2023 Zoning Resolution was adopted after multiple meetings of the Knox County Planning Commission, and the Board, each with advance notice to the public, and an opportunity to provide public comments. North Fork Wind attended at least one of the public meetings specific to the 2023 Zoning Resolution, and provided public comment as to the CWECS regulations.

56.     From as early as 2017, North Fork Wind representatives have regularly attended and provided public comments about the Wind Farm and the CWECS regulations to the Planning Commission and the Board, both during open public comments, and as a publicly-noticed agenda item.

57.     Following Knox County's adoption of the 2023 Zoning Resolution, North Fork Wind continued developing the Wind Farm and acquiring additional land rights in preparation for submitting a conditional use permit application to Knox County.

58.     To ensure that North Fork Wind would obtain all necessary approvals from Knox County, it had to perform:

a.  Initial geotechnical and engineering analyses required to determine proposed wind turbine sites and a proposed Wind Farm layout;

b.  File notices of proposed construction with the FAA in connection with each of the proposed 150-plus turbine sites;

c.  Commission site-specific analyses by qualified experts, including a sound study to determine anticipated maximum sound levels at non-participating residences throughout the Wind Farm footprint, a study to determine anticipated impacts to microwave communications paths and electromagnetic communications, and environmental analyses to determine any significant migratory flyways and nesting areas for federally listed birds, bats, or endangered species within one mile of the proposed Wind Farm site; and

d.  Obtain a general liability insurance policy covering bodily injury and property damage in accordance with industry standards, North Fork Wind

internal requirements, and the terms of the lease agreements with Wind Farm landowners.

59.     In addition to the development activities that were necessary to address the requirements of the 2023 Zoning Resolution, and the costs set forth in Paragraph 46, North Fork Wind continued performing other development activities necessary to developing and operating the Wind Farm.

60.     Similarly, North Fork Wind applied, received a permit from Knox County for, and subsequently constructed meteorological towers ("MET") to gather the wind data needed to design the site layout for the Wind Farm.

61.     North Fork Wind further hired qualified consultants to address other topics it believed might be of interest to residents of Knox County or the Supervisors themselves, including anticipated shadow flicker at non–participating residences, anticipated economic and tax impacts, commonly asked questions about health impacts, and the potential impact on local property values.

62.     On or about May 2, 2024, the Zoning Administrator received a request for amendments to the 2023 Zoning Resolution from Michael Kumm and a group calling itself the "Wind Watchers" (collectively, "Wind Energy Opponents"). A true and correct of copy of the proposed amendments is attached as **Exhibit C**.

63.     The requested amendments included, in relevant part:

a. A two-mile (10,560 feet) setback from non-participating dwellings for commercial wind turbines;

b. Escrowed funds to cover the entire cost of decommissioning; and

c. Insurance in the amount of five million dollars ($5,000,000.00) per tower.

64.     On or about May 7, 2024, the Zoning Administrator transmitted her report on the Wind Energy Opponents' proposed amendments to the Planning Commissioners, which expressly referenced North Fork Wind, and their efforts to develop the Wind Farm in Knox County as a preface to the list of proposed amendments. A true and correct copy of the Zoning Administrator's report to the Planning Commission is attached as **Exhibit D**.

65.     The Planning Commissioners convened a meeting on May 14, 2024 to hear public comment on each of the Wind Energy Opponents' proposed amendments, even though the meeting notice and agenda did not include the text of the proposed changes.

    a.  Public comments in favor of the amendments included:

        i.   A false description of the wind turbines for the Wind Farm as more than double the height of the turbines for another local CWECS Wind Farm;

        ii.  Negative feelings about viewing CWECS;

        iii. Anger over lack of payments to non-participating landowners beyond the Wind Farm's planned location within Knox County;

        iv.  Specific, negative feelings about what the Wind Farm would look like once built;

        v.   Specific, negative feelings that the Wind Farm will cause people to move out of Knox County, and others to choose not to move to Knox County;

        vi.  Baseless and incorrect analyses of the operation of the nameplate capacity tax and its impact on public school funding;

vii.   Baseless and incorrect statements that Knox County is liable for decommissioning the Wind Farm;

viii.  Baseless and incorrect statements that North Fork Wind will not pay for county road upgrades for the Wind Farm;

ix.    References to Wind Energy Opponents' false online statements about CWECS turbines causing cancer;

x.     References to Wind Energy Opponents' false online statements about CWECS turbines causing adverse outcomes for pregnant livestock; and

xi.    References to Wind Energy Opponents' false online statements about CWECS turbines causing lower property valuations.

b.  North Fork Wind representatives, landowners with Wind Farm leases, including certain of the Landowners, Wind Farm supporters, the Farmers Union, and other groups commented live on the record and submitted written comments in opposition to the amendments including how the proposed amendments, if adopted, would:

i.     Terminate the development of the Wind Farm;

ii.    Injure private property rights;

iii.   Impair contracts in the form of leases and easements;

iv.    Single out CWECS as the only agricultural land use to be regulated out of possibility in Knox County;

      v.    Disregard extensive state and federal permits required for the Wind Farm to protect public health, safety, welfare, and natural resources;

     vi.    Harm economic development in Knox County;

    vii.    Ignore peer-reviewed studies and stringent industry standards regarding noise, shadow flicker, tower height, blade maintenance, insurance, and decommissioning;

   viii.    Ignore freely negotiated, legally enforceable, private lease terms that already address insurance, decommissioning, rent, and crop damage for construction, operation, and maintenance of the Wind Farm on private land;

     ix.    Prevent nameplate capacity excise tax revenue, personal property taxes, and road improvements generated by the Wind Farm that would directly benefit Knox County; and

     x.    Accept as true the unfounded allegations that the Wind Farm would cause the harms stated by Wind Energy Opponents and certain of the Planning Commissioners and Board members.

66.    The Planning Commissioners tabled action on the proposed amendments until June 11, 2024.

67.    At the June 11, 2024 Planning Commission meeting, after allowing Michael Kumm to present in favor of the amendments, and limiting opposition comments, the Planning Commissioners proceeded to discuss and vote on each of the proposed amendments.

68.     Knox County did not send any direct written notice to any impacted landowner related to the proposed amendments in advance of the Planning Commissioners' meetings on May 14, 2024 and June 11, 2024.

69.     After the Planning Commissioners denied the proposed amendments, without public notice of their intended changes to the proposed amendments, and without allowing public comment on their changes, the Planning Commissioners proposed and voted in favor of recommending to the Board the following Amendments:

   a.  A 1.25-mile (6,600 feet) setback from non-participating dwellings for commercial wind turbines;

   b.  A surety bond in an amount set by the Board, in their sole discretion, to be updated every five years, to secure the cost of decommissioning;

   c.  Liability insurance in an amount determined by the Board, in their sole discretion, for the Wind Farm;

   d.  Definition of "shadow flicker"; and

   e.  Requirement for ADLS, which state law already requires.

70.     On June 11, 2024, the Board also heard public comments regarding the Wind Farm and the amendments recommended by the Planning Commission. The minutes for the meeting specifically referenced North Fork Wind and the Wind Farm. A true and correct copy of the minutes for the June 11, 2024 Board meeting, as found on Knox County's official website, is attached as **Exhibit E**.

71.     On June 21, 2024, the Board held another meeting at which it set public hearing on the proposed amendments, specifically referencing the Wind Farm. A true and

correct copy of the minutes for the June 21, 2024 Board meeting, as found on Knox County's official website, is attached as **Exhibit F**.

72.    On July 10, 2024, the Board heard public comments in favor of, and in opposition to the amendments recommended by the Planning Commission. A true and correct copy of the minutes for the July 10, 2024 Board meeting, as found on Knox County's official website, is attached as **Exhibit G**.

73.    Scott Gropp, an attorney purporting to represent Wind Energy Opponents, was among the presenters. In his presentation to the Board, Gropp expressly advocated that Knox County should adopt more than a one-mile setback to ensure that North Fork Wind would have to pay more non-participating landowners to waive the setback as a condition of the conditional use permit for the Wind Farm, bludgeoning the right of landowners, including the Landowner Plaintiffs, from the use of their property for the Windfarm without the consent of all persons within the 1.25 mile setback.

74.    On July 24, 2024, the Board held another public meeting. The public notice and agenda specifically identified the Wind Farm.  A true and correct copy of the minutes for the July 24, 2024 Board meeting, as found on Knox County's official website, is attached as **Exhibit H**. After public comment concluded, the Board proceeded to vote on the Planning Commissioners' recommended amendments.

    i.    The Board voted 5-1 in favor of a 1.25-mile (6,600 feet) setback from non-participating dwellings, the insurance requirement, and, without public comment, adopted a requirement that Knox County be listed as an additional insured on North Fork Wind's insurance policies for the construction, operation, and maintenance of the Wind Farm, even

though the Wind Farm will only be sited on private property, or property owned by entities other than Knox County.

    ii.    The Board's stated reasons for supporting the 1.25-mile setback included:

        A.  The Wind Farm's turbines were double the height of another local CWECS project;

        B.  North Fork Wind could pay to obtain waivers from the additional non-participating landowners within the extended setback range;

        C.  A Board member stated that he opposed the Wind Farm because his children did not want to look at it; and

        D.  Certain of the Board members simply trusted the recommendation of the Planning Commission.

75.    The Amendments were enacted with the express purpose of regulating North Fork Wind and the Wind Farm only. The Wind Farm is the only existing land use in Knox County, Nebraska impacted by the Amendments.

76.    The Amendments have the effect of rendering any effort of North Fork Wind to apply for a conditional use permit to site and construct a CWECS in Knox County a futile exercise, as the Amendments effectively destroy the economic viability of the Wind Farm. Any application for a conditional use permit by North Fork Wind would result in a predetermined outcome of denial.

77.    The Board's motion to adopt the 1.25-mile setback was combined with the remainder of the Planning Commission's recommended amendments, and an additional

requirement from Defendant O'Connor that North Fork Wind be required to add Knox County as an additional insured on all of its insurance policies for the Wind Farm. Defendant O'Connor's justifications for this requirement included his belief that the County should be allowed to file claims under the insurance policies for North Fork Wind's breach of agreements with landowners.

78.     The official minutes from the Board of Supervisors meeting on July 24, 2024 only state that the Board "approve[d] the recommendations of the Planning Commission on Amendments #1, #4, #6, #7 and #11 with the addition to Amendment #11 that Knox County be listed as an additional insured of the liability insurance." (Ex. H).

79.     Neither the agendas, the minutes, nor, as of the filing of this suit, the Knox County website include the text of the Amendments considered or adopted by the Board.

80.     It is the explicit policy of the State of Nebraska to encourage the development of wind energy. *See* Neb. Rev. Stat. §§ 66-901 – 66-914. The policy extends to the decisions made by Knox County. (Exs. A-B).

81.     Specifically, the 2023 Zoning Resolution states at Article 8, §§ 8.08.01 and 8.08.02:

> It is the purpose of this regulation to promote the safe, effective, and efficient use of commercial/utility grade wind energy systems within Knox County. … Knox County finds that wind energy is an abundant, renewable, and non-polluting energy resource. The County, through this regulation, will permit Commercial/Utility Grade Wind Energy Systems so that this clean, renewable energy resource can be utilized in a cost-effective and timely manner.

(Ex. B).

**COUNT I**

**Against Knox County, the Board of Supervisors, the
Zoning Administrator, and the Planning Commissioners
for Deprivation of the Constitutional Right to Just
Compensation for the Taking of Protected Property
Interests Under 42 U.S.C. § 1983**

82.    Plaintiffs reallege and incorporate by reference all allegations in this Complaint.

83.    42 U.S.C. § 1983 prohibits the deprivation of rights, privileges, or immunities secured by the United States Constitution under color of law.

84.    The Takings Clause in the Fifth Amendment of the United States Constitution, as incorporated by the Fourteenth Amendment, prohibits the taking of protected property interests without the payment of just compensation.

85.    Government action may effect a taking by regulation, ordinance, or miscellaneous decree. *Cedar Point Nursery v. Hassid*, 594 U.S. 139, 149 (2021).

86.    North Fork Wind and the Landowners have property interests entitled to constitutional protections under the Takings Clause in the form of leases and easements for land in Knox County that were entered into between North Fork Wind and the Landowners, and continue to be maintained, expressly for the sole purpose of developing the Wind Farm. North Fork Wind has over 45,000 total acres under lease and easement agreements in Knox County. A true and correct copy of the memoranda of leases for the Landowners is attached as **Exhibit I**.

87.    North Fork Wind also has a property interest entitled to constitutional protection under the Takings Clause in the form of its vested right to complete development of the Wind Farm under the 2023 Zoning Resolution by virtue of its

substantial, lawfully made expenditures developing the Wind Farm, the construction and permitting activities undertaken while developing the Wind Farm years in advance of the adoption of the Amendments, actions taken in bad faith by one or more Defendants, and/or estoppel principles.

88.     The 1.25-mile setback, based upon the record before the Planning Commissioners and the Board, and certain Defendants' statements, that an increased setback from nonparticipating dwellings is necessary to ensure that North Fork Wind must pay more money and to more residents of Knox County, as well as obtain waivers as part of the conditional use permit application for the Wind Farm, is in no way proportional to the impact of the Wind Farm on Knox County.

89.     The requirement that Knox County be added as an additional insured on all of North Fork Wind's insurance policies is based upon certain Defendants' false statements that Knox County must be covered by North Fork Wind's insurers for claims associated with the Wind Farm on private land, is in no way proportional to the impact of the Wind Farm on Knox County

90.     The Landowners have a property interest in their vested rights under their contracts with North Fork for the development of the Wind Farm on their property and the contractual expectation of a steady, predictable, and reliable income stream from North Fork Wind related to the development of the Wind Farm in Knox County.

91.     By passing the Amendments, Knox County enacted, established, or admitted an official policy and custom of Knox County resulting in the deprivation of Plaintiffs' constitutionally protected rights.

92.    Knox County acted with the knowledge that the Amendments would deprive Plaintiffs' of their property rights and intentionally passed the Amendments with deliberate indifference to the deprivation of Plaintiffs' property rights.

93.    Plaintiffs' protected property uses legally existed before the Amendments and continued after the effective date of the 2023 Zoning Resolution. *The Lamar Co., LLC v. City of Fremont,* 278 Neb. 485, 492, 771 N.W.2d 894, 902 (2009).

94.    The Planning Commissioners acted under color of law when they put the Wind Energy Opponents' requested amendments on their agenda and subsequently voted in favor of the Amendments.

95.    The Board acted under color of law when they referred to the Wind Farm and their intention to consider Amendments to the CWECS regulations on their meeting agendas, and voted in favor of the Amendments. The Amendments frustrate North Fork Wind's reasonable investment-backed  expectations concerning its protected property interests.

96.    The Amendments have neither a reasonable nexus nor rough proportionality to the Wind Farm's potential impact on Knox County.

97.    Rather, the Amendments destroy North Fork Wind's primary expectation concerning the use of its protected property interests.

98.    The Amendments deprive North Fork Wind of all economically beneficial uses of its protected property interests.

99.    The Amendments' impact on North Fork Wind's investment-based expectations and economic interests were known to Defendants and foreseeable.

100.    The Amendments deprive the Landowners of the economical, lawful use of their land, the benefits of new wind energy development in Knox County, and the benefits of their contractual rights under their leases and easements with North Fork Wind.

101.    Defendants neither paid North Fork Wind nor the Landowners just compensation for the taking and damage of their constitutionally protected property interests nor provided any forum for seeking such compensation.

102.    The Amendments do not serve a public purpose but instead contravene express federal, state, and local policies supporting renewable energy production.  *See, e.g.*, 26 U.S.C. § 45; Neb. Rev. Stat. §§ 66-901 to 66-914; (Ex. A, p. 52); (Ex. B, Article 8).

103.    By adopting, sustaining, and enforcing the Amendments, which effectively prevent the use of land in Knox County for the Wind Farm, Defendants, acting under color of state law, have deprived Plaintiffs of their constitutionally protected property interests without just compensation.

104.    The Amendments thus effected an unconstitutional taking of Plaintiffs' property interests without just compensation in violation of the Fifth and Fourteenth Amendments to the United States Constitution. *See, e.g.*, *Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 127, 136 (1978); *Horne v. Dep't of Agric.*, 576 U.S. 350, 360 (2015).

105.    By passing the Amendments, Knox County enacted, established, or admitted an official policy and custom of Knox County of depriving each of Plaintiffs of their constitutionally protected rights.

106.   Knox County and the named individual Defendants acted with the knowledge that the Amendments would deprive Plaintiffs of their property rights and deliberately passed the Amendments with deliberate indifference to the deprivation of Plaintiffs' property rights.

107.   The Amendments thus violate 42 U.S.C. § 1983 by depriving Plaintiffs of rights guaranteed by the United States Constitution.

108.   Plaintiffs therefore respectfully request that this Court enter an order finding Defendants liable under 42 U.S.C. § 1983 including (1) a declaration that the Amendments unlawfully deprived Plaintiffs of their right to just compensation for the taking of their protected property interests, (2) an injunction prohibiting Defendants from further actions that take protected property interests acquired for the Wind Farm without a public purpose or providing just compensation, (3) an award of (a) damages in the form of just compensation for the property interests taken, or (b) nominal damages in the event the Court concludes either that Plaintiffs have not proven their entitlement to compensatory damages or have proven its entitlement to (a), (4) declaratory judgment, and (5) an award of attorney fees pursuant to 42 U.S.C. § 1988.

## COUNT II

**Against Knox County, the Knox County Board of Supervisors, the Zoning Administrator, and the Planning Commissioners for Deprivation of the Constitutional Right to Procedural and Substantive Due Process Under 42 U.S.C. § 1983.**

109.   North Fork realleges and incorporates by reference all allegations in this Complaint.

110.   42 U.S.C. § 1983 prohibits the deprivation of rights, privileges, or immunities secured by the United States Constitution under color of law.

111.    The Due Process Clause in the Fourteenth Amendment of the United States Constitution prohibits state government actors from depriving anyone of protected property interests without due process of law.

112.    The constitutional guarantee of due process imposes procedural constraints on governmental decisions resulting in the deprivation of a constitutionally protected property interest.

113.    The essential elements of procedural due process require the government to provide notice and a meaningful opportunity to be heard in some form prior to any deprivation of a protected property interest. *Mathews v. Eldridge*, 424 U.S. 319, 332–33, 348–49 (1976).

114.    Nebraska law recognizes that a change of zoning ordinance or regulation that affects a specific property owner's use of, or interest in, property involves an interest for which some process is due. *Landrum v. City of Omaha Planning Board*, 899 N.W.2d 598, 614, 297 Neb. 165, 187 (Neb., 2017).

115.    North Fork Wind thus has a property interest for which process is due under the Due Process Clause in the form of the rights to use property for the Wind Farm without the restrictions contained within the Amendments, which were intentionally designed to prevent North Fork Wind from exercising its property rights.

116.    The 2023 Zoning Resolution Section 11.01(4)(B)(5-7) requires the Planning Commission to mail written notice to all owners of land within 1,000 feet of the area impacted by any proposed amendment of the Zoning Resolution. (Ex. B).

117.    The Planning Commissioners did not provide the required notice to all owners of land within 1,000 feet of the area impacted by the Amendments in direct violation of the requirements of the Zoning Resolution.

118.    The Planning Commissioners did not provide North Fork Wind and the Landowners with adequate notice and opportunity to be heard prior to enacting the Amendments.

119.    The Board did not provide North Fork and the Landowners with adequate notice and opportunity to be heard prior to enacting the Amendments.

120.    By adopting, sustaining, and enforcing the Amendments, which prevent the use of land in Knox County for the Wind Farm, with knowledge that their actions were preceded neither by notice nor an opportunity to be heard, Defendants, acting under color of state law, deprived Plaintiffs of constitutional procedural protections guaranteed by the Due Process Clause contained in the Fourteenth Amendment to the United States Constitution.

121.    By passing the Amendments, Knox County enacted, established, or admitted an official policy and custom of Knox County of depriving each of Plaintiffs of their constitutionally protected rights.

122.    Knox County and the named individual Defendants acted with the knowledge that the Amendments would deprive Plaintiffs of their due process rights and deliberately passed the Amendments with deliberate indifference to the deprivation of Plaintiffs' due process rights.

123.    The Amendments are egregious, arbitrary, discriminatory, confiscatory, and reflective of truly irrational conduct, without any rational relation to a legitimate regulatory goal, so as to shock the conscience.

124.    The Landowners and North Fork Wind have a protected property interest in their combined rights under the leases and easements for the Wind Farm; these property interests are protected by the Fourteenth Amendment.

125.    The actions of Defendants to adopt the Amendments deprived Plaintiffs of any ability to develop the Wind Farm in Knox County, and those actions had and have no rational basis. The Amendments are irrational, arbitrary, capricious, and in violation of Nebraska law. *Koscielski v. City of Minneapolis,* 435 F.3d 898, 902 (8th Cir. 2006).

126.    The Agendas and Minutes posted by Knox County on their website regarding the Amendments are vague, confusing, and difficult to comprehend, and directly contradict the Comprehensive Plan and the 2023 Zoning Resolution. Under the plain language of the Agendas and Minutes posted by Knox County on their website regarding the Amendments, it is not possible to decipher exactly what language the Amendments contain, or what the Amendments mean.

127.    The Agendas and Minutes posted by Knox County regarding the Amendments purport to forbid or require the doing of an act in terms so vague that people of common intelligence must necessarily guess at their meaning and differ as to their application, and accordingly violate the first essential element of due process of law. *International Harvester Co. v. Kentucky,* 234 U.S. 216 (1914).

128.    Plaintiffs have suffered damages due to the Amendments, including but not limited to the costs incurred to negotiate and agree upon site control through lease and

easement agreements, lost rents, lost tax revenue for Knox County services, lost benefits of wind energy development, siting, analyzing, studying, and permitting the Wind Farm under the 2023 Zoning Resolution, reputational injury, and lost profits during the resulting delay in the start of construction and commercial operations of the Wind Farm caused by Knox County's adoption of the Amendments.

129.    Plaintiffs therefore respectfully request that this Court enter an order finding Defendants liable under 42 U.S.C. § 1983 including (1) a declaration that the Amendments unlawfully deprived Plaintiffs of their right to procedural and substantive due process, (2) an injunction prohibiting Defendants from engaging in further actions depriving Plaintiffs of protected property interests without providing notice and an opportunity to be heard, (3) an award of (a) damages to compensate for the costs incurred by North Fork Wind to develop the Wind Farm in compliance with the 2023 Zoning Resolution, North Fork Wind's costs for work undertaken to develop the Wind Farm in good faith reliance on the requirements of the 2023 Zoning Resolution, the Landowners' lost rents under the lease and easement agreements with North Fork Wind, the Landowners' lost rights to land uses on their property under the 2023 Zoning Resolution, reputational injury North Fork Wind incurred when it was deprived an opportunity to be heard, and the lost profits North Fork Wind reasonably anticipated from the Wind Farm when the Amendments were adopted, or (b) nominal damages in the event the Court concludes either that Plaintiffs have not proven their entitlement to compensatory damages or has proven their entitlement to a declaratory judgment, and (4) an award of attorney fees pursuant to 42 U.S.C. § 1988.

## COUNT III

**Against Knox County, the Knox County Board of
Supervisors, the Zoning Administrator, and the Planning
Commissioners for Deprivation of the Constitutional
Right to Contract Under 42 U.S.C. § 1983.**

130.    North Fork Wind realleges and incorporates by reference all allegations in this Complaint.

131.    42 U.S.C. § 1983 prohibits the deprivation of rights, privileges, or immunities secured by the United States Constitution under color of law.

132.    Article I, Section 10 of the United States Constitution provides that "No state shall ... pass any ... law impairing the Obligation of Contracts."

133.    A violation of the Contracts Clause occurs if: "(1) the state law operates as a substantial impairment upon a contractual relationship, and (2) the state cannot demonstrate a significant and legitimate public purpose behind the regulation." *Western Nat'l Mut. Ins. Co. v. Lennes (In re Workers' Compensation Refund),* 46 F.3d 813, 817 (8th Cir.1995).

134.    Here, the Landowners and North Fork Wind have contractual relationships that will be significantly impaired and frustrated by the Amendments. The practical impact of the Amendments will be to eliminate both parties' contractual rights.

135.    North Fork Wind has contractual relationships with over 140 landowners which will be substantially impaired or nullified as a result of the Amendments.

136.    North Fork Wind posted financial security deposits with SPP in the total amount of $16,765,072, of which $7,791,268 is nonrefundable, and will be substantially impaired or nullified by the Amendments.

137.    The Amendments have no "significant or legitimate public purpose." *See also Martin Marietta Materials, Inc. v. City of Greenwood, Mo*., 2007 WL 7113132, at *2 (W.D. Mo., 2007) *citing Koster v. City of Davenport,* 183 F.3d 762, 766 (8th Cir. 1999) (citations omitted).

138.    By passing the Amendments, Knox County enacted, established, or admitted an official policy and custom of Knox County of the deprivation of Plaintiffs' constitutionally protected rights.

139.    Knox County acted with the knowledge that the Amendments would deprive Plaintiffs' of their contractual rights and deliberately passed the Amendments with deliberate indifference to the deprivation of Plaintiffs' contractual rights.

140.    Plaintiffs, and each of them, will suffer financial harm if they are unable to achieve the benefits of the contracts they entered into prior to the passage of the Amendments.

141.    Plaintiffs therefore respectfully request that this Court enter an order finding Defendants liable under 42 U.S.C. § 1983 including (1) a declaration that the Amendments unlawfully deprived Plaintiffs of their right to just compensation for the taking of their protected contractual interests, (2) an injunction prohibiting Defendants from further actions that take protected contractual interests between North Fork Wind, or and the Landowners for the Wind Farm without a public purpose or providing just compensation, (3) an award of (a) damages in the form of just compensation for the property interests taken as reflected in the total contracted value of all lease and easement agreements, and the value of the Wind Farm or (b) nominal damages in the event the Court concludes either that Plaintiffs has not proven its entitlement to

compensatory damages or *has* proven its entitlement to (a), (4) declaratory judgment, and (5) an award of attorney fees pursuant to 42 U.S.C. § 1988.

## COUNT IV

**Against Knox County, the Knox County Board of Supervisors, the Zoning Administrator, and the Knox County Planning Commissioners for Deprivation of the Constitutional Right to Equal Protection Under 42 U.S.C. § 1983 by North Fork**

142.    North Fork Wind realleges and incorporates by reference all allegations in this Complaint.

143.    42 U.S.C. § 1983 prohibits the deprivation of rights, privileges, or immunities secured by the United States Constitution under color of law.

144.    The Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution prohibits any state from "deny[ing] to any person within its jurisdiction the equal protection of the laws."

145.    The Equal Protection Clause "commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr., Inc.,* 473 U.S. 432, 439, 105 S. Ct. 3249, 87 L.Ed.2d 313 (1985).

146.    Upon information and belief, North Fork Wind is the only corporate or natural person in Knox County, Nebraska specifically singled out for the application of the new requirements in the Amendments which relate exclusively to CWECS.

147.    Discussion and debate at both the Planning Commission and the Board of Supervisors singled out North Fork Wind and the Wind Farm, and was focused upon why the amendments to the 2023 Zoning Resolution were necessary to create a new standard applicable only to North Fork Wind's use of property rights for its Wind Farm.

148.    By passing the Amendments, Knox County enacted, established, or admitted an official policy and custom of Knox County of the deprivation of Plaintiffs' constitutionally protected rights.

149.    Knox County acted with the knowledge that the Amendments would deprive North Fork Wind of its right to the equal protection of the laws and deliberately passed the Amendments with deliberate indifference to the deprivation of North Fork Wind's constitutional rights.

150.    A plaintiff brings an equal protection claim not as group but as a "class of one," where it has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment. See e.g. *Mensie v. City of Little Rock,* 917 F.3d 685, 692 (8th Cir. 2019).

151.    North Fork Wind has been singled out for different treatment by Knox County than any other comparable person or entity. The Planning Commission and Board of Supervisors singled out North Fork Wind for standards not applicable to any other identically or directly comparable person or entity. *Robbins v. Becker,* 794 F.3d 988, 996 (8th Cir. 2015).

152.    North Fork Wind was singled out for setback and other stringent requirements to develop the Wind Farm, but other directly comparable parties were not required to develop projects under such stringent zoning requirements. The stringent requirements placed on North Fork Wind effectively function as a total bar to the development of the Wind Farm.

153.    There is no rational basis for the disparate treatment between North Fork Wind and other property owners; North Fork Wind is being specifically targeted.

154.    Knox County, the Knox County Board of Supervisors, the Zoning Administrator are depriving North Fork Wind of equal protection of the law.

155.    North Fork Wind therefore respectfully requests that this Court enter an order finding Defendants liable under 42 U.S.C. § 1983 including (1) a declaration that the Amendments unlawfully deprived North Fork Wind of its right to equal protection of the law, (2) an injunction prohibiting Defendants from engaging in further actions depriving North Fork Wind of the equal protection of the law, (3) an award of (a) damages to compensate for the costs incurred by North Fork Wind including reputational injury and the lost profits North Fork Wind reasonably anticipated from the completion of the developed and permitted Project;, or (b) nominal damages in the event the Court concludes either that North Fork Wind has not proven their entitlement to compensatory damages or has proven its entitlement to a declaratory judgment, and (4) an award of attorney fees pursuant to 42 U.S.C. § 1988.

## COUNT VI

**Against Knox County, the Knox County Board of Supervisors, the Zoning Administrator, and the Board of Commissioners for a Declaratory Judgment and Injunctive Relief that the Amendments Are Void and Enter an Injunction Enjoining their Enforcement**

156.    North Fork Wind realleges and incorporates by reference all allegations in this Complaint.

157.    There exists a current, ripe, and active dispute between the parties regarding whether the Amendments, both in their substance and the manner of enactment, violate federal and state law.

158.    A public official is "stripped of his official or representative character" when his actions violate the law, and thus his enforcement of that action may be prospectively

enjoined. *Gillpatrick v. Sabatka-Rine*, 297 Neb. 880, 899, 902 N.W.2d 115, 129 (2017) (citing *Ex parte Young*, 209 U.S. 123 (1908)).

159.    As set forth above, Defendants' actions have caused an immediate deprivation of Plaintiffs' rights under the United States Constitution. Furthermore, as set forth below, Defendants' actions also violate the Nebraska statute, public policy, and the Nebraska Constitution.

160.    The Nebraska legislature has found and declared a public policy in favor of wind energy projects in Neb. Rev. Stat. §§ 66-901 to 66-914.

161.    The Nebraska Attorney General opined that wind energy development is a legal and thus constitutionally protected land use. A county may not totally prohibit a legal land use and may only regulate such use provided the regulation bears a reasonable relationship to the public health, safety and welfare. *See Neb. Op. Att'y Gen. No. 19-008* (May 29, 2019).

162.    This is no rational or public health basis for the Amendments.

163.    The purpose and effect of the Amendments is to ban the Wind Farm and ban new wind energy development in Knox County and, accordingly, the Amendments violate the public policy of the State of Nebraska and are contrary to the Comprehensive Plan and the 2023 Zoning Resolution approved by Knox County, Nebraska.

164.    North Fork Wind and the Landowners have a vested interest in the 2023 Zoning Resolution.

165.    North Fork Wind and the Landowners have invested substantial funds and substantially changed their position in reliance upon the 2023 Zoning Resolution and have

a right, based upon their property interest, to continue to operate under the 2023 Zoning Resolution, without the Amendments.

166.    A new zoning ordinance will not have retroactive effect where a landowner, in good faith reliance on existing zoning, has substantially changed position either by causing substantial construction to be made or by incurring substantial expenses related to construction, or both. The burden is upon the landowner asserting a right of nonconforming use to prove that his use existed prior to the effective date of the ordinance. *Hanchera v. Bd. of Adjustment, Red Willow County, Nebraska,* 269 Neb. 623 (2005).

167.    Defendants' unlawful actions are needlessly preventing the lawful use of land for the Wind Farm and causing financial harm to Plaintiffs.

168.    The Amendments are void due to the failure of the Planning Commissioners to provide written notice of meeting as required by Section 11.01(4)(B)(5-7) of the 2023 Zoning Resolution. (Ex. B).

169.    The Amendments are an unlawful taking of property by regulation in violation of the Nebraska Constitution Article 1, Section 21.

170.    The Amendments violate the Contracts Clause of the Nebraska Constitution, Article 1, Section 16 by depriving the Landowners and North Fork Wind of their contractual rights.

171.    The Amendments create a class of one as to North Fork Wind and are in violation of the Nebraska Constitution's equal protection clause which provides, "The Legislature shall not pass local or special laws . . . in all other cases when a general law can be made applicable, no special law shall be enacted." Neb. Const. Art. III, § 18.

172.    The Amendments deprive Plaintiffs of their due process rights in violation of the Nebraska Constitution Article I, Section 3.

173.    Defendants, and each of them, are violating the Nebraska Constitution by amending the 2023 Zoning Resolution and enforcing the Amendments to deprive Plaintiffs of due process and equal protection of the law and deprive them of their property rights and rights under the Nebraska Constitution.

174.    The Amendments are not supported by substantial evidence and are unreasonable, arbitrary, and capricious because the purpose of the Amendments was to eliminate any possibility of the development of the Wind Farm by North Fork Wind.

175.    The Amendments are not supported by substantial evidence and are unreasonable, arbitrary, and capricious.

176.    The Amendments are unlawful because they deprive Plaintiffs of their vested rights under Nebraska law to use their land and property rights for the Wind Farm under the 2023 Zoning Resolution by virtue of substantial expenditures that were lawfully made in good faith for years prior to the adoption of the Amendments, actions taken by Knox County officials in bad faith, and/or estoppel principles. *Landrum v. City of Omaha Planning Board*, 297 Neb. 165, 187, 899 N.W.2d 598, 614 (Neb., 2017).

177.    The Amendments are unlawful because they were enacted with the purpose of preventing North Fork Wind from constructing the Wind Farm and to frustrate North Fork Wind's existing plans for development and enacted in bad faith for the purpose of preventing the Wind Farm from being developed.

178.    A declaration regarding the Amendments' legal viability and enforceability would terminate the uncertainty and controversy caused by their enactment.

179.    Pursuant to 28 U.S.C. § 2201, Plaintiffs therefore respectfully request that this Court enter an order including (1) a declaration that the Amendments unlawfully deprived Plaintiffs of their right to just compensation for the taking of their protected property interests, (2) an injunction prohibiting Defendants from further actions that take protected property interests acquired for the Wind Farm by North Fork Wind or already existing with the Landowners without a public purpose or providing just compensation, (3) declaring the Amendments void and unenforceable as arbitrary, capricious, contrary to public policy, in violation of the Nebraska Constitution and law, and of no effect, and (4) enjoining Defendants from enforcing the Amendments against North Fork Wind and the Landowners.

## DEMAND FOR JURY TRIAL

180.    Plaintiffs hereby demand a trial by jury on all claims so triable.

181.    Pursuant to NE Civ. R. 40.1(b), Plaintiffs request the trial be held in Lincoln, Nebraska.

## RELIEF SOUGHT

WHEREFORE, North Fork Wind and the Landowners respectfully request that this Court enter a judgment in their favor and award the following relief:

A.    Issue a permanent injunction (i) prohibiting Defendants or anyone acting in concert with them from enforcing or attempting to enforce the Amendments, and (ii) requiring the Board of Supervisors, the Zoning Administrator, and the Planning Commissioners to make a public record cancelling and nullifying the Amendments.

B.    Declare the Amendments void and of no legal effect.

C.      Declare the Planning Commission's Recommendations void and of no legal effect.

D.      Declare that Amendments void and of no force or effect against the Wind Farm;

E.      Award Plaintiffs all damages, as allowed by law, in amounts to be proven at trial;

F.      Award Plaintiffs all attorneys' fees, court costs, and any expert fees, as allowed by 42 U.S.C. § 1988, and other applicable law; and

G.      Grant such other and further relief as this Court deems just and proper.

Dated this 23rd day of August, 2024.

NORTH FORK WIND, LLC, Plaintiff,

By:      /s/Lindsay K. Lundholm
         Lindsay K. Lundholm (NE# 22224)
         Brian Barmettler (NE# 27017)
of       BAIRD HOLM LLP
         1700 Farnam Street
         Suite 1500
         Omaha, NE 68102-2068
         Phone: 402.344.0500
         Fax: 402.344.0588
         Email: llundholm@bairdholm.com
         Email: bbarmettler@bairdholm.com

AND

GARNET A. ANDERSON; CHARLES L.M. ANDERSON; HELEN CARLSON; MARDELL HOCHSTEIN; MARVIN HOCHSTEIN; ELDON KRONBERG; PATRICIA KRONBERG; RANDALL REPENNING; DEAN STUECKRATH; STEPHANIE STUECKRATH; ANGELA WAMBERG; and DAN WAMBERG, Plaintiffs,

By: /s/Richard A. DeWitt
        Richard A. DeWitt (NE# 11002)
        Steven G. Ranum (NE# 24716)
of      CROKER HUCK LAW FIRM
        2120 S 72nd Street, Suite 1200
        Omaha, NE 68124
        Phone: 402-391-6777
        Email: rdewitt@crokerlaw.com
        Email: sranum@crokerlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on August 23, 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

N/A

And I hereby do certify that I have mailed by United States Postal Service the document to the following non CM/ECF participants:

N/A

/s/Lindsay K. Lundholm