IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

NORTH FORK WIND, LLC, et al.,

               Plaintiffs,

vs.

KNOX COUNTY, NEBRASKA, et al.,

               Defendants.

4:24-CV-3150

MEMORANDUM AND ORDER

This case involves several state and federal constitutional challenges to certain zoning regulations in Knox County, Nebraska. The plaintiffs include a developer, North Fork Wind, LLC, and certain Nebraska landowners with whom North Fork Wind arranged lease and easement agreements. However, after the plaintiffs signed the agreements, the zoning regulations were changed in an allegedly intentional and unlawful attempt to prevent the development.

The plaintiffs are suing Knox County, the Knox County Planning Commission, and the Knox County Board of Supervisors, as well as the individual members of those governmental bodies, under 42 U.S.C. § 1983. This matter is before the Court on the defendants' motions to dismiss.[1] Filing 73; filing 83. The Court will permit the plaintiffs' Takings Clause claims to proceed, as well as their state law claims relating to nonpublication of zoning ordinances. Their other claims will be dismissed.

---

[1] All but one of the defendants are jointly represented. *See* filing 73; filing 74. They are referred to collectively throughout this Order. The other defendant is Kevin Mackeprang, and his motion, filing 83, is discussed separately.

## I. BACKGROUND

North Fork Wind is a wholly-owned subsidiary of National Grid Renewables, a commercial wind farm developer with projects in six different states. Filing 66 at 8-9. As early as 2017, North Fork Wind identified property in Knox County as a potential site for a new project. *See filing 66 at 12*. The company communicated with Knox County officials on both the Planning Commission and the Board of Supervisors about what became known as the North Fork Wind Project, a 600-megawatt commercial wind energy conversion system. *See* filing 66 at 2; *see also* Neb. Rev. Stat. § 66-913.

Knox County is currently home to two commercial wind farms. The Crofton Bluffs facility, southwest of Crofton, was established in 2012, and is a 40-megawatt system. The Elkhorn Ridge facility is an 80-megawatt system near Bloomfield, established in 2009. *See* filing 66 at 10-11; Neb. Dep't of Env't & Energy, *Wind Energy Generation in Nebraska*, https://perma.cc/F5QL-ZDAA (accessed Mar. 11, 2025).

In November 2023, after several meetings at which the public (including North Fork Wind) provided comments, Knox County adopted the November 2023 Zoning Resolution. *See* filing 66-2. The resolution codified specifications and requirements for commercial wind farms like the North Fork Wind Project. *See* filing 66-2 at 155. These requirements included, as relevant to the present lawsuit: a 2,000-foot setback from non-participating dwellings, a general liability insurance policy, and compliance with certain safety and design standards. *See* filing 66-2 at 156; filing 66 at 19-20.

Between October 2023 and April 2024, North Fork Wind signed lease and easement agreements with several Knox County landowners, allegedly covering over 42,700 acres, anticipating it would submit a conditional use permit for the Project in compliance with the Zoning Resolution. *See* filing 66-

11. North Fork Wind also constructed meteorological towers to collect data necessary for completing the conditional use permit; those towers were constructed pursuant to a different permit issued by Knox County. *See* filing 66 at 20. North Fork Wind allegedly incurred other expenses related to developing its Project, totaling $19.3 million. *See* filing 66 at 21.

However, not everyone in Knox County was happy with the commercial wind farm zoning requirements. In May 2024, a group known as the "Wind Watchers" proposed more robust setback requirements for wind farms like the Project. *See* filing 66 at 23. That same month, the Planning Commission heard public comment on the proposed amendments. Several commenters indicated they had "negative feelings" about commercial wind farms, and had what North Fork Wind alleges were "baseless and incorrect" concerns about public health and costs to the county. *See* filing 66 at 24-25.

The Commission tabled the discussion regarding the Wind Watchers' amendments until June 2024. At the June 11 meeting, the Commission voted on and amended the Wind Watchers' proposals, allegedly "without allowing public comment on their changes," and limiting comments in opposition. *See* filing 66 at 26-27. Ultimately, the Commission recommended to the Board of Supervisors certain amendments to the existing requirements for commercial wind farms. Filing 66 at 27.

The same day—June 11—the Board met and heard public comments on the Commission's recommendation. On June 21, July 10, and July 24, the Board again repeatedly heard public comments on the Commission's recommendations. *See* filing 66 at 27. Following the public discussion on July 24, the Board voted on each of the amendments. The Board approved the recommended 1.25-mile setback from non-participating dwellings and a requirement for liability insurance. The Board also adopted a requirement that

Knox County be listed as an additional insured on any wind farm operator's insurance policies, which was recommended neither by the Commission nor proposed by the Wind Watchers. Filing 66 at 28.

The plaintiffs assert that the modifications by the Board and the Commission to the Wind Watchers' amendments, as ultimately adopted by the Board, have never been provided to the public in writing. They claim the July 2024 amendments "were enacted with the express purpose of regulating North Fork Wind" and the North Fork Wind Project only, because the Project was "the only existing land use in Knox County, Nebraska impacted" by the amendments. Filing 66 at 29. Knox County is home to two other commercial wind farms, but both had been constructed over a decade before the amendments, and are a much smaller scale than the proposed Project. *See* filing 66 at 10, 29.

According to the plaintiffs, the setback changes and other requirements make their Project economically unfeasible. North Fork Wind asserts it would need to spend several million more dollars to even apply for a conditional use permit, but the July 2024 amendments "render any effort of North Fork Wind to apply for a conditional use permit . . . a futile exercise." Filing 66 at 33.

The plaintiffs assert the July 2024 amendments violated their federal constitutional rights under the Fifth and Fourteenth Amendments and the Contracts Clause, and the coterminous provisions in the Nebraska Constitution. They seek to enjoin the County from enforcing the July 2024 amendments, a declaratory judgment voiding the amendments, and monetary damages. Filing 66 at 51-52. The plaintiffs seek to prevent the retroactive

4

application of the July 2024 amendments. *See* filing 66 at 49.[2]

The defendants' motions to dismiss raise both procedural and substantive arguments. The defendants assert that the plaintiffs have failed to join an indispensable party; that the complaint alleges a nonjusticiable political question; that the Court should abstain in deference to the state of Nebraska; that the controversy is not ripe; and that the plaintiffs have failed to state a claim under any of their constitutional theories. *See* filing 74.

## II. STANDARD OF REVIEW

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. While the Court must accept as true all facts pleaded by the non-moving party and grant all reasonable inferences from the pleadings in favor of the non-moving party, *Gallagher v. City of Clayton*, 699 F.3d 1013, 1016 (8th Cir. 2012), a pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. *Iqbal*,

---

[2] The plaintiffs reference "state law claims in Count V." *See* filing 66 at 8. However, the operative complaint does not appear to contain any state law claims; the complaint skips from Count IV to Count VI. *See* filing 66 at 45-47. The complaint refers to violations of the Nebraska state constitution, which the plaintiffs appear to assert are coextensive with their federal constitutional claims. *See* filing 88 at 21. (To the extent that claims under the state constitution even permit a direct cause of action for enforcement, *see Cavanaugh v. Bartelt*, 178 F. Supp. 3d 819, 834 (D. Neb. 2016), *aff'd*, No. 16-2105 (8th Cir. Sept. 7, 2016) (citing *McKenna v. Julian*, 763 N.W.2d 384 (Neb. 2009))).

5

556 U.S. at 678. Determining whether a complaint states a plausible claim for relief will require the reviewing court to draw on its judicial experience and common sense. *Id.* at 679.

## III. DISCUSSION

As a preliminary matter, the Court notes that the defendants have provided evidence outside of the pleadings in support of their motion. *See* filing 75. The Court generally may not consider such materials on a motion to dismiss under Rule 12(b)(6) without converting the motion to one for summary judgment. Rule 12(d). However, the Court may consider such materials in evaluating a motion to dismiss under Rule 12(b)(1) or (b)(7). *See* Rule 12(d). And the Court may take judicial notice of public records and consider them on a motion to dismiss. *Stahl v. U.S. Dep't of Ag.,* 327 F.3d 697, 700 (8th Cir. 2003). In Nebraska, public records include minutes and "evidence and documentation received or disclosed" in an open public meeting, Neb. Rev. Stat. § 84-1413(4). The Court may consider the defendants' evidence which is part of the public record, but will not consider any provided evidence outside of those exceptions.

Further, the defendants have asserted that this case is not yet ripe, apparently in reference to *all* of the plaintiffs' claims. *See* filing 74 at 15. Given the number of claims, and the different ripeness rules for each, those arguments will be addressed in the context of the relative substantive merits.

### 1. PROCEDURAL ARGUMENTS

#### (a) Abstention

The defendants ask that this Court abstain from exercising jurisdiction under either the *Pullman* or *Burford* abstention doctrines. Generally speaking,

6

if federal adjudication would unduly interfere with state proceedings, a federal court may decline to exercise its jurisdiction. *See, e.g., New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 359 (1989). Both *Pullman* and *Burford* abstention are limited, extraordinary, and narrow exceptions to a federal court's "virtually unflagging obligation" to exercise its jurisdiction. *Hunter v. Page Cnty.*, 102 F.4th 853, 873 (8th Cir. 2024); *see also Holbein v. TAW Enters., Inc.*, 983 F.3d 1049, 1060 (8th Cir. 2020). Abstention is a matter of judicial discretion; federal courts are not required to abstain even if the criteria are met. *Bilden v. United Equitable Ins. Co.*, 921 F.2d 822, 826 (8th Cir. 1990).

Under *Pullman*, a federal court may abstain from exercising its jurisdiction if the case raises a federal constitutional question whose answer necessarily depends on a state court's construction of ambiguous state law. *Hunter*, 102 F.4th at 873; *see also Beavers v. Ark. State Bd. of Dental Examiners*, 151 F.3d 838, 841 (8th Cir. 1998). And *Burford* abstention applies when a state has established a complex regulatory scheme, supervised by state courts and serving important state interests, and the resolution of the case demands specialized knowledge and the application of complicated state laws. *Bilden,* 921 F.2d at 825.

On the whole, the defendants have not identified any ambiguous or complicated questions of state law presented by the complaint. While the defendants argue that Nebraska law provides the plaintiffs a sufficient remedy to challenge zoning laws, *see* filing 74 at 12, state administrative exhaustion is not a requirement in § 1983 cases. *Knick v. Township of Scott,* 588 U.S. 180, 185 (2019) (citing *Heck v. Humphrey*, 512 U.S. 477, 480 (1994)). There is no interpretation of the July 2024 zoning regulation that could avoid the federal constitutional questions presented.

Zoning regulations and property rights are not particularly complicated. *See New Orleans Pub. Serv.*, 491 U.S. at 361-62. Federal courts are regularly called upon to examine whether local zoning regulations infringe on federal constitutional rights (though the regulations often survive a court's scrutiny). *See, e.g., Pietsch v. Ward Cnty.*, 991 F.3d 907 (8th Cir. 2021); *Koscielski v. City of Minneapolis*, 435 F.3d 898 (8th Cir. 2006); *Scott v. City of Sioux City*, 736 F.2d 1207, 1216-17 (8th Cir. 1984). Neither *Pullman* nor *Burford* indicate that this Court should abstain from exercising its jurisdiction.

### (b) Political Question

The defendants also argue the Court should abstain because the plaintiffs present a nonjusticiable political question. *See* filing 74 at 21. The political question doctrine prevents courts from reviewing controversies involving "policy choices and value determinations constitutionally committed for resolution to the halls of Congress or the confines of the Executive Branch." *Romer v. Carlucci*, 847 F.2d 445, 462 (8th Cir. 1988) (quoting *Japan Whaling Ass'n v. Am. Cetacean Soc.*, 478 U.S. 221, 230 (1986)). But challenges to the constitutional authority of a government cannot be evaded by courts just because the issues have political implications. *See INS v. Chadha*, 462 U.S. 919, 943 (1983).

As indicated above, federal courts routinely analyze the lawfulness of local zoning regulations. The defendants mischaracterize the plaintiffs' claims. The plaintiffs are not generally challenging Knox County's ability or authority to regulate commercial wind farms; in fact, the plaintiffs *relied* on that authority to begin the project at issue in this case. *See* Neb. Rev. Stat. § 66-913. Rather, the plaintiffs challenge the effect of the amendments on their allegedly vested property rights, the procedure by which the amendments were

8

enacted, and whether the amendments comply with state law. These issues do not present the types of political questions constitutionally designated to other branches of government.

Despite the defendants' contentions, *see* filing 94 at 18, this case is not about the propriety of wind energy generally. The defendants' musings about the general reliability and partisan stakes of wind energy are entirely irrelevant to the legal questions presented by the plaintiffs.

The plaintiffs appear to be seeking invalidation of the amendments as contrary to Nebraska public policy. *See* filing 66 at 48. Such a claim might implicate the 10th Amendment and federalism issues. But the Court's examination of the plaintiffs' complaint reveals that the plaintiffs seek to prevent Knox County from retroactively applying the July 2024 amendments based on an alleged protected property interest. There are no abstention principles that prevent this Court from adjudicating that legal question.

### (c) Kevin Mackeprang

One of the defendants, Kevin Mackeprang, is in a curious situation. He is both a member of the Knox County Board of Supervisors, which explains his status as a defendant in this case, and he is an interested landowner in the North Fork Wind Project. *See* filing 85-1. Mackeprang has moved to dismiss the claims against him, and the other defendants assert that Mackeprang is a necessary plaintiff for this case who cannot be added, and so the case should be dismissed pursuant to Fed. R. Civ. P. 19.[3]

---

[3] The defendants also make unsupported accusations about Mackeprang being a "spy" for the plaintiffs (*see* filing 74 at 6) . . . but these allegations are irrelevant, and the Court has not considered them.

North Fork Wind argues that Mackeprang is only being sued in his official capacity, not his individual capacity, and an official-capacity suit is treated as a suit against the entity. *See* filing 88 at 56. And he is named so that he would be bound, as a member of the Board of Supervisors, to comply with any prospective injunctive relief. *See McDaniel v. Precythe*, 897 F.3d 946, 953 (8th Cir. 2018). Mackeprang abstained from voting on the July 2024 amendments and he took no part in the discussions thereof, recognizing the conflict of interest and abiding by Nebraska law regarding the same. *See* filing 68-1 at 15.

The plaintiffs acknowledge that their claims against the individual board members are redundant of the claims against the Board of Supervisors. In the § 1983 context, a court may dismiss redundant claims where a plaintiff is not pursuing a claim against a public official in his individual capacity. *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010); *Artis v. Francis Howell N. Band Booster Ass'n*, 161 F.3d 1178, 1182 (8th Cir. 1998). Because Mackeprang did not participate in the alleged unlawful conduct, there's no reason to keep him as a named party. *Cf. Mille Lacs Band of Ojibewe v. Cnty. of Mille Lacs*, 650 F. Supp. 3d 690, 710-11 (D. Minn. 2023), *vacated as moot,* No. 23-1257, 2025 WL 467589 (8th Cir. 2025).

Further, it would be unnecessary to bind Mackeprang to any prospective injunction this Court orders. Nebraska law already provides an adequate remedy: as a public official with a conflict of interest, Mackeprang must "remove himself . . . from influence over the action or decision on the matter" with which he has a conflict. Neb. Rev. Stat. § 49-1499.03(1)(b). Mackeprang shouldn't be bound by any prospective injunction because it's clear he has a conflict of interest with the North Fork Wind Project, and he'll accordingly abstain from any action the plaintiffs seek to enjoin. *See McClain v. Kitchen,*

659 F.2d 870, 872 (8th Cir. 1981) ("Equitable relief is an extraordinary remedy which is available to a party only when no other adequate remedy exists.").

The other defendants argue that Mackeprang is a necessary party under Rule 19 because he is an interested landowner in the Project, and he can't be joined as both a defendant and a plaintiff. Having disposed of Mackeprang as a defendant, the Court will consider whether he must be joined as a plaintiff. The defendants argue that Mackeprang must be joined because he "claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may . . . leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a)(1)(B)(ii).

Mackeprang has indicated that he is uninterested in being a party to this case. *See* filing 84 at 6. A person who refuses to join a lawsuit may be made an involuntary plaintiff. Rule 19(a)(2). The risk of multiple or inconsistent obligations might arise where a prospective plaintiff is not added. *See Micek v. Mayo Clinic*, No. 21-cv-436, 2021 WL 5282755, at *3 (D. Minn. Nov. 12, 2021). But here, there's no risk that the defendants might be forced to pay the same plaintiffs more than once, or inconsistently, if Mackeprang is not joined to this lawsuit. Mackeprang may have his own case, as the other landowner plaintiffs do, but each landowner plaintiff has his or her individual property interests at stake. The defendants might face a suit by Mackeprang in the future, but it is unlikely that Mackeprang's absence here will result in the defendants paying damages more than once to any of the named plaintiffs. He is therefore not a required party under Rule 19, and the Court need not add him to the lawsuit as an involuntary plaintiff. *See Gwartz v. Jefferson Mem. Hosp. Ass'n*, 23 F.3d 1426, 1430 (8th Cir. 1994).

For these reasons, Mackeprang's motion to dismiss will be granted, and

11

Mackeprang will be terminated as a party to this case.

## 2. PLAINTIFFS' CLAIMS FOR RELIEF

The plaintiffs assert the July 2024 amendments violate the following federal and Nebraska state constitutional provisions:

- the Contracts Clause, U.S. Const. Art. I, § 10;
- the Equal Protection Clause of the Fourteenth Amendment and Neb. Const. Art. I-3;
- the prohibition of "special legislation," Neb. Const. Art. III-18;
- both the substantive and procedural components of the Due Process Clause of the Fourteenth Amendment; and
- the Takings Clause of the Fifth Amendment and Neb. Const. Art. I-21.

The defendants seek to dismiss each claim.

### (a) Property Interest

The plaintiffs allege that the July 2024 zoning amendments infringe on their property rights protected by the Takings Clause of the Fifth Amendment and the Due Process Clause of the Fourteenth Amendment. *See* filing 66 at 34-45. To state a claim under those constitutional provisions, the plaintiffs must have alleged facts to support a protectible property interest. *See Carpenter Outdoor Advert. Co. v. City of Fenton*, 251 F.3d 686, 689-90 (8th Cir. 2001) (due process); *Ed. Assistance Corp. v. Cavazos*, 902 F.2d 617, 626 (8th Cir. 1990) (takings). The defendants argue the plaintiffs have failed to allege such an interest, and thus have no injury and no standing to bring suit, and the lawsuit is not yet ripe. *See* filing 74 at 18. The plaintiffs were preparing to submit a conditional use permit when the July 2024 amendments were passed, and now they allege the project is economically unfeasible and applying for a permit

would be in vain.

Property interests like the ones at issue here are created and understood by state law. *See Palazzolo v. Rhode Island*, 533 U.S. 606, 626 (2001); *Memphis Light, Gas and Water Div. v. Craft*, 436 U.S. 1, 9 (1978). Federal courts look to state law to determine whether a property interest exists, though federal constitutional law controls whether that interest is protectible. *See Carpenter*, 251 F.3d at 689-90; *Cavazos*, 902 F.2d at 626.

### (i) Property Interests Under Nebraska Law

In Nebraska, the right to a nonconforming use under zoning regulations is recognized as a property right. *Cnty. of Sarpy v. Petsch*, 109 N.W.2d 388, 392 (Neb. 1961). But generally, a landowner has no vested right in the continuity of zoning in a particular area so as to preclude changes to the zoning laws. *Whitehead Oil Co. v. City of Lincoln (Whitehead Oil I)*, 451 N.W.2d 702, 706 (Neb. 1990). A person who purchases or leases land *intending* to use it in a way that later becomes nonconforming has no vested interest in the nonconforming use. *See id.; Saunders Cnty. v. Moore*, 155 N.W.2d 317, 319 (Neb. 1967); *City of Omaha v. Glissmann*, 39 N.W.2d 828, 833 (Neb. 1949). The burden is on the property owner who claims rights by virtue of a nonconforming use. *Moore*, 155 N.W.2d at 319.

To vest an interest in a nonconforming use, the use of the property on the date the intended use becomes nonconforming must "make known to the neighborhood that the land was being used" for that purpose. *Id.* at 320 (citing *Petsch*, 109 N.W.2d at 392). A property interest has vested where a landowner, in good faith reliance on existing zoning laws, has substantially changed position by either causing substantial construction to be made or by incurring substantial expenses related to the construction, or both. *See Whitehead Oil I,*

13

451 N.W.2d at 706; *Hanchera*, 694 N.W.2d at 646 (citing *Thayer v. Town of Tilton*, 861 A.2d 800, 807 (N.H. 2004)). But "substantial expenses" must be just that—substantial. Conforming uses of the property cannot vest a property interest in a use that becomes nonconforming; such a use fails to put the neighborhood on notice of the intended nonconforming use of the property. *See Moore*, 155 N.W.2d at 319.

If a project is partially completed when zoning regulations that make the project unlawful become effective, and the evidence is clear as to the extent of the project, the completed project will ordinarily determine the scope of the nonconforming use. *Petsch*, 109 N.W.2d at 391-92; *but see Thieman v. Cedar Valley Feeding Co.*, 789 N.W.2d 714, 721 (Neb. App. 2010). However, even in cases where a person has obtained a permit, if no substantial work is completed before a change in law, the permit may be revoked; the mere issuance of a permit gives no vested rights to the permittee, nor is there a property right in the permit itself. *Moore*, 155 N.W.2d at 321.

### (ii) The Whitehead Oil Cases

The plaintiffs point to a line of Nebraska Supreme Court cases from the early 1990s to assert the existence of a property interest based on the alleged bad faith of the Knox County zoning authorities. The plaintiff in those cases, Whitehead Oil, submitted an application for a land-use permit to construct a gas station and convenience store, as allowed by the zoning ordinances in force at the time of the application. *Whitehead Oil I*, 451 N.W.2d at 703-04. The zoning authority delayed action on the application, rezoned the property, and denied the application based on the rezoning. *Id.*

Whitehead Oil unsuccessfully argued it had a vested right to use the subject property in a manner consistent with the zoning in effect at the time

the permit was filed. The court determined the alleged "substantial expenditures" were incurred to apply for a permit, and those types of expenses were not "of such a nature as to deprive" the city of the right to exercise its police power. *Id.* at 706. Ultimately, the Nebraska Supreme Court invalidated the zoning laws at issue, but not because of Whitehead Oil's property interest. *See id.* at 707; *Whitehead Oil Co. v. City of Lincoln (Whitehead Oil III)*, 515 N.W.2d 401 (1994), *disapproved of by Scofield v. Dept. of Nat. Res.*, 753 N.W.2d 345 (2008).

The plaintiffs rely on these cases for the proposition that a taking occurs under the Fifth Amendment of the United States Constitution if a challenged regulation was not in furtherance of a legitimate state interest, and it was enacted in bad faith. *See Whitehead Oil III*, 515 N.W.2d at 408. This holding was premised on the doctrine that a regulation is invalid under the Takings Clause if it does not "substantially advance legitimate state interests." *See id.* (discussing *Nollan v. Cal. Coastal Comm'n*, 483 U.S. 825 (1987)); *see also Agins v. Tiburon*, 447 U.S. 255 (1980).

But the United States Supreme Court, a decade after the *Whitehead Oil* cases, abrogated the "substantially advance" rule, and held that such challenges to regulations are not actionable as a "taking." *See Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 548 (2005); *Rodehorst Bros. v. Bd. of Adjustment*, 844 N.W.2d 755, 768 (Neb. 2014).[4] Rather, allegedly irrational government decisions might be construed as claims under the due process clause of the

---

[4] To the extent the *Whitehead Oil* court relied on *Nollan, see* 515 N.W.2d at 408, the *Lingle* court clarified that the *Nollan* analysis applied only to government actions that can be characterized as *per se* physical takings, not the sort of regulatory taking at issue in the *Whitehead Oil* cases. *See* 544 U.S. at 547.

15

Fourteenth Amendment, or a regulation may be invalid because it fails to take private property for public use. *See Lingle*, 544 U.S. at 543. The Supreme Court reasoned that the "substantially advance" test failed to account for the magnitude or character of the burden a particular regulation imposes on private property rights, or how the regulatory burden is distributed, unlike the other established Takings Clause tests. *Id.* at 542.

The focus of the *Whitehead Oil* court's analysis was the capriciousness of the zoning authority's behavior, not the magnitude or character of the regulations placed on the property at issue. *Compare Whitehead Oil III*, 515 N.W.2d at 408, *and Whitehead Oil I*, 451 N.W.2d at 706-07, *with Lingle*, 544 U.S. at 542. The court *never* articulated a protected property interest held by Whitehead Oil; the court instead determined that expenditures made for the purpose of a permit application were not the kind of expenses that could vest a property interest in a nonconforming use. *Whitehead Oil I*, 451 N.W.2d at 707.

In this case, the plaintiffs' allegations regarding Knox County's bad faith are irrelevant to the question of whether the plaintiffs had a vested property interest at the time the zoning laws changed. *Lingle* explicitly foreclosed a theory that a zoning authority's alleged bad faith or poor governance somehow *creates* a property interest protectible by the federal Constitution. *See* 544 U.S. at 548.

### (iii) The Plaintiffs' Protectible Property Interest

Applying the above law to the facts alleged by the plaintiffs, whether the plaintiffs have stated a protectible property interest is a question that requires further factual development. The ultimate inquiry in determining whether the plaintiffs had a vested property interest is whether the physical use of the land

16

"ma[de] known to the neighborhood" that the land would be used as a commercial wind farm. *E.g.*, *Petsch*, 109 N.W.2d at 392; *see also Thieman*, 789 N.W.2d at 721; *Moore*, 155 N.W.2d at 321.

The plaintiffs had not begun construction of any wind turbines at the time the zoning ordinances changed; nor could they, considering they had not yet applied for a permit. The most salient fact is that the plaintiffs had meteorological towers constructed on the land. *See* filing 66 at 20. Whether such construction was of such a substantial nature, both in cost and in character, so as to confer a vested property interest in the preexisting zoning ordinances, is unclear at this time. And development of a complete factual record is crucial for a determination on this issue.

While generally costs expended in order to obtain a permit are not of such a substantial nature to vest a property interest, *see Whitehead Oil I*, 451 N.W.2d at 706; *Thayer*, 861 A.2d at 807 ("money spent for the purchase of land and expenditures incidental to obtaining approval for the project are insufficient to create a vested right"), the question presented here is more complicated. The plaintiffs effectively needed a permit to obtain a permit. The operative complaint alleges that the plaintiffs constructed the meteorological towers, with a permit from Knox County, in order to do the necessary research to ultimately apply for and obtain a conditional use permit for a commercial wind farm. And the facts alleged indicate that the plaintiffs at least had a vested interest in the permit for the meteorological towers.

Whether the construction of the meteorological towers was substantial enough, both in cost and to put the neighborhood on notice, as to the intended use of the land is still an open question. Drawing all factual inferences in favor of the plaintiffs, they have sufficiently alleged a protectible property interest at this early stage of the proceedings. The plaintiffs have alleged that the July

17

2024 amendments infringe on that property interest, and so they have sufficiently alleged an injury and have standing to bring this lawsuit.

The defendants assert that the plaintiffs only have a property interest in a conditional use permit or the 2023 Zoning Resolution if they have complied with all applicable laws. *See* filing 74 at 17. That argument cites an Eighth Circuit case describing Missouri law, *see Carolan v. City of Kansas City*, 813 F.2d 178, 181 (8th Cir. 1987), but the plaintiffs' property rights in this case must be analyzed under Nebraska law.

The defendants also assert that the alleged injury is speculative because Knox County has not had an opportunity to individually consider and vote on North Fork Wind's proposed development. Filing 74 at 20. But the plaintiffs have sufficiently alleged that Knox County intends to use the challenged ordinances to deny the plaintiffs the desired use of their property. *See Palazzolo,* 533 U.S. at 622 ("Ripeness doctrine does not require a landowner to submit applications for their own sake").

Having determined that the plaintiffs have alleged facts supporting an inference that they hold a vested property interest in the nonconforming use of the property in Knox County (at this early stage), the inquiry turns to whether the Constitution protects it.

(b) Contracts Clause

North Fork Wind signed a number of lease and easement agreements with property owners in Knox County. Both the landowners and North Fork Wind assert that these agreements are unconstitutionally impaired by the July 2024 amendments. The defendants assert that the plaintiffs have failed to allege facts supporting a claim under the Contracts Clause of the federal and state constitutions.

18

The constitutional prohibition against impairing the obligation of contracts, U.S. Const., Art. I, § 10, is not to be read literally. *Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 502 (1987). A law unconstitutionally impairs a contract only if it substantially impairs a contractual relationship, and either does not serve a significant and legitimate public purpose, or is not reasonably appropriate to accomplish that purpose. *Greene v. Dayton*, 806 F.3d 1146, 1150 (8th Cir. 2015). Unless the government is itself a contracting party, the Court will "defer to legislative judgment as to the necessity and reasonableness of a particular measure." *See Keystone*, 480 U.S. at 505 (quoting *Energy Rsrvs. Grp. v. Kan. Power & Light Co.,* 459 U.S. 400, 411 (1983)).

The threshold inquiry is whether the challenged regulation substantially impaired a contractual relationship. *Energy Rsrvs. Grp.,* 459 U.S. at 411. Relevant to that inquiry is the extent to which the industry that the complaining party has entered into has been regulated in the past. *See id.* "One whose rights, such as they are, are subject to state restriction, cannot remove them from the power of the State by making a contract about them." *Id.* (quoting *Hudson Water Co. v. McCarter*, 209 U.S. 349, 357 (1908)). For a government regulation to violate the Contracts Clause, it must impair "a precise contractual right." *See Equip. Mfrs. Inst. v. Janklow*, 300 F.3d 842, 851 (8th Cir. 2002) (quoting *Keystone*, 480 U.S. at 504). Impairing the performance of a contract is not the same as impairing a right or obligation under the contract. *Quality Refrigerated Servs., Inc. v. City of Spencer*, 908 F. Supp. 1471, 1492 (N.D. Iowa 1995).

The Contracts Clause does not bar all governmental action affecting the profitability of a private contract, even if the regulation significantly diminishes the likelihood that one or more of the parties will keep their

19

bargain. *See id.*; *Metro. St. Louis Sewer Dist. v. Ruckelshaus*, 590 F. Supp. 385, 389 (E.D. Mo. 1984); *see also* *S. Terminal Corp. v. EPA*, 504 F.2d 646, 680 (1st Cir. 1974). Other district courts in this circuit have determined that an "impairment" under the Contracts Clause is limited to regulations that "act on the contract itself as distinguished from the property which is the subject of the contract." *Quality Refrigerated Servs.*, 908 F. Supp. at 1492; *Metro. St. Louis Sewer Dist.*, 590 F. Supp. at 389; *Two Tenn., LLC v. City of N. Little Rock.*, No. 3:06-CV-63, 2006 WL 2460926, at *2 (E.D. Ark. Aug. 23, 2006); *see also* *Grove Assisted Living, LLC v. City of Frontenac*, 4:16-cv-1783, 2018 WL 3093520, at *7 (E.D. Mo. 2018) ("[A]llegations regarding a public entity's zoning ordinances do not affect the contractual obligations between a developer and a third-party for purposes of the Contracts Clause.").

For example, the plaintiffs in *Keystone* owned or leased mineral estates to mine coal, and, as part of that agreement, the lessees typically acquired a waiver of any claims for damages that might result from the removal of the coal. 480 U.S. at 478. Pennsylvania enacted legislation that prevented the lessees from "holding surface owners to their contractual waiver of liability for surface damage." *Id.* at 502. The Supreme Court determined that such legislation substantially impaired a contractual right involving one of the parties' liability (though the regulation was ultimately upheld).

And, in *Equipment Manufacturers Institute,* the Eighth Circuit considered a state law that restricted automobile manufacturers' ability to terminate contracts with automobile dealerships. 300 F.3d at 847, 851. The Eighth Circuit determined that the limitations on reasons to terminate contracts substantially interfered with expressly contradictory provisions in the manufacturers' contracts with the dealerships. The state law directly invalidated material terms of the parties' contracts, and so it substantially

20

impaired the manufacturers' contracts.

In contrast, the Eighth Circuit in *Jackson Sawmill Co. v. United States* found no attempt by the government to use the law to repudiate a contractual obligation. 580 F.2d 302, 312 (8th Cir. 1978). In that case, a city government contracted with a private company to build a bridge funded by bonds to be paid by tolls and bridge revenues, and the city promised not to permit construction of a rival bridge. *Id.* at 305. When the city later breached the contract and contracted to build a competing bridge, there was no "impairment" under the Contracts Clause because the mere construction of a competing bridge did not preclude a remedy for damages, and the parties' rights and obligations had not been impaired. *See id.*; *Quality Refrigerated Servs.,* 908 F. Supp. at 1492-93.

In this case, the plaintiffs cannot identify a right or obligation that is invalidated or repudiated by the zoning laws. It's significant that wind energy is a heavily-regulated industry, and county zoning authority is well-established. *See Energy Rsrvs. Grp.,* 459 U.S. at 413. The plaintiffs contend that the purpose of their contracts is frustrated, but, as demonstrated by the above examples, that's not an "impairment" under the meaning of the Contracts Clause. The lease agreements are fully enforceable; no obligation has been impaired, even if Knox County's actions may have made performance of the contract less profitable and less likely. *See Quality Refrigerated Servs.,* 908 F. Supp. at 1493.

Land developers cannot escape land use regulations through contract. *See Hudson Water*, 209 U.S. at 357. Knox County has a legitimate public interest in regulating commercial wind farms, and the regulation at issue here acts on the *land,* not the plaintiffs' contracts. While the plaintiffs allege the regulations are contrary to state public policy and were enacted in bad faith, there's no indication that those facts mean a government has "impaired" a

21

contract by passing a zoning ordinance. The plaintiffs have no recourse under the Contracts Clause of the Constitution.

### (c) Equal Protection Clause

The plaintiffs contend that the zoning ordinances violated their rights to equal protection under the law as promised by the Fourteenth Amendment. They make a class-of-one discrimination claim. *See* filing 66 at 46; filing 88 at 54. The defendants argue that the challenged zoning ordinances operate equally on all commercial wind farms, and North Fork Wind was not specifically targeted, so the Equal Protection Clause is not implicated by the zoning ordinances. *See* filing 74 at 43.

The Equal Protection Clause requires the government to treat all similarly situated people alike. *Mensie v. City of Little Rock*, 917 F.3d 685, 691 (8th Cir. 2019) (quoting *Barstad v. Murray Cnty.*, 420 F.3d 880, 884 (8th Cir. 2005)). It also protects individuals from arbitrary or irrational state action. *Batra v. Bd. of Regents*, 79 F.3d 717, 721 (8th Cir. 1996). Absent a suspect classification such as race, courts review legislative actions[5] such as zoning ordinances under the highly deferential rational basis standard. *Id.* Courts recognize equal protection claims based on a "class of one," where a plaintiff alleges that it has been intentionally treated differently from others similarly situated and there is no rational basis for the difference in treatment. *Mensie*, 917 F.3d at 691; *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *Koscielski*, 435 F.3d at 901. This requires facts supporting an inference of

---

[5] Because the plaintiffs are making a facial challenge to Knox County's zoning ordinance, they are challenging a legislative act, rather than a discretionary "quasi-judicial" or administrative act. *See* *Landrum v. City of Omaha*, 899 N.W.2d 598, 610 (Neb. 2017); *Gorman Towers, Inc. v. Bogoslavsky*, 626 F.2d 607, 611 n.5 (8th Cir. 1980).

similarity to other individuals or entities receiving favorable treatment. *Koscielski*, 435 F.3d at 901.

The plaintiffs rely on a class-of-one theory because their alleged violation involves neither a suspect classification nor a fundamental right. *See id*. It's especially vital for a plaintiff to identify the disparity in treatment in such cases. *Mensie*, 917 F.3d at 691; *Barstad*, 420 F.3d at 884. A plaintiff must provide evidence of others in the same or similar line of business being treated differently.

Knox County is home to two wind farms already—an 80-megawatt system near Bloomfield, and a 40-megawatt system near Crofton. Filing 66 at 10. The plaintiffs allege that they were treated differently than these other commercial wind farms. And, the plaintiffs assert the setback requirements imposed are far more onerous than those imposed on other "similar" land uses, including racetracks, shooting ranges, landfills, private air strips, and commercial storage facilities for hazardous or dangerous materials, *inter alia*. Filing 66 at 10.

Even in the face of such similarity, a court *must* uphold a zoning ordinance "if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Koscielski*, 435 F.3d at 901 (quoting *FCC v. Beach Commc'ns., Inc.,* 508 U.S. 307, 313 (1993)). While *Koscielski* was decided on summary judgment, it is proper for a court to conduct a rational basis review analysis on a motion to dismiss. *Gilmore v. Douglas Cnty.*, 406 F.3d 935, 937 (8th Cir. 2005); *see also Carter v. Arkansas*, 392 F.3d 965, 968 (8th Cir. 2004). It is not always necessary to wait for further factual development because all that must be shown is "any reasonably conceivable state of facts that could provide a rational basis" for the challenged government action. *Gilmore*, 406 F.3d at 937. Given the public records applicable to the

23

challenged regulation, judicially noticeable by this Court, *see Stahl,* 327 F.3d at 700, the Court may conduct such a review at this point.

The record clearly demonstrates a "reasonably conceivable state of facts" that provide a rational basis for Knox County's treatment of commercial wind farms. A number of citizens provided comments to the Knox County Board of Supervisors, involving concerns about property values, potentially adverse health effects, and potentially adverse effects on wildlife. *See* filing 66 at 24-25; filing 75 at 3-17. A company that employs pilots for crop spraying indicated that it would need "a setback of at least 3 miles to continue to operate safely," because "flying amongst towers with spinning blades" while trying to land an aircraft was not conscionable. Filing 75 at 16.

The plaintiffs' complaint asserts that the public comments in favor of the zoning amendments included "false descriptions," "baseless and incorrect statements," and "false online statements" that came from the Wind Watchers group. *See* filing 66 at 24-25. But "a legislative choice is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data." *Beach Commc'ns,* 508 U.S. at 315; *see also Gilmore,* 406 F.3d at 937.

There's no question that Knox County had a legitimate public interest in implementing setback and insurance requirements for the turbines; it's well-settled that a government "may legitimately exercise its police powers to advance esthetic values." *City Council of L.A. v. Taxpayers for Vincent,* 466 U.S. 789, 805 (1984) ("The concept of the public welfare is broad and inclusive. The values it represents are spiritual as well as physical, aesthetic as well as monetary") (quoting *Berman v. Parker,* 348 U.S. 26, 33 (1954)). And the facts pled by the plaintiffs indicate Knox County responded to public distaste for wind farms.

24

Knox County had a reasonably conceivable state of facts upon which it based the challenged amendments. It was, at least hypothetically or conceivably, concerned about aesthetics, public safety, and property values (even if empirical data doesn't support those concerns). While the plaintiffs allege that they were treated differently from other commercial wind farms, there's an obvious difference between the plaintiffs' 600-megawatt proposal, *see* filing 66 at 2, and the other far smaller projects. As for the other land uses with much smaller setback requirements, *see* filing 66 at 10, none involve infrastructure extending several hundred feet into the air.

The plaintiffs assert that Knox County had no legitimate governmental interest to enact the setback and other requirements for commercial wind farms because the Nebraska and federal law allow wind farming, and the county can't ban a lawful use of land. *See* filing 66 at 48. But Nebraska law only provides that counties are *authorized* to consider zoning regulations which allow for and encourage wind energy use. *See* Neb. Rev. Stat. § 66-913. Contrary to the plaintiffs' assertion, Nebraska law in no way *requires* counties to allow commercial wind farms (or to continue to allow them if a county previously did so).

In fact, Nebraska law expressly recognizes that wind energy systems may pose risks to the public welfare. *See* § 66-914 (authorizing variances to zoning ordinances "if such relief may be granted without substantial detriment to the public good"). There's no merit to the plaintiffs' contention that the Knox County lacked a legitimate interest in effectively banning[6] commercial wind

---

[6] There's certainly a factual issue as to whether the challenged regulations actually constitute an effective ban on all commercial wind farms, or whether it only makes the plaintiffs' proposed development economically unfeasible. But even accepting the plaintiffs'

farms.

A federal lawsuit is not the forum to determine whether the Knox County Planning Commission or Board of Supervisors were *actually* concerned about public safety or aesthetics, nor whether those concerns could be factually proven by a preponderance of the evidence. In the absence of a fundamental right or a suspect classification, Knox County needs only a hypothetical or conceivable rational basis to enact laws affecting only commercial wind farms. The Equal Protection Clause is not offended by the challenged amendments.

### (d) Nebraska Special Legislation Prohibition

Related to their Equal Protection claim, the plaintiffs assert that the zoning ordinances offend the prohibition of "special legislation" under the Nebraska Constitution. *See* filing 88 at 54; Neb. Const. art. III, § 18. While the special legislation analysis is similar to an equal protection analysis, and the two can be decided on the same facts, the focus of each test is different. *Hug v. City of Omaha*, 749 N.W.2d 884, 890 (Neb. 2008). The focus of the prohibition against special legislation is to prevent legislation that arbitrarily benefits or grants "special favors" to a specific class. *Id.* The analysis focuses on the government's purpose in creating the class and asks if there is a substantial difference of circumstances to suggest the expediency of diverse legislation.

"Classifications for the purpose of legislation must be real and not illusive; they cannot be based on distinctions without a substantial difference." *Le v. Lautrup*, 716 N.W.2d 713, 723 (Neb. 2006). The general test of constitutionality is reasonableness of classification and uniformity of

---

characterization of the zoning ordinance as true, there's no mechanism under Nebraska or federal law that prevents Knox County from banning commercial wind farms, so long as there is a conceivably or hypothetically rational reason to do so.

operation. *Id.* If the class at issue has some reasonable distinction from other subjects of a similar character, and the distinction bears some relationship to the legitimate objectives and purpose of the legislation, the Nebraska constitution is not offended. *Id.*; *see also Gourley ex rel. Gourley v. Neb. Methodist Health Sys., Inc.*, 663 N.W.2d 43, 68 (Neb. 2003) ("all reasonable intendments must be indulged to support the constitutionality of legislative acts, including classifications adopted").

Here, because Knox County's regulations involving commercial wind farms are rationally related to the unique problems encountered by the construction and maintenance of large turbines, for the reasons explained above, the zoning ordinance does not create an arbitrary and unreasonable method of classification as prohibited by the Nebraska Constitution. *See Lautrup*, 716 N.W.2d at 723. For reasons already thoroughly explained, the facts alleged do not support an inference that Knox County's classification is arbitrary or unreasonable.

### (e) Substantive Due Process

Legislation that survives equal protection rational basis scrutiny also satisfies the substantive due process analysis. *DeCrow v. N. Dakota Workforce Safety & Ins. Fund*, 864 F.3d 989, 992 (8th Cir. 2017) (quoting *Kan. City Taxi Drivers Ass'n, LLC v. City of Kansas City*, 742 F.3d 807, 809 (8th Cir. 2013). Based on the above analysis, the plaintiffs' substantive due process claims fail.

Substantive due process claims based on land use regulations impacting a state-created property right are limited to "truly irrational" government actions. *Chesterfield Dev. Corp. v. City of Chesterfield*, 963 F.2d 1102, 1104 (8th Cir. 1992); *see also Azam v. City of Columbia Heights*, 865 F.3d 980, 986 (8th Cir. 2017). A plaintiff must allege something more than the government

27

decision was arbitrary, capricious, or in violation of state law. *Id.* The theory of substantive due process is reserved for truly egregious and extraordinary cases, such as "attempting to apply a zoning ordinance only to persons whose names begin with a letter in the first half of the alphabet." *Id.* at 1004-05. An ordinance that survives rational basis review is not "truly irrational" in the constitutional sense.

Government regulations that are unreasonable or enacted in bad faith don't give rise to a substantive due process claim. *See Chesterfield*, 963 F.2d at 1105; *Singleton v. Cecil*, 176 F.3d 419, 424 (8th Cir. 1999). That doesn't mean that the conduct alleged isn't otherwise unlawful; it only means that no right created by the Due Process Clause of the Fourteenth Amendment has been violated. *Chesterfield*, 963 F.2d at 1105.

In *Chesterfield*, the Eighth Circuit expressly adopted the reasoning of *Creative Environments, Inc. v. Estabrook*, 680 F.2d 822 (1st Cir. 1982). In that case, an aspiring developer's permit to build a subdivision had been denied. But even though the zoning authority had been "motivated by parochial views of local interests" that worked against the plaintiffs' plan, and despite the allegation that town officials contravened state subdivision laws, the plaintiffs' substantive due process rights were not implicated. *Id.* at 833.

The *Creative Environments* reasoning is instructive here. The plaintiffs are not part of a protected class and the county officials are not alleged to be motivated by racial animus. Even if the county officials acted outside the scope of their authority for some "allegedly perverse reason," that's not enough to implicate substantive due process. *See Chesterfield*, 963 F.2d at 1104 (quoting *Creative Env'ts*, 680 F.2d at 833).

While the *Lingle* Court appeared to open the door to substantive due process claims arising out of merely arbitrary and capricious behavior by

government officials, *see* 544 U.S. at 542, in recent years, the Eighth Circuit has only reaffirmed that such challenges are limited to extreme and egregious circumstances that can be characterized as "truly irrational," conscious-shocking government action. *E.g., Azam,* 865 F.3d at 986; *Koscielski,* 435 F.3d at 902. That makes some sense, given that property rights are created by the state, but the substantive component of the Due Process Clause protects only those fundamental rights enshrined by the federal Constitution and "implicit in the concept of ordered liberty." *E.g., Van Orden v. Stringer,* 937 F.3d 1162, 1168 (8th Cir. 2019) (quoting *Washington v. Glucksberg,* 521 U.S. 702, 721 (1997)).

The *Koscielski* court noted, in dicta, that an allegation of an ordinance "motivated by a personal and political animus, totally unrelated to any legitimate government function," might mean an ordinance is "truly irrational" so as to support a due process claim. 435 F.3d at 903 (citing *Scott v. Greenville Cnty,* 716 F.2d 1409, 1420-21 (4th Cir. 1983)). The *Scott* case cited involved allegations that a zoning commission "singled out" a pending permit to deny it for "impartial" reasons. *See* 716 F.2d at 1420. The record in that case established that the plaintiff was deprived of a protected property interest "by the extraordinary and unlawful intervention of the county's highest governing body." *Id.*

The facts here don't indicate the same "extraordinary and unlawful" acts by a government. Knox County enacted the challenged regulations pursuant to its ordinary process. And the plaintiffs in this case cannot show that the ordinance is "totally unrelated to any legitimate government function" for the reasons explained in the Court's equal protection analysis, *supra.* As explained above, whether Knox County was *actually* motivated by public welfare is of no importance to the analysis; the ordinance must be upheld if there is any

29

*conceivable* rational basis to support it.

The plaintiffs' allegations fail to meet the high bar required to state a claim that government action infringed on substantive due process rights. The July 2024 zoning laws are not "truly irrational" in the constitutional sense, nor have the plaintiffs identified a fundamental right implicated by the same. This claim will therefore be dismissed.

### (f) Procedural Due Process

The plaintiffs, citing only *Mathews v. Eldridge,* 424 U.S. 319 (1976), assert that they were not provided notice or a meaningful opportunity to be heard before Knox County amended its zoning ordinance, offending their procedural due process rights promised by the Fourteenth Amendment. *See* filing 88 at 51. The defendants assert the plaintiffs have failed to state such a claim.[7]

Procedural due process requires a two-step analysis. *Krentz v. Robertson,* 228 F.3d 897, 902 (8th Cir. 2000). First, plaintiffs must demonstrate that the state deprived them of some "life, liberty, or property" interest. *Id.* As discussed above, the plaintiffs have adequately alleged such an interest might exist. Next, plaintiffs must establish that the state deprived them of that interest without sufficient "process." *Id.*

However, the federal Constitution does not require a hearing on adopting legislation, and the protections of procedural due process do not apply to

---

[7] The defendants also argue the plaintiffs' procedural due process claims are not ripe because they did not exhaust state court remedies. *See* filing 94 at 26. But such a requirement is only necessary in post-deprivation cases. *See Keating v. Neb. Pub. Power Dist.,* 562 F.3d 923, 929 (8th Cir. 2009). Here, the plaintiffs are challenging the constitutionality of the pre-deprivation process afforded, and there is no exhaustion requirement. *Id.*

30

legislative acts. *See, e.g., Collier v. City of Springdale*, 733 F.2d 1311, 1314 n.5 (8th Cir. 1984) (citing *Rogin v. Bensalem T'ship*, 616 F.2d 680, 693 (3d Cir. 1980)); *Foster v. Hughes*, 979 F.2d 130, 132 (8th Cir. 1992); *Bi-Metallic Inv. Co. v. St. Bd. of Equalization*, 239 U.S. 441, 445 (1915); *Onyx Props. LLC v. Bd. of Cnty. Comm'rs*, 838 F.3d 1039, 1046 (10th Cir. 2016). Persons are entitled to procedural due process in the form of an individual opportunity to be heard only when the government makes an individualized determination, not when the government commits a legislative act affecting all those similarly situated. *Foster*, 979 F.2d at 132.

In the zoning context, governments make individualized determinations subject to certain procedural requirements when they take action on permit applications, *e.g., Anderson v. Douglas Cnty.*, 4 F.3d 574, 578 (8th Cir. 1993), or requests for variances, *e.g., Pietsch*, 991 F.3d at 910. In those circumstances, procedural due process is afforded when the landowner has notice of the proposed government action and an opportunity to be heard. *Pietsch*, 991 F.3d at 910. But in Nebraska, in the absence of some individualized determination, zoning is a legislative function. *E.g., Giger v. City of Omaha*, 442 N.W.2d 182, 188 (Neb. 1989); *see also Landrum*, 899 N.W.2d at 610.

The plaintiffs argue that Knox County's adoption of new requirements for commercial wind farms was an individualized determination because the Knox County officials, and public commenters, specifically referenced the North Fork Wind Project. However, the amended zoning ordinance does not exclusively apply to the plaintiffs; it applies to all similarly situated individuals.

The plaintiffs were not entitled to individualized notice regarding the hearing, or any of the other procedural protections they claim (*i.e.*, being provided a written copy of the proposed amendments). Even though the 2023

Zoning Resolution included certain protections for the process of amending regulations, a government's alleged failure to follow its own rules does not give rise to a *constitutional* due process violation. *See Chesterfield*, 963 F.2d at 1105; *see also Onyx Props.*, 838 F.3d at 1044.

If the plaintiffs did, indeed, have a vested property interest in using the land at issue for a commercial wind farm, then they wouldn't need an opportunity to be heard because such regulations could not be retroactively applied to their land. But if they don't have a vested interest, then they weren't entitled to any individualized process. In either case, there's no procedural due process issue presented by the facts alleged.

### (g) Vagueness

The plaintiffs assert that the amendments are unconstitutionally vague, giving rise to a procedural due process violation. *See* filing 88 at 51. They cite limited support for this claim. *See id.* The defendants assert the amendments are not vague, and the plaintiffs were able to "lay out in great detail" what the amendments were in their complaint. Filing 74 at 37.

In the criminal or First Amendment context, the federal Constitution is offended if a statute "fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595 (2015). The plaintiffs argue that, because Knox County has failed, even now, to publish or make available its amendments to the Zoning Resolution, it is impossible to know for certain how the amendments will be enforced.

Regardless of the novel constitutional argument asserted, the plaintiffs don't argue that the July 2024 amendments to the zoning plan are vague in their application or effect—just that Knox County has failed to adequately

32

publish the regulations. Under Nebraska law, failure to comply with statutory requirements for publishing zoning ordinance prevents the zoning regulations from becoming valid, effective, or enforceable—at least where the boundaries of the zoning districts can only be determined from a map. *See Deans v. West,* 203 N.W.2d 504, 525 (Neb. 1973); Neb. Rev. Stat. § 23-114.03.

While likely not a colorable constitutional claim, the plaintiffs have alleged facts supporting an inference that the zoning amendments may not be *currently* enforceable because they have yet to be published in accordance with state law.[8]

## (h) Takings

The plaintiffs argue that the challenged zoning regulations constitute a taking under the Fifth Amendment. They do not allege that Knox County has physically intruded onto or taken their land. So, the question posed is whether the July 2024 amendments to the zoning regulations "go too far" and effect a regulatory taking. *See Palazzolo,* 533 U.S. at 617. If the government wrongfully denies an application for a permit or a variance, the Fifth Amendment is a vehicle by which to pursue those claims.

## (i) Ripeness

The defendants argue that the plaintiffs' claims are not ripe because they have not yet applied for a permit, any purported act on such permit is speculative, and Knox County has not been afforded an opportunity to reach a final decision regarding the application of the challenged regulations to the

---

[8] Of course, because this claim doesn't depend on pre-hearing notice, it could be mooted at any time by appropriate publication.

property at issue.

A Takings claim ripens when the government takes a property owner's property without paying for it. *Knick*, 588 U.S. at 185. Where there is no physical intrusion onto a property owner's land, a regulatory taking ripens when the government entity charged with implementing the regulations can be said to have reached a final decision regarding the application of the regulations to the property at issue. *Palazzolo*, 533 U.S. at 618.

A final decision by the responsible government agency informs the constitutional determination of whether a regulation has deprived a landowner of "all economically beneficial use" of the property, *see Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1015 (1992), or defeated the reasonable investment-backed expectations of the landowner to the extent that a taking has occurred, *see Penn Central Transportation Co. v. City of New York*, 438 U.S. 104, 124 (1978). *Id.* For the purposes of ripeness, all a plaintiff is required to show is *de facto* finality: that there is no ambiguity about how the regulations at issue apply to the particular land in question. *See Pakdel v. City and Cnty. of San Francisco*, 594 U.S. 474, 478-9 (2021).

The Court accepts as true that any effort by the plaintiffs to obtain a conditional use permit would be futile. *See N. Mill St., LLC v. City of Aspen*, 6 F.4th 1216, 1230 (10th Cir. 2021); *Palazzolo*, 533 U.S. at 622 ("Ripeness doctrine does not require a landowner to submit applications for their own sake."); *Whitehead Oil III*, 515 N.W.2d at 406. The plaintiffs have alleged that Knox County specifically enacted the zoning amendments to foil the North Fork Wind Project, and they have adequately alleged that Knox County intends to use the zoning amendments to deny any conditional use permit application.

If the plaintiffs have a vested property interest, then the regulations

cannot be applied retroactively. The plaintiffs assert they have such an interest, but it would be futile to apply for a conditional use permit because Knox County has made clear its intention to apply the regulations retroactively. The plaintiffs seek to avoid incurring additional expenses related to their application for a permit they assert would be wrongfully denied—at least until they have some assurances that their property interest is, in fact, protected. *See Neb. Pub. Power Dist. v. MidAmerican Energy Co.*, 234 F.3d 1032, 1038 (8th Cir. 2000). The plaintiffs have sufficiently alleged that Knox County has come to a *de facto* final decision with regard to the proposed North Fork Wind Project.

### (ii) Regulatory Takings

There are "four types" of regulatory takings. *E.g.*, *Becker v. City of Hillsboro*, 125 F.4th 844, 852 (8th Cir. 2025). First are regulations that require an owner to suffer a permanent physical invasion of his property. *Id.* Second are regulations that completely deprive an owner of all economically beneficial use of his property. *Id.* (citing *Lucas*, 505 U.S. at 1014). Third are exactions, which require an owner to dedicate a portion of his property in exchange for a building permit. *Id.* And the remaining regulatory takings are subject to the balancing test announced in *Penn Central*. *Id.* The plaintiffs seek relief under two of those doctrines: the prohibition on exactions, and the *Penn Central* test.[9]

---

[9] The plaintiffs' complaint alleges that the zoning ordinances "deprive North Fork Wind of all economically beneficial uses of its protected property interests," filing 66 at 36, but they have not invoked *Lucas* as a basis for their claims arising under the Takings Clause. *See generally* filing 88.

a. Exactions

The plaintiffs allege the challenged zoning regulations constitute an "exaction" for the purposes of the Fifth Amendment. *See* filing 88 at 47. According to the plaintiffs, "an exaction occurs when the government impermissibly subjects the issuance of a permit to compliance with certain conditions." Filing 88 at 47 (citing *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 612 (2013)). But that definition is quite incomplete, and ignores the context of exactions jurisprudence.

Exactions are *narrowly* defined as "land-use decisions conditioning approval of development on the dedication of property to public use." *Becker*, 125 F.4th at 855 (quoting *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 702 (1999)). Examples of exactions include conditioning a building permit on the owner's deeding over a public right-of-way, *see Nollan*, 483 U.S. at 827; *Dolan v. City of Tigard*, 512 U.S. 374, 380 (1994), or requiring a landowner to pay for improvements to offsite public lands before a permit issues, *see Koontz*, 570 U.S. at 602. A government offends the Takings Clause if it subjects a landowner's application for a permit to "dedications of property so onerous that, outside the exactions context, they would be deemed *per se* physical takings." *See Lingle*, 544 U.S. at 546.

The facts alleged do not support even an inference that the zoning regulations require the plaintiffs to dedicate or relinquish part of their property for some public use as a condition of a permit to construct their wind farm. The exaction analysis is simply inapplicable here. A government may require certain conditions be met before issuing a conditional-use permit without offending the Fifth Amendment. The constitutional limitation only prevents the government from requiring public use of such property as a condition of the permit, except in certain circumstances. But Knox County is

36

not alleged to have required such conditions before issuing a permit, and so the plaintiffs have failed to state a claim for an "exaction" under the Takings Clause.

The plaintiffs' mistaken belief that an exaction occurs merely because a government "subjects the issuance of a permit to compliance with certain conditions" is divorced from the foundational principles employed by courts when reviewing government action. Unconstitutional exactions involve a *narrow* subset of extortionate government action that coerces individuals to give up their constitutional rights. *See Koontz*, at 570 U.S. 604. The plaintiffs have failed to allege any "extortionate" action by Knox County.

### b. *Penn Central* Balancing

Courts use the *Penn Central* balancing test, announced by the Supreme Court in 1978, to determine whether a regulation constitutes a compensable taking. *See Becker*, 125 F.4th at 856. Courts consider three factors to make such a determination: (1) the regulation's economic effect on the landowner, (2) the extent to which the regulation interferes with reasonable investment-backed expectations, and (3) the character of the government action. *Id.*

At this early stage of the proceedings, the plaintiffs have stated a claim for a regulatory taking based on the above factors. The plaintiffs have alleged (and the defendants have conceded) that the profit ceiling for the North Fork Wind Project is quite high; far higher than the $5.3 million North Fork Wind has *already* expended developing the project. North Fork Wind has alleged significant investment-backed expectations for the property it is leasing.

The reasonableness of an expectation is shaped by the regulatory regime in place at the time the claimant acquires the property. *Becker*, 125 F.4th at 858. North Fork Wind began acquiring land shortly before and after the

November 2023 Zoning Resolution was enacted, which required a lesser setback requirement. North Fork Wind's other alleged expenses, on engineers, experts, and construction of meteorological towers, were reasonably premised on the November 2023 law that North Fork Wind helped shape over several years, through public comment and other lobbying efforts. The plaintiffs' expectations are more than "abstract," and were not unilateral.

For these reasons, the plaintiff has stated a claim that the regulations, as Knox County intends to enforce them, constitute a taking under *Penn Central.* If the plaintiffs have a vested property interest, the challenged regulations cannot be enforced against them, and they might be entitled to some relief to the extent Knox County's regulations could be considered a "temporary taking." *See First Eng. Evangelical Lutheran Church v. Los Angeles Cnty.,* 482 U.S. 304, 307 (1987); Neb. Const. Art. I-21. In the absence of such an interest, there is no takings claim.


## IV. CONCLUSION

The plaintiffs have stated a claim under the Fifth Amendment Takings Clause, and its corollary clause in the Nebraska Constitution. *See Rodehorst,* 844 N.W.2d at 768-69. The plaintiffs may also pursue state law claims, limited to those related to Knox County's alleged noncompliance with publishing zoning ordinances. The remaining claims will be dismissed.

The limited avenue available to the plaintiffs to pursue their lawsuit may seem stringent, given the allegations concerning the conduct of the Knox County zoning board. But governmental bodies are provided wide latitude to enact laws that *those bodies* believe are in the best interest of the public. It is not the place of the Court to disrupt those decisions. *E.g., Mensie,* 917 F.3d at 692 (courts "are not to assume the role of a super zoning board"); *Chesterfield,*

38

963 F.2d at 1104 (a court does not "sit as a zoning board of appeals"); *Gourley,* 663 N.W.2d at 68 ("courts will not reexamine independently the factual basis on which a legislature justified a statute, nor will a court independently review the wisdom of the statute").

 To be successful in their Takings claims, the plaintiffs must first prove that they had a vested interest in using the land at issue as a wind farm. To do so, Nebraska law requires that the *physical* use of the land be of such a "substantial" nature so as to put the "neighborhood" on notice of the nonconforming use of the land. *See Petsch,* 109 N.W.2d at 392; *Thieman,* 789 N.W.2d at 719; *Moore,* 155 N.W.2d at 321. The alleged behavior on the part of Knox County has no relevance to the determination of the plaintiffs' property interest. Whether Knox County's attitude towards wind energy is wise or in the best interest of its citizens are questions outside this Court's purview. Rather, those issues must be decided by the political process.

That said, the considerations in Fed. R. Civ. P. 42(b) warrant bifurcated discovery. The factual evidence required to determine whether the plaintiffs have a vested property interest is wholly separate from the other issues presented in this case (and is likely determinative). In the interests of expediency, and to avoid prejudice, the Court will limit discovery to the issue of whether the plaintiffs' physical use of their property was substantial enough to vest a property interest in a now-nonconforming use. *See* Rule 42(b).

Accordingly,

IT IS ORDERED:

1.  Defendant Kevin Mackeprang's motion to dismiss (filing 83) is granted.

39

2.     Kevin Mackeprang is terminated as a party.

3.     The Knox County defendants' motion to dismiss (filing 73) is granted in part and denied in part.

4.     This matter is referred to the Magistrate Judge for case progression and bifurcated discovery.

Dated this 14th day of March, 2025.

BY THE COURT:

John M. Gerrard
Senior United States District Judge