## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| NORTH FORK WIND, LLC; GARNET A. ANDERSON; CHARLES L.M. ANDERSON; HELEN CARLSON; MARDELL HOCHSTEIN; MARVIN HOCHSTEIN; ELDON KRONBERG; PATRICIA KRONBERG; RANDALL REPENNING; DEAN STUECKRATH; STEPHANIE STUECKRATH; ANGELA WAMBERG; DAN WAMBERG; and WALTER FAMILY FARM, LLC, | Case No. 4:24-cv-03150-JMG-MDN |
| Plaintiffs | |
| vs. | |
| KNOX COUNTY, NEBRASKA, THE KNOX COUNTY BOARD OF SUPERVISORS, THE KNOX COUNTY PLANNING COMMISSION; MARTY O'CONNOR, KEVIN G. MLADY, JAMES SOKOL, JR., DANNY SCHOLTE, and JIM BORGMANN, in their official capacities as KNOX COUNTY SUPERVISORS, KELSY JELINEK, KNOX COUNTY ZONING ADMINISTRATOR, DOUG DESHAZER, DEAN WILKEN, ROBERT GANZ, NEIL CLAUSEN, ROBERT LARSEN, JIM KOTROUS, KEITH NIELSEN, GREG KUHLMAN, and DAVID A. ARENS in their official capacities as Members of the KNOX COUNTY PLANNING COMMISSION, | **REPLY BRIEF IN SUPPORT OF MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT** |
| Defendants. | |

1

## INTRODUCTION

Knox County's Response is a transparent attempt to improperly relitigate the Motion to Dismiss and avoid discovery, including written discovery that Knox County has refused to answer for more than three months. (ECF 102). In particular, Knox County ignores the permissible "not clearly frivolous" standard to assess futility in amended and supplemental pleadings, which the Second Amended Complaint readily satisfies, and misconstrues the Court's Order on the Motion to Dismiss the First Amended Complaint dated March 14, 2025 ("Order")[1], which already confirmed Plaintiffs have asserted plausible claims. *See Popp Telcom v. Am. Sharecom, Inc.*, 210 F.3d 928, 944 (8th Cir. 2000); (ECF 95). The Court should grant the Motion for Leave to File the Second Amended Complaint, which falls well within the current progression deadlines, as even Knox County is forced to concede.

## ARGUMENT

I.  **DEFENDANTS MISCONSTRUE THE PERMISSIVE STANDARD FOR AMENDED AND SUPPLEMENTAL PLEADINGS UNDER RULE 15(A)(2) AND (D).**

Defendants misstate and oversimplify the futility standard under Federal Rule of Civil Procedure 15(a)(2) and (d). (ECF 124, p. 1).[2] Futility is a narrow exception and a high bar. *Dobles v. Black Hills Corp.*, 768 F. Supp. 3d 991, 1009 (D.S.D. 2025). "An amendment is futile if the amended claim could not withstand a

---

[1] Capitalized terms not otherwise defined have the same meaning as in the Opening Brief in Support of the Motion for Leave to File the Second Amended Complaint.

[2] *Riggs v. City of Owensville*, No. 4:10-CV-793 CAS, 2011 WL 1576723, at *2 (E.D. Mo. Apr. 26, 2011) (observing that courts generally apply the same standard for leave to amend and supplement).

motion to dismiss under Rule 12(b)(6)." *Mt. Hawley Ins. Co. v. City of Richmond Heights*, 92 F.4th 763, 769 (8th Cir. 2024). "[I]n deciding whether to permit a proffered amendment, a court should not consider the likelihood of success unless the claim is 'clearly frivolous.'" *Popp Telcom,* 210 F.3d at 944.

Where some of the claims are plausible, or where claims require the resolution of factual issues, leave to amend must be granted. *Cmty. Voice Line, LLC v. Great Lakes Commc'n Corp.*, 295 F.R.D. 313, 321 (N.D. Iowa 2013) (interpreting "the Rule 15 'futility' analysis to require denial of a motion for leave to amend only if it is clear that each of the proposed new claims would succumb to a Rule 12 motion to dismiss."); *Huerta-Orosco v. Cosgrove*, 979 F. Supp. 2d 974, 979 (N.D. Iowa 2013) (holding that futility must be "obvious" and not subject to any factual issues).

In those instances, the claims "simply cannot be resolved in a ruling on a timely motion for leave to amend the complaint." *Id.*; *see also Henderson State Bank v. Lowderman*, No. 8:20CV47, 2021 WL 5234409, at *2 (D. Neb. Nov. 10, 2021) (quoting *Doyle v. Eli Lilly & Co.*, No. 8:06CV412, 2008 WL 215802, at *2 (D. Neb. Jan. 24, 2008)) ("The question of whether Defendant has sufficiently plead[ed] the affirmative defenses 'should be determined on the merits rather than as part of a motion to amend.'").

## II.    THE SECOND AMENDED COMPLAINT ASSERTS PLAUSIBLE STATE AND FEDERAL CLAIMS THAT READILY MEET THE "NOT CLEARLY FRIVOLOUS" STANDARD.

The Second Amended Complaint alleges plausible claims and thus readily meets the standard for leave to amend or supplement under Federal Rule of Civil Procedure 15(a)(2) and (d).

3

A.      Claims Already Found Plausible.

Defendants' repeated emphasis on the Order ignores the obvious. The District Court already held that some of Plaintiffs' claims are plausible and require further factual development. *See, e.g.*, (ECF 95, p. 1) (allowing Takings Clause claim to proceed). North Fork Wind and the Landowners are actively developing the claim's underlying factual issues in discovery, including written discovery served on May 2nd that Defendants have yet to answer. (ECF 102). Nothing more is required to satisfy the futility exception.

That remains true even after the Ban. As the Court correctly reasoned in its Order, "[i]n Nebraska, the right to a nonconforming use under zoning regulations is recognized as a property right." (ECF 95, p. 13) (citing *Cnty. of Sarpy v. Petsch*, 109 N.W.2d 388, 392 (Neb. 1961)). "A property interest has vested where a landowner, in good faith reliance on existing zoning laws, has substantially changed position by either causing substantial construction to be made or by incurring substantial expenses related to the construction, or both." (ECF 95, p. 13) (citing *Whitehead Oil Co. v. City of Lincoln*, 234 Neb. 527, 533, 451 N.W.2d 702, 706 (1990)). In other words, a zoning ordinance may not "operate retroactively to deprive a property owner of previously vested rights by preventing a use to which the property was put before enactment of the prohibitory ordinance." *Whitehead Oil. Co.*, 234 Neb. at 533, 451 N.W.2d at 706.

Whether North Fork Wind and the Landowners have a vested right to develop the Wind Farm as a non-conforming use depends on the expenditures and reliance

4

prior to the Amendments. Once vested, subsequent changes to the Zoning Regulations, including the Ban, do not apply.

Defendants' self-perceived likelihood of success, at this early stage in the litigation, is irrelevant. "[L]ikelihood of success on the new claim or defense is not a consideration for denying leave to amend unless the claim is clearly frivolous." *Ausable Cap. Partners, LLC v. Sati Exports India Priv. Ltd.*, No. 8:21CV129, 2023 WL 4705625, at *2 (D. Neb. July 24, 2023) (quoting *Becker v. Univ. of Neb.*, 191 F.3d 904, 908 (8th Cir. 1999)); *see also AB Realty, LLC v. Lane*, No. 8:19CV102, 2023 WL 2374630, at *2 (D. Neb. Mar. 6, 2023) (same).

In sum, Defendants can hardly credibly contend that the takings claim under the Nebraska and U.S. Constitutions in the Second Amended Complaint does not satisfy the "not clearly frivolous" standard when the Court already refused to dismiss it in the First Amended Complaint. (ECF 95).

## B.    Claims Not Yet Addressed.

In addition to the takings claim the District Court already found plausible, the Second Amended Complaint includes state law and federal claims that the District Court has not yet addressed. Each of those claims has ample support at the motion to amend stage.

### i.    Enactment of the Amendments and Ban in Bad Faith.

It is well-settled that zoning regulations enacted in bad faith violate Nebraska law:

[A] new regulation may not be applied retroactively where a zoning authority is guilty of misconduct or bad faith in its dealings with an

5

applicant for a use permit in accordance with the then-existing zoning regulation, or if it arbitrarily and unreasonably adopts a new regulation in order to frustrate an applicant's plans for development rather than to promote general welfare.

*Dowd Grain Co. v. Cnty. of Sarpy*, 19 Neb. App. 550, 560, 810 N.W.2d 182, 192–93 (2012) (citing *Whitehead Oil Co. v. City of Lincoln,* 245 Neb. 660, 515 N.W.2d 390 (1994)).

Nebraska's bad faith limitation on zoning regulations mirrors other states. *See, e.g.*, *Moskovic v. City of New Buffalo*, 638 F. Supp. 3d 770, 787–91 (W.D. Mich. 2022) (Michigan law) ("'[A] court will not apply an amendment to a zoning ordinance where (1) the amendment would destroy a vested property interest acquired before its enactment, or (2) the amendment was enacted in bad faith and with unjustified delay.'"); *TSB Holdings, L.L.C. v. Bd. of Adjustment for City of Iowa City*, 913 N.W.2d 1, 15 (Iowa 2018) (Iowa law) ("When a zoning authority adopts a new zoning regulation designed to frustrate a particular applicant's plans for development, it can be discerned that an improper purpose exists.").

While the Court, in its Order, held that bad faith cannot substantiate a takings claim, it recognized that it may nevertheless be otherwise actionable:

Government regulations that are unreasonable or enacted in bad faith don't give rise to a substantive due process claim. *See Chesterfield*, 963 F.2d at 1105; *Singleton v. Cecil*, 176 F.3d 419, 424 (8th Cir. 1999). ***That doesn't mean that the conduct alleged isn't otherwise unlawful***; it only means that no right created by the Due Process Clause of the Fourteenth Amendment has been violated. *Chesterfield*, 963 F.2d at 1105.

6

(ECF 95, p. 28) (emphasis added). North Forth Wind and the Landowners have plausibly raised such a claim here, pursuant to established Nebraska law. (SAC, ¶¶ 216–18).

### ii.    Violation of the Comprehensive Plan.

Nebraska law requires counties to adopt a comprehensive development plan. Neb. Rev. Stat. § 23-114.03. Zoning regulations must be consistent with such plan. *Id*.; *see also Davis v. City of Omaha*, 153 Neb. 460, 471, 45 N.W.2d 172, 178 (1950) (holding that zoning regulations inconsistent with the comprehensive plan constitute "an unreasonable and arbitrary exercise of zoning power [and are] void."); *Enter. Partners v. Cnty. of Perkins*, 260 Neb. 650, 659, 619 N.W.2d 464, 470 (2000) (same).

The Second Amended Complaint plausibly alleges that the Amendments and Ban fail to comply with those requirements. (SAC, ¶¶ 233–44). Knox County never amended the Comprehensive Plan prior to the Amendments. (*Id*.). Purported "revisions" prior to the Ban were likewise deficient. (*Id*.). The "revisions" to the Comprehensive Plan were not publicly available prior to their purported consideration at the hearings. (*Id*.). Once adopted, Knox County provided no further clarity. (*Id*.). As North Fork Wind and the Landowners prepared the Second Amended Complaint, the revisions continued to be unavailable. (*Id*.). Even as now, at last, available under the link in Knox County's brief, the revisions consist of incomplete redlines striking some provisions of the Comprehensive Plan regarding renewable energy, while leaving others entirely intact. Knox County Comprehensive Plan    (last    accessed    July    29,    2025)

7

https://knoxcountyne.gov/pdfs/planning_zoning/regulations/comprehensive_plan%2
0amended.pdf.

As a result, the Second Amended Complaint plausibly alleges that the
Amendments and Ban are void under the Comprehensive Plan. (SAC, ¶¶ 233–44).

### iii.    Violations of the Nebraska Constitution.

The Second Amended Complaint likewise alleges that the Amendments and
Ban violate the Substantive Due Process Clause of the Nebraska Constitution. Neb.
Const. art. 1, § 21. While the Court previously dismissed a federal Substantive Due
Process claim, it has not addressed the claim's viability under the Nebraska
Constitution. (ECF 95, pp. 28–30). Precedents from the Nebraska Supreme Court
support the claim on the facts as alleged.

As the Nebraska Supreme Court has repeatedly held, "the right to conduct a
lawful business is a constitutionally protected right." Neb. Op. Att'y Gen. No. 19008,
at *1 (May 29, 2019) (collecting opinions). "[A] citizen clearly has the right to engage
in any occupation not detrimental to the public health, safety, and welfare[.]" *Lincoln
Dairy Co. v. Finigan*, 170 Neb. 777, 787, 104 N.W.2d 227, 234 (1960).

"[T]he owner's right to use his property is subject, however, to reasonable
regulation, restriction, and control by the state in the legitimate exercise of its police
powers." *Eckstein v. City of Lincoln*, 202 Neb. 741, 744, 277 N.W.2d 91, 93 (1979).
"The test of legitimacy is the existence of a real and substantial relationship between
the exercise of those powers in a particular manner, and the peace, public health,
public morality, public safety, or the general welfare of the city." *Id*. (citing *Stahla v.*

*Bd. of Zoning Adjustment*, 186 Neb. 219, 182 N.W.2d 209 (1970)). "[T]here must exist a real and substantial connection between the governmental interest and the ordinance at issue." *State v. Champoux*, 252 Neb. 769, 779, 566 N.W.2d 763, 769 (1997) (Gerrard, J., concurring).

The standard requires "a tighter nexus between the legitimate governmental purpose and the zoning ordinance at issue than the mere rational relationship." *Id.* As a result, a public body, like Knox County, "may not . . . under the guise of regulation, impose conditions which are unreasonable, arbitrary, discriminatory, or confiscatory." *Gillette Dairy, Inc. v. Neb. Dairy Products Bd.*, 192 Neb. 89, 96, 219 N.W.2d 214, 219 (1974). Rather, "regulations must be reasonable considering the nature of the business and not such as would prevent the carrying on of the business." *Id.* at 97, 219 N.W.2d at 219. "Courts are not powerless to determine the character of such legislation." *Lincoln Dairy Co.*, 170 Neb. at 787, 104 N.W.2d at 234.[3]

North Fork Wind and the Landowners have plausibly alleged that the Amendments and Ban, which altered the Zoning Regulations for commercial wind energy conversion systems for the second and third time in less than two years and enacted a commercial renewable energy ban unprecedented in the State, violate that standard. (SAC, ¶¶ 195–215).

---

[3] In addition to its viability under the Nebraska State Constitution, commentators have suggested that the "substantially advances" test remains part of the U.S. Constitution, even post-*Lingle*. As a well-known land use treatise observed, "[T]he 'substantially advance a legitimate government interest' test is not gone. *Lingle* did not overrule it, the Court simply relocated it from the Takings Clause to the Due Process Clause." 1 *Rathkopf's The Law of Zoning and Planning* § 3:4 (4th ed.) (quoting Robert Thomas, *The Ninth Circuit Rediscovers Substantive Due Process In Land Use Cases*, 31 Zoning & Plan. L. Rpt. No 11 at 7 (2008)).

iv.    **Dormant Commerce Clause.**

Resembling, once more, a premature and flawed dispositive motion, Defendants' Response on the Dormant Commerce Clause ignores the allegations of the Second Amended Complaint. North Fork Wind and the Landowners have plausibly alleged that the Amendments and Ban were impermissibly motivated by discrimination and protectionism in favor of local agriculture over out-of-state renewable energy companies, excessively burden the interstate generation and sale of electricity, and thus violate the Dormant Commerce Clause. (SAC, ¶¶ 278–98).

A state law runs afoul of the negative implications of Congress' power "[t]o regulate Commerce among the several States" if its "practical effect" is to "control [commercial] conduct beyond the boundaries of the State." *Healy v. Beer Inst., Inc.*, 491 U.S. 324, 336 (1989). Specifically, a state law is unconstitutional if it imposes a burden on interstate commerce that is "clearly excessive in relation to the putative local benefits." *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970).

Where, such as here, a complaint plausibly alleges impermissible discriminatory or protectionist intent, a state or local actor cannot avoid Dormant Commerce Clause scrutiny through reflexive citations to the police power. A defendant's claim that a law "constitutes proper exercise of police power is not final or conclusive," *Meyer v. Nebraska*, 262 U.S. 390, 400 (1923), regardless of whether it was enacted "in good faith" to "protect the health of the people." *Minnesota v. Barber*, 136 U.S. 313, 319 (1890). The mere "incantation of a purpose to promote the public health or safety does not insulate a state law from Commerce Clause attack." *Kassel*

10

v. *Cons. Freightways Corp. of Del.*, 450 U.S. 662, 670 (1981) (plurality opinion); *see also Kan. City S. Ry. v. Kaw Valley Drainage Dist.*, 233 U.S. 75, 79 (1914) (Holmes, J.) (ruling a "state cannot avoid the operation of" the Commerce Clause "by simply invoking the convenient apologetics of the police power").

Defendants likewise cannot circumvent the Second Amended Complaint through reliance on *National Pork Producers Council v. Ross.* 598 U.S. 356 (2023). One, and perhaps most obviously, petitioners in *National Pork Producers Council*, unlike North Fork Wind and the Landowners here, expressly disavowed any protectionism or discriminatory intent. *Id.* at 370 (emphasizing that petitioners "do not allege that California's law seeks to advantage in-state firms or disadvantage out-of-state rivals."). By contrast, Knox County openly revealed and affirmed its discriminatory and protectionist intent at the hearings on the Ban and Amendments. (SAC ¶¶ 121–92). That intent is likewise evident from the excessive burden on interstate commerce that *Pike* and its progeny have long recognized as actionable. "[T]he *Pike* line [of cases] serves as an important reminder that a law's practical effects may also disclose the presence of a discriminatory purpose." *Nat'l Pork Producers Council*, 598 U.S. at 377.

Two, Defendants as before, seek a premature and improper adjudication on the merits on a motion for leave to amend and supplement. Their approach contravenes "the underlying purpose of Rule 15—to facilitate decision on the merits rather than on the pleadings or technicalities." *Ausable Cap. Partners, LLC v. Sati Exports India Priv. Ltd.*, No. 8:21CV129, 2023 WL 4705625, at *3 (D. Neb. July 24,

2023) (internal quotations omitted). Simply put, "[t]he issue of whether Plaintiffs should or should not prevail on their claims 'should be determined on the merits rather than as part of a motion to amend.'" *AB Realty, LLC v. Lane*, No. 8:19CV102, 2023 WL 2374630, at *2 (D. Neb. Mar. 6, 2023) (*Doyle v. Eli Lilly & Co.*, No. 8:06CV412, 2008 WL 215802, at *2 (D. Neb. Jan. 24, 2008)).

### C.     Claims Previously Dismissed.

That one of the four claims, specifically the federal Substantive Due Process claim, was previously dismissed does not alter the analysis. *See Van Stelton v. Van Stelton*, 904 F. Supp. 2d 965, 970 (N.D. Iowa 2012) ("[T]he potential vulnerability of one count does not render the entire amendment 'futile.'").

North Fork Wind and the Landowners have no choice but to include the claim in the Second Amended Complaint, or risk waiver on appeal. *See Marshall v. Anderson Excavating & Wrecking Co.*, No. 8:14-CV-96, 2019 WL 3943441, at *2 (D. Neb. Aug. 21, 2019) (emphasizing that trial court is not bound by its own rulings until "the appellate court explicitly or implicitly adopt[s] those findings in resolving the appeal").

Its inclusion does not affect the plausibility of the claims the Court already found plausible or has yet to address. The Second Amended Complaint thus satisfies the permissive standard for amended or supplemental pleadings under Federal Rule of Civil Procedure 15(a)(2) and (d), irrespective of the inclusion of Count III.

## <u>CONCLUSION</u>

For the reasons stated above, North Fork Wind and the Landowners' claims are not "clearly frivolous," and thus readily satisfy the standard for amended and supplemental pleadings under Federal Rule of Civil Procedure 15(a)(2) and (d). The Court should grant Plaintiffs' Motion for Leave to File the Second Amended Complaint.

Dated: August 4, 2025.

NORTH FORK WIND, LLC, Plaintiff,

By:   /s/Brian Barmettler

Lindsay K. Lundholm (NE# 22224)
Brian Barmettler (NE# 27017)
of   BAIRD HOLM LLP
1700 Farnam Street
Suite 1500
Omaha, NE 68102-2068
Phone: 402.344.0500
Fax: 402.344.0588
Email: llundholm@bairdholm.com
Email: bbarmettler@bairdholm.com

AND

GARNET A. ANDERSON; CHARLES L.M. ANDERSON; HELEN CARLSON; MARDELL HOCHSTEIN; MARVIN HOCHSTEIN; ELDON KRONBERG; PATRICIA KRONBERG; RANDALL REPENNING; DEAN STUECKRATH; STEPHANIE STUECKRATH; ANGELA WAMBERG; DAN WAMBERG; and WALTER FAMILY FARM, LLC, Plaintiffs,

By:    /s/Steven G. Ranum
       Richard A. DeWitt (NE# 11002)
       Steven G. Ranum (NE# 24716)
of   CROKER HUCK LAW FIRM
       2120 S 72nd Street, Suite 1200
       Omaha, NE 68124
       Phone: 402-391-6777
       Email: rdewitt@crokerlaw.com
       Email: sranum@crokerlaw.com

## CERTIFICATE OF COMPLIANCE (WORD COUNT)

The undersigned, pursuant to NE Civ. R. 7.1(d)(4)(A), hereby certifies that the foregoing brief complies with the word limit rule set forth in NE Civ. R. 7.1(d)(1). This certification relies on the word-count function of my word-processing software, Microsoft Word 2019. The word-count function, which included all text, including the caption, headings, footnotes, and quotations, calculated that said brief contains 3,221 words.

/s/Brian Barmettler

## CERTIFICATE OF COMPLIANCE (ARTIFICIAL INTELLIGENCE)

The undersigned, pursuant to NE Civ. R. 7.1(d)(4)(B), hereby certifies that no generative artificial intelligence program was used in drafting the foregoing brief.

/s/Brian Barmettler

14

## CERTIFICATE OF SERVICE

I hereby certify that on August 4, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

David D. Begley
dbegley@lawyer.com

And I hereby do certify that I have mailed by United States Postal Service the document to the following non CM/ECF participants:

N/A

/s/Brian Barmettler