**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA**

| | |
|---|---|
| NORTH FORK WIND, LLC; GARNET A. ANDERSON; CHARLES L.M. ANDERSON; HELEN CARLSON; MARDELL HOCHSTEIN; MARVIN HOCHSTEIN; ELDON KRONBERG; PATRICIA KRONBERG; RANDALL REPENNING; DEAN STUECKRATH; STEPHANIE STUECKRATH; ANGELA WAMBERG; DAN WAMBERG; and WALTER FAMILY FARM, LLC, | Case No. 4:24-cv-03150-JMG-MDN |
| Plaintiffs | |
| vs. | |
| KNOX COUNTY, NEBRASKA, THE KNOX COUNTY BOARD OF SUPERVISORS, THE KNOX COUNTY PLANNING COMMISSION; MARTY O'CONNOR, KEVIN G. MLADY, JAMES SOKOL, JR., DANNY SCHOLTE, and JIM BORGMANN, in their official capacities as KNOX COUNTY SUPERVISORS, KELSY JELINEK, KNOX COUNTY ZONING ADMINISTRATOR, DOUG DESHAZER, DEAN WILKEN, ROBERT GANZ, NEIL CLAUSEN, ROBERT LARSEN, JIM KOTROUS, KEITH NIELSEN, GREG KUHLMAN, and DAVID A. ARENS in their official capacities as Members of the KNOX COUNTY PLANNING COMMISSION, | **BRIEF IN OPPOSITION TO PARTIAL MOTION TO DISMISS SECOND AMENDED COMPLAINT** |
| Defendants. | |

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

FACTUAL BACKGROUND ......................................................................................... 2

      A.   North Fork Wind Invests Seven Years and $19.3 Million Developing the Wind Farm in Reliance on Knox County's Support. ....................................................................................... 2

      B.   Knox County Expressly Encourages Wind Energy Development and Identifies the Wind Farm as a Priority Project. ............................. 3

      C.   In November 2023, Knox County Reaffirms Its Commitment by Enacting the Zoning Resolution. ......................................................... 4

      D.   Less Than Six Months Later, Knox County Reverses Course and Enacts Amendments Targeting the Wind Farm. .................................. 4

      E.   The Board Reaffirms Its Intent to Ban Renewable Energy in Knox County. ...................................................................................... 7

      F.   In June 2025, Amid Active Litigation, Knox County Enacts an Outright Ban on All Commercial Renewable Energy. ........................... 7

      G.   The Second Amended Complaint Brings Both State and Federal Law Claims. ...................................................................................... 8

ARGUMENT ................................................................................................................ 10

I.    Knox County Failed to Address and Thus Waived Its Partial Motion to Dismiss with Respect to Count I, Subparts (C) Through (E), Requesting Declaratory Judgment for Bad Faith, Non-Compliance with the Comprehensive Plan, and Lack of Notice. ...................................................... 10

II.   Alternatively, Count I, Subparts (C) Through (E) Plausibly Allege Bad Faith, Non-Compliance with the Comprehensive Plan, and Violations of the Zoning Regulations' Notice Requirements. ............................................... 12

      A.   Bad Faith [Count I, Subpart (C)] ................................................... 12

      B.   Failure to Provide Notice [Count I, Subpart D] ........................... 15

      C.   Failure to Comply with the Comprehensive Plan [Count I, Subpart E] ....................................................................................... 15

III.  To the Extent the Partial Motion to Dismiss Addresses Count I, Subpart E, Knox County Misconstrues Nebraska Law and Its Authority Thereunder. ....................................................................................................... 18

IV.  The Partial Motion to Dismiss Count I, Subpart (A) Applies the Wrong Standard to North Fork Wind and the Landowners' Substantive Due Process Claim Under Nebraska Law. ......................................................... 21

V.      North Fork Wind and the Landowners' Substantive Due Process Claims under Count I, Subpart (A), and Count III Are Plausible Under Any Standard of Review. ........................................................................................ 24

VI.     North Fork Wind and the Landowners Plausibly Alleged a Violation of the Dormant Commerce Clause in Count IV. .................................................. 31

CONCLUSION ............................................................................................................ 33

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Douglas County,*
4 F.3d 574 (8th Cir. 1993) ................................................................................. 25

*Azam v. City of Columbia Heights,*
865 F.3d 980 (8th Cir. 2017) ............................................................................. 28

*Boisvert v. Town of Lyndeborough,*
No. 2021-0117, 2021 WL 5122016 (N.H. Oct. 25, 2021) .................................... 14

*Butler Cnty. Dairy, L.L.C. v. Butler Cnty.,*
285 Neb. 408, 827 N.W.2d 267 (2013)................................................................ 21

*Chappelle v. Greater Baton Rouge Airport Dist.,*
431 U.S. 159 (1977) ........................................................................................... 25

*Chesterfield Dev. Corp. v. City of Chesterfield,*
963 F.2d 1102 (8th Cir. 1992) ...................................................................... 12, 28

*Connelly v. City of Omaha,*
284 Neb. 131, 816 N.W.2d 742 (2012)................................................................ 23

*State ex rel. City of Alma v. Furnas Cnty. Farms,*
266 Neb. 558, 667 N.W.2d 512 (2003)................................................................ 21

*City of Cleburne v. Cleburne Living Ctr.,*
473 U.S. 432 (1985) ............................................................................... 24, 29, 30

*Cnty. Concrete Corp. v. Town of Roxbury,*
442 F.3d 159 (3d Cir. 2006)............................................................................... 29

*Cordeco Development Corp. v. Vasquez,*
539 F.2d 256 (1st Cir. 1976)............................................................................... 27

*County of Sacramento v. Lewis,*
523 U.S. 833 (1998) ........................................................................................... 25

*Craigmiles v. Giles,*
312 F.3d 220 (6th Cir. 2002) ............................................................................. 30

*Daneshvar v. Graphic Tech., Inc.,*
No. 04-2212-JWL, 2005 WL 902113 (D. Kan. Apr. 19, 2005).............................. 11

*Davis v. City of Omaha,*
    153 Neb. 460, 45 N.W.2d 172 (1950).................................................................. 16

*Davis v. Gale,*
    299 Neb. 377, 908 N.W.2d 618 (2018).............................................................. 18

*Deans v. West,*
    189 Neb. 518, 203 N.W.2d 504 (1973) (voiding Scott Bluff County's
    zoning regulations adopted prior to a comprehensive plan)................................ 16

*Dowd Grain Co. v. Cnty. of Sarpy,*19 Neb. App. 550, 560, 810 N.W.2d
    182, 192–93 (2012)....................................................................... 12, 13, 15

*Eckstein v. City of Lincoln,*
    203 Neb. 741, 277 N.W.2d 91 (1979) ......................................................... 22, 23

*Elkhorn Valley Trucks, LLC v. United States,*
    No. 8:24CV339, 2025 WL 1261281 (D. Neb. May 1, 2025) ................................. 11

*Enter. Partners v. Cnty. of Perkins,*
    260 Neb. 650, 619 N.W.2d 464 (2000) (nullifying Perkins County
    zoning regulations for same reason)................................................................ 16

*F.C.C. v. Beach Commc'ns, Inc.,*
    508 U.S. 307 (1993) ....................................................................................... 24

*Grace Land II, LLC v. Bristol Twp.,*
    No. CV 18-5413, 2019 WL 4752026 (E.D. Pa. Sept. 30, 2019)............................ 29

*Healy v. Beer Inst., Inc.,*
    491 U.S. 324 (1989) ....................................................................................... 31

*Heiden v. Norris,*
    300 Neb. 171, 912 N.W.2d 758 (2018).............................................................. 18

*Hess v. State,*
    287 Neb. 559, 843 N.W.2d 648 (2014).............................................................. 19

*Hickory Wind, LLC v. Vill. of Cedar Point,*
    __ N.E.3d __, 2025 WL 2180622 (Ill. App. 2025).............................................. 20

*Koscielski v. City of Minneapolis,* 435 F.3d 898 (8th Cir. 2006) .................... 25, 26, 28

*Johnson v. City of Fremont,*
    287 Neb. 960, 845 N.W.2d 279 (2014).............................................................. 19

2

*Kan. City S. Ry. v. Kaw Valley Drainage Dist.*,
  233 U.S. 75 (1914) ................................................................................ 32

*Kansas City Taxi Cab Drivers Ass'n, LLC v. City of Kansas City, Mo.*,
  742 F.3d 807 (8th Cir. 2013) .............................................................. 28

*Kassel v. Cons. Freightways Corp. of Del.*,
  450 U.S. 662 (1981) (plurality opinion) ............................................. 32

*Keller v. City of Fremont*,
  280 Neb. 788, 790 N.W.2d 711 (2010) ................................................ 23

*Kelo v. City of New London*,
  545 U.S. 469 (2005) ............................................................................. 30

*Lingenfelter v. Lower Elkhorn Natural Resources District*,
  294 Neb. 46, 881 N.W.2d 892 (2016) ................................................. 23

*Lingle v. Chevron U.S.A. Inc.*,
  544 U.S. 528 (2005) ....................................................................... 12, 13

*MBSC Prop. S., LLC v. City of Myrtle Beach, S.C.*,
  No. 4:25-CV-1475-JD, 2025 WL 2484183 (D.S.C. Aug. 28, 2025) ........ 29

*Meyer v. Nebraska*,
  262 U.S. 390 (1923) ............................................................................. 32

*Minnesota v. Barber*,
  136 U.S. 313 (1890) ............................................................................. 32

*Montin v. Moore*,
  846 F.3d 289 (8th Cir. 2017) .............................................................. 11

*Moskovic v. City of New Buffalo*,
  638 F. Supp. 3d 770 (W.D. Mich. 2022) ............................................. 13

*Nathan v. Zoning Bd. of Appeals of Vill. of Russell Gardens*,
  95 A.D.3d 1018 (N.Y.S.2d 2012) ........................................................ 14

*National Pork Producers Council v. Ross*,
  598 U.S. 356 (2023) ............................................................................. 32

*Phelps, Inc. v. City of Hastings*,
  152 Neb. 651, 42 N.W.2d 300 (1950) ................................................. 20

*Pike v. Bruce Church, Inc.*,
  397 U.S. 137 (1970) ....................................................................... 31, 32

3

*Pine Hill Concrete Mix Corporation v. Town of Newstead Zoning Board
    of Appeals,*
    161 A.D.2d 1187, 559 N.Y.S.2d 48 (1990)................................................................ 15

*Plyler v. Doe,*
    457 U.S. 202 (1982) ...................................................................................... 30

*PSIP JVI Krumsville Rd., LLC v. Bd. of Supervisors of Greenwich
    Twp.,*
    284 A.3d 547 (Pa. Commw. Ct. 2022) .................................................................. 14

*Scofield v. State, Department of Natural Resources,*
    276 Neb. 215, 753 N.W.2d 345 (2008)........................................................... 22, 23

*Scott v. Greenville County,*
    716 F.2d 1409 (4th Cir. 1983) ................................................................. 26, 27, 28

*Singleton v. Cecil,*
    176 F.3d 419 (8th Cir. 1999) ......................................................................... 12, 28

*St. Joseph Abbey v. Castille,*
    712 F.3d 215 (5th Cir. 2013) ............................................................................ 30

*Stahla v. Bd. of Zoning Adjustment In & For Hall Cnty.,*
    186 Neb. 219, 182 N.W.2d 209 (1970)........................................................... 22, 23

*State v. Champoux,*
    252 Neb. 769, 566 N.W.2d 763 (1997)................................................................ 22

*Town of Orangetown v. Magee,*
    665 N.E.2d 1061 (N.Y. 1996)............................................................................ 24

*TSB Holdings, L.L.C. v. Bd. of Adjustment for City of Iowa City,*
    913 N.W.2d 1 (Iowa 2018) (Iowa law)................................................................ 13

*Turner v. Fouche,*
    396 U.S. 346 (1970) ...................................................................................... 25

*U.S. Dep't of Agric. v. Moreno,*
    413 U.S. 528 (1973) ...................................................................................... 25

*United Land Corp. of America v. Clarke,*
    613 F.2d 497 (4th Cir. 1980) ............................................................................ 27

*United States v. Cooper,*
    990 F.3d 576 (8th Cir. 2021) ............................................................................ 11

*Van Orden v. Stringer,*
  937 F.3d 1162 (8th Cir. 2019) ............................................................... 28

*Vill. of McGrew v. Steidley,*
  208 Neb. 726, 305 N.W.2d 627 (1981)................................................... 16

*Wells Fargo Tr. Co., Nat'l Ass'n v. S. Sioux City,*
  No. 8:20CV359, 2022 WL 1426623 (D. Neb. May 5, 2022) ................... 11

*Wheeler v. City of Pleasant Grove,*
  664 F.2d 99 (5th Cir. 1981) .................................................................. 24

*Whitehead Oil Co. v. City of Lincoln,*
  245 Neb. 660, 515 N.W.2d 390 (1994)....................................... 12, 13, 15

*Wisner v. Vandelay Investments, L.L.C.,*
  300 Neb. 825, 916 N.W.2d 698 (2018).................................................. 19

**Statutes**

42 U.S.C. § 1983.................................................................................. 9, 10

Neb. Rev. Stat. § 19-901 ...................................................................... 16

Neb. Rev. Stat. § 23-114(1) .................................................................. 20

Neb. Rev. Stat. § 23-114.02 ....................................................... 16, 17, 19

Neb. Rev. Stat. § 23-114.03 ........................................................ 15, 16, 18

Neb. Rev. Stat. §§ 66-901 et seq.......................................................... 19

## **INTRODUCTION**

North Fork Wind[1] and the Landowners submit this brief in opposition to Knox County's Partial Motion to Dismiss the Second Amended Complaint. As Knox County concedes—and the Court previously ruled—North Fork Wind and the Landowners stated a plausible takings claim for their vested right to complete development of the North Fork Wind Farm (the "Wind Farm") under the Zoning Resolution. Knox County's decision to effectively ban Commercial Wind Energy Conversion Systems ("CWECS") in July 2024, followed by an outright ban eleven months later, gives rise to the additional plausible claims now asserted.

First, Knox County waived its ability to seek a pre-answer dismissal of Count I, Subparts (C) through (E), by failing to address them in its opening brief. Those claims are (1) Knox County passed the Amendments and Ban in bad faith, (2) the Amendments and Ban violate Knox County's Comprehensive Plan, and (3) the Amendments and Ban contravene the Zoning Regulations' notice requirements. Each is also plausibly pleaded and well supported by Nebraska law.

Second, even as to the claims the Partial Motion to Dismiss addressed, North Fork Wind and the Landowners readily satisfied their plausibility burden. The Amendments and Ban (A) exceed Knox County's statutory authority to regulate land use, (B) violate North Fork Wind and the Landowners' substantive due process protections under state and federal law, and (C) contravene the Dormant Commerce Clause. Any purported deficiencies under the First Amended Complaint were cured

---

[1] Capitalized terms not otherwise defined have the same meaning as in the Second Amended Complaint (ECF 143).

by the Ban, in light of Knox County's own admission that it enacted the Ban solely to end this litigation and prevent development of the Wind Farm. The Court should deny the Partial Motion to Dismiss.

## FACTUAL BACKGROUND

**A. North Fork Wind Invests Seven Years and $19.3 Million Developing the Wind Farm in Reliance on Knox County's Support.**

The Wind Farm is a planned 600-megawatt CWECS—the third such facility in Knox County. (ECF 66, ¶¶ 70–71, 81). North Fork Wind has actively developed the Wind Farm since 2017. (*Id.*). Developing a CWECS of this magnitude is an extensive, multi-year undertaking, with many milestones that predate a conditional use permit application. (*Id.*, ¶¶ 110–112, 115). North Fork Wind diligently completed these steps. (*Id.*, ¶¶ 115, 120). Specifically, North Fork Wind:

1. Conducted geotechnical and engineering analyses to select the proposed site layout, including constructing meteorological towers with permits from Knox County;

2. Assessed site-specific impacts, including anticipated maximum sound levels, shadow-flickering, effects on microwave and electromagnetic communications, and migratory flyways;

3. Obtained general liability-insurance coverage;

4. Secured leases and easements from landowners on tens of thousands of acres to accommodate over 150 turbines; and

5. Filed notices of proposed construction with the Federal Aviation Administration ("FAA") for each turbine site. (*Id.*, ¶¶ 112-113).

Those steps required significant financial investment. (*Id.*, ¶ 115). To date, North Fork Wind has spent more than $19.3 million, including:

2

1. A $16.765 million security deposit to the Southwest Power Pool to secure the Wind Farm's place in the interconnection queue to transfer the power ultimately generated by the Wind Farm; and

2. Approximately $1 million in costs for the previously detailed professional studies. (*Id.*, ¶ 115(a)-(c)).

(*Id.*). Beyond these expenditures, North Fork Wind anticipates spending more than $5.4 million to complete the conditional use permit application. (*Id.*, ¶ 116). An additional $7.91 million in professional engineering, survey, and title-clearing costs would follow the granting of a conditional use permit, before commencement of construction. (*Id.,* ¶¶ 119–120).

## B. Knox County Expressly Encourages Wind Energy Development and Identifies the Wind Farm as a Priority Project.

Prior to the Amendments and Ban, Knox County not only approved existing CWECS but affirmatively promoted new ones, including the Wind Farm. (*Id.*, ¶¶ 58–59, 66–69, 78–98). Promoting the use of Knox County's natural resources, including wind, was an established pillar of the County's strategic planning. (*Id.*).

Knox County codified this vision in the Comprehensive Plan, adopted by the Board in 2020. (*Id.*, ¶ 80, Ex. A). The Comprehensive Plan emphasized Knox County's commitment to "planned growth," which required assessing "what is good land use" and "how to manage change in order to provide benefit for the community and residents." (*Id.*, ¶¶ 83–85, Ex. A, pp. 3, 6). The Board made clear that this assessment would include continued support for wind energy. (*Id.*, ¶¶ 86–93, Ex. A, pp. 51–52).

Knox County's support was specific and concrete. (*Id.*, ¶¶ 87–93). The Comprehensive Plan identified specific projects, including the existing Elkhorn Ridge and Crofton Bluffs CWECS, as well as the Wind Farm. (*Id.*, ¶¶ 93–94). The

3

Comprehensive Plan contemplated that identified projects, like the Wind Farm, would be built over the next two decades. (*Id.*, ¶ 95, Ex. A, p. 2).

## C. In November 2023, Knox County Reaffirms Its Commitment by Enacting the Zoning Resolution.

Three years after adopting the Comprehensive Plan, Knox County enacted the Zoning Resolution. (*Id.*, ¶¶ 100–103, Ex. B). The Zoning Resolution reaffirmed Knox County's commitment to CWECS by expressly permitting such facilities subject to reasonable conditions. (*Id.*, ¶¶ 103–109).

## D. Less Than Six Months Later, Knox County Reverses Course and Enacts Amendments Targeting the Wind Farm.

The reversal came swiftly. Less than six months after Knox County adopted the Zoning Resolution, wind energy opponents proposed amendments targeting CWECS and the Wind Farm. (*Id.*, ¶¶ 121-122).  The proposed amendments included requiring a two-mile setback from non-participating dwellings, escrowed decommissioning funds, and $5 million in insurance per turbine. (*Id.*, ¶¶ 121–123). The Zoning Administrator's transmittal report to the Planning Commission specifically referenced the Wind Farm. (*Id.*, ¶¶ 124–125, Ex. D).

The Planning Commission held public meetings on May 14 and June 11, 2024, with deficient notice. (*Id.*, ¶¶ 125–131). In particular, the May 14 notice omitted the proposed amendment text, and no written notice was sent to impacted landowners. (*Id.*). At the June 11 meeting, Michael Kumm, the leader of the Wind Watchers, received extensive presentation time while opposing comments were limited. (*Id.*). Comments favoring the amendments included false allegations about the Wind Farm, such as mistaken representations about turbine heights, anger over the lack of

4

payments to non-participating landowners, and the erroneous notion that Knox County would be liable for decommissioning. (*Id.*, ¶ 127).

The Planning Commission recommended passage of the proposed amendments substantially as proposed by the Wind Watchers. (*Id.*, ¶ 132). Those amendments included:

1. a 1.25-mile (6,600 feet) setback from non-participating dwellings for commercial wind turbines;

2. a surety bond in an arbitrary amount set by the Board, in their sole discretion, to be updated every five years, to secure the cost of decommissioning;

3. liability insurance in an amount determined by the Board, in their sole discretion, for the Wind Farm;

4. a definition of "shadow flicker"; and

5. a requirement for Aircraft Detection Lighting Systems ("ADLS"), which state law already requires.

(*Id.*). The Board held public meetings on the proposed amendments on June 11, June 21, July 10, and July 24, 2024, with minutes repeatedly referencing the Wind Farm. (*Id.*, ¶¶ 133–135, 138, Exs. E–H).

At the July 10 meeting, attorney Scott Gropp, representing wind energy opponents, advocated for a setback exceeding one mile to ensure the Wind Farm could not be built or North Fork Wind would be forced to make significant payments to non-participating landowners. (*Id.*, ¶¶ 136–137). Knox County Attorney John Thomas confirmed in a July 23, 2024, email to Supervisor Mackeprang that the July 24 meeting was "about the project and its viability," referring to the Wind Farm. (*Id.*, ¶ 145).

5

On July 24, 2024, the Board passed the Amendments, substantially tracking the Kumm proposals:

1. 1.25-mile (6,600 feet) setback from non-participating dwellings, more than tripling the length of the setbacks in the Zoning Resolution;

2. the decommissioning bond, to be set in Knox County's sole discretion; and

3. without public comment or prior listing on the agenda, a requirement that Knox County be listed as an additional insured on North Fork Wind's insurance policies for the construction, operation, and maintenance of the Wind Farm, even though the Wind Farm will be sited entirely on private property.

(*Id.*, ¶¶ 139–140, 143, 146).

The Board's stated reasons for the 1.25-mile setback were:

1. the incorrect conclusion, based on mistaken representations, that the Wind Farm's turbines were double the height of another local CWECS;

2. North Fork Wind could pay to obtain waivers from the additional non-participating landowners within the extended setback range, as previously advocated by Gropp;

3. a Board member stated that he opposed the Wind Farm because his children did not want to look at it; and

4. certain of the Board members simply trusted the recommendation of the Planning Commission.

(*Id.*, ¶ 143). Supervisor O'Connor urged adding Knox County as an additional insured, reasoning that Knox County could file claims under North Fork Wind's policies if North Fork Wind breached its agreements with landowners, though he did not specify the types of covered breaches. (*Id.*, ¶¶ 141–142).

The Amendments render any conditional use permit application for the Wind Farm futile. *(Id.*, ¶¶ 160–165). The 1.25-mile setback, overlaid with other setback

6

limits for airports and wetlands, precludes construction of the Wind Farm without variances. (*Id*.). Because the Board would not grant a variance, any application would result in a predetermined denial and cancellation of the Wind Farm. (*Id*.).

## E. The Board Reaffirms Its Intent to Ban Renewable Energy in Knox County.

Following passage of the Amendments, the Board reconfirmed its stance against renewable energy. At its September 18, 2024, meeting, the Board denied a conditional use permit for a solar project that met all applicable zoning regulations, required no variances, and received the Planning Commission's recommendation of approval. That denial contradicted the Board's stated principle that it would defer to the Planning Commission's recommendation. (*Id*., ¶¶ 152–155).

At its October 2, 2024, meeting, though the Board took no official action, a Supervisor remarked that he wanted to evaluate additional changes to protect against a "company trying to ram another project down [the County's] throat." (*Id*., ¶ 156). He was referring to North Fork Wind. (*Id*.).

## F. In June 2025, Amid Active Litigation, Knox County Enacts an Outright Ban on All Commercial Renewable Energy.

After almost a year of litigation, the County adopted a permanent, county-wide ban on all commercial renewable energy developments. (*Id*., ¶¶ 166–168). In April 2025—one month after the Court found Plaintiffs had plausibly alleged takings and state law claims—Knox County initiated the process to ban all commercial wind and solar energy conversion systems. The Ban's stated goals were to (1) end this case and (2) ensure North Fork Wind could never develop the Wind Farm, regardless of the litigation's outcome. (*Id*., ¶¶ 168–169).

At the April 8, 2025, Planning Commission meeting, Knox County's counsel stated in open session that banning commercial renewable energy developments would effectively terminate the ongoing litigation. (*Id.*, ¶¶ 170–173). He added that he planned to file a motion for summary judgment relying on "footnote 6" of the "recent federal decision," and that the ban would be the "final nail" in the Wind Farm's "coffin." (*Id.*).

In May 2025, the Planning Commission recommended passage of the Ban. (*Id.*, ¶¶ 174–185). The next month, the Board adopted it. (*Id.*, ¶¶ 186–192, Ex. K).

## G. The Second Amended Complaint Asserts Both State and Federal Law Claims.

North Fork Wind and the Landowners filed the Second Amended Complaint to address the Ban. The Second Amended Complaint asserts four counts. The Partial Motion to Dismiss does not address many of them. For ease of reference, the counts and their subparts are briefly summarized here.

**State law claims.** Count I seeks declaratory judgment and injunctive relief that the Amendments and Ban are void under Nebraska law on five theories. First, the Amendments and Ban violate substantive due process under Article I, § 3 of the Nebraska Constitution by infringing the right to conduct a lawful business. (*Id.* ¶¶ 195–210). They are arbitrary, capricious, unreasonable, and motivated by animus; lack a legitimate government interest; and bear no rational relationship to public health, safety, morals, or general welfare. (*Id.*).

Second, the Amendments and Ban constitute an unlawful taking under Article I, § 21 of the Nebraska Constitution, and infringe on North Fork Wind and

8

the Landowners' vested rights. (*Id.* ¶¶ 211–215). Those vested interests arise from completing 70 percent of preconstruction investments, constructing meteorological towers, and executing leases and easements—all in substantial reliance on the Zoning Resolution. (*Id.*).

Third, Defendants passed the Amendments and Ban in bad faith, violating Nebraska's prohibition on zoning regulations adopted to frustrate development rather than promote the general welfare. (*Id.*, ¶¶ 216–218).

Fourth, Knox County enacted the Amendments and Ban without the required notice. (*Id.*, ¶¶ 219-221).

Finally, the Amendments and Ban exceed Knox County's authority to regulate renewable energy developments under Nebraska law. (*Id.*, ¶¶ 222-245). Nebraska law does not permit a county to ban an otherwise permissible land use or pass regulations contravening its Comprehensive Plan. (*Id.*).

**Federal law claims.** The Second Amended Complaint asserts three federal counts. Count II alleges a failure to pay just compensation in violation of the Fifth Amendment Takings Clause, incorporated through the Fourteenth Amendment, pursuant to 42 U.S.C. § 1983. (*Id.*, ¶¶ 246–250). North Fork Wind and the Landowners possess property interests in development, leases, and easements covering over 42,700 acres, vested rights through substantial expenditures, and contractual expectations of reliable income. The Amendments and Ban frustrate investment-backed expectations, destroy primary expectations, and deprive North

9

Fork Wind and the Landowners of all economically beneficial use of their protected property interests. (*Id.*, ¶¶ 250–253, 259–261).

Count III alleges deprivation of substantive due process under the Fourteenth Amendment pursuant to 42 U.S.C. § 1983. The Amendments and Ban were enacted to terminate a lawsuit rather than serve a legitimate public purpose. (*Id.*, ¶¶ 270–272, 274–275). They constitute egregious, arbitrary, discriminatory, confiscatory, and conscience-shocking conduct with no rational relation to legitimate regulatory goals. (*Id.*).

Count IV contends the Amendments and Ban violate the Dormant Commerce Clause. (*Id.*, ¶¶ 277–281). Both were motivated by economic protectionism and animus toward out-of-state businesses. They substantially burden interstate energy generation and transmission, target North Fork Wind as an out-of-state entity, and force energy generation across state lines. (*Id.*, ¶¶ 282, 290, 296–297).

## ARGUMENT

I. **Knox County Failed to Address and Thus Waived Its Partial Motion to Dismiss with Respect to Count I, Subparts (C) Through (E), Requesting Declaratory Judgment for Bad Faith, Non-Compliance with the Comprehensive Plan, and Lack of Notice.**

Count I includes claims for declaratory judgment and injunctive relief that the Amendments and Ban were enacted (1) in bad faith; (2) in violation of Knox County's Comprehensive Plan; and (3) without proper notice. (ECF 143, Count I(C)-(E), ¶¶ 216-245). Knox County failed to address those claims in its opening brief. As a result, they are not before the Court on the Partial Motion to Dismiss.

10

A defendant waives its ability to seek dismissal under a Rule 12(b)(6) motion for claims it did not address in its brief. "[A] party's failure to make an argument in its opening brief results in waiver of that argument." *United States v. Cooper*, 990 F.3d 576, 583 (8th Cir. 2021); *see also Montin v. Moore*, 846 F.3d 289, 295 (8th Cir. 2017) ("Because [c]laims not raised in an opening brief are deemed waived, and [appellant] failed to address the . . . claim in his opening brief, [appellant] waived this issue."); *Elkhorn Valley Trucks, LLC v. United States*, No. 8:24CV339, 2025 WL 1261281, at *18 (D. Neb. May 1, 2025) (holding that defendant waived a Rule 12(b)(6) motion with respect to claims its brief did not address).

Once waived, a defendant may not raise a Rule 12(b)(6) defense in another pre-answer motion. "[A] defendant may not raise failure to state a claim after filing an initial 12(b) motion to dismiss 'unless that defense is made in the defendant's answer to the complaint, in a motion for judgment on the pleadings, or at trial.'" *Wells Fargo Tr. Co., Nat'l Ass'n v. S. Sioux City*, No. 8:20CV359, 2022 WL 1426623, at *3 (D. Neb. May 5, 2022) (citing *Daneshvar v. Graphic Tech., Inc.*, No. 04-2212-JWL, 2005 WL 902113, at *1 (D. Kan. Apr. 19, 2005)).

Knox County's brief does not address the state law claims for bad faith, non-compliance with the Comprehensive Plan, and lack of proper notice. (ECF 143, ¶¶ 216-245). By omitting those claims from the Partial Motion to Dismiss, Defendants have waived their right to challenge them in a pre-answer motion. Those claims remain pending.

11

II.  **Alternatively, Count I, Subparts (C) Through (E) Plausibly Allege Bad Faith, Non-Compliance with the Comprehensive Plan, and Violations of the Zoning Regulations' Notice Requirements.**

Independent of Knox County's failure to address Count I, Subparts (C) through (E), in its brief, those claims satisfy the plausibility standard.[2]

### A.  Bad Faith [Count I, Subpart (C)]

It is well-settled that zoning regulations enacted in bad faith violate Nebraska law:

> [A] new regulation may not be applied retroactively where a zoning authority is guilty of misconduct or bad faith in its dealings with an applicant for a use permit in accordance with the then-existing zoning regulation, or if it arbitrarily and unreasonably adopts a new regulation in order to frustrate an applicant's plans for development rather than to promote general welfare.

*Dowd Grain Co. v. Cnty. of Sarpy*, 19 Neb. App. 550, 560, 810 N.W.2d 182, 192–93 (2012) (citing *Whitehead Oil Co. v. City of Lincoln,* 245 Neb. 660, 515 N.W.2d 390 (1994)).

The Court's Order held that bad faith cannot substantiate a takings claim after *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 545 (2005). (ECF 95, p. 28). The Court recognized, however, that such conduct may be otherwise actionable:

> Government regulations that are unreasonable or enacted in bad faith don't give rise to a substantive due process claim. *See Chesterfield*, 963 F.2d at 1105; *Singleton v. Cecil*, 176 F.3d 419, 424 (8th Cir. 1999). ***That doesn't mean that the conduct alleged isn't otherwise unlawful***; it only means that no right created by the Due Process Clause of the Fourteenth Amendment has been violated. *Chesterfield*, 963 F.2d at 1105.

---

[2] North Fork Wind and the Landowners only address the unaddressed claims' plausibility in case the Court finds the Partial Motion to Dismiss has not been waived with respect to these claims even though they were not addressed in the Defendants' brief.

12

(*Id.*) (emphasis added).

North Fork Wind and the Landowners have asserted such a claim for declaratory and injunctive relief. (ECF 143, ¶¶ 216-218). The bad faith underlying Count I, Subpart (C) is independent of its former role as a premise for a takings claim. As one well-known commentator observed, the bad faith doctrine continues to protect property interest holders from "'eleventh hour' rezoning measures," like Knox County enacted here. Arden H. Rathkopf *et al.*, 2 Rathkopf's The Law of Zoning and Planning § 37:5 (4th ed. 2025).

The bad faith limitation remains equally applicable today. The Nebraska Court of Appeals reaffirmed the prohibition from *Whitehead Oil* in *Dowd Grain Company*, eight years after *Lingle*. 19 Neb. App. at 560, 810 N.W.2d at 192-93.[3]

Other states have similarly reaffirmed the bad faith limitation post-*Lingle*. *See, e.g., Moskovic v. City of New Buffalo*, 638 F. Supp. 3d 770, 787–791 (W.D. Mich. 2022) (Michigan law) ("'[A] court will not apply an amendment to a zoning ordinance where (1) the amendment would destroy a vested property interest acquired before its enactment, or (2) the amendment was enacted in bad faith and with unjustified delay.'"); *PSIP JVI Krumsville Rd., LLC v. Bd. of Supervisors of*

---

[3] In addition to its viability under the Nebraska Constitution, commentators have suggested the "substantially advances" test remains part of the U.S. Constitution, even post-*Lingle*. "[T]he 'substantially advance a legitimate government interest' test is not gone. *Lingle* did not overrule it, the Court simply relocated it from the Takings Clause to the Due Process Clause." Arden H. Rathkopf *et al.*, 1 *Rathkopf's The Law of Zoning and Planning* § 3:4 (4th ed. 2025) (quoting Robert Thomas, *The Ninth Circuit Rediscovers Substantive Due Process In Land Use Cases*, 31 Zoning & Plan. L. Rpt. No. 11 at 7 (2008)).

*Greenwich Twp.*, 284 A.3d 547, 555 (Pa. Commw. Ct. 2022) (Pennsylvania law) ("[W]hen local officials oppose development otherwise sanctioned 'by citing trifling, over-technical, or simply reasons unrelated to the law of zoning,' they act in bad faith. Decisions on land development plans that are tainted by bad faith will be set aside.") (internal citations omitted); *Boisvert v. Town of Lyndeborough*, No. 2021-0117, 2021 WL 5122016, at *1 (N.H. Oct. 25, 2021) (New Hampshire law) (recognizing an exception to "the time of decision rule" when a zoning authority amended a zoning ordinance "in bad faith or with an intent to delay"); *TSB Holdings, L.L.C. v. Bd. of Adjustment for City of Iowa City*, 913 N.W.2d 1, 15 (Iowa 2018) (Iowa law) ("When a zoning authority adopts a new zoning regulation designed to frustrate a particular applicant's plans for development, it can be discerned that an improper purpose exists."); *Nathan v. Zoning Bd. of Appeals of Vill. of Russell Gardens*, 95 A.D.3d 1018, 1019 (N.Y.S.2d 2012) ("[T]his Court may apply the law in effect at the time the petitioners' application to the Zoning Board was made if the municipality unduly delayed proceedings and acted in bad faith.").

Although a zoning ordinance's validity is presumed, the Second Amended Complaint alleges plausible facts overcoming that presumption. The detailed factual support includes:

1. statements by Supervisors and their counsel (ECF 143, ¶¶ 4, 136-37, 143, 172-73, 292, 311, 313, 323 & 329);

2. the timing of the Ban, only months after the Zoning Resolution and Amendments and in the midst of active litigation (*Id.*, ¶¶ 1-4);

3. non-compliance with its own Comprehensive Plan (*Id.*, ¶¶ 232-33, 235-36, 237-42); and

14

4. the severity of the restrictions and the resultant ban of a previously long-permitted land use, which, under long-standing Nebraska law, rendered the use "per se" compatible. (*Id.*, ¶¶ 132, 191); *see also Whitehead Oil Co. v. City of Lincoln*, 245 Neb. 660, 677, 515 N.W.2d 390, 400 (1994) (citing *Pine Hill Concrete Mix Corporation v. Town of Newstead Zoning Board of Appeals,* 161 A.D.2d 1187, 559 N.Y.S.2d 48, 49 (1990)) ("[T]he inclusion of a use in the ordinance is a *per se* finding that it is in harmony with the neighborhood.").

North Fork Wind and the Landowners have thus plausibly alleged that the Amendments and Ban are void because Knox County enacted them in bad faith "to frustrate [North Fork Wind's] plans for development rather than to promote general welfare." *Dowd Grain,* 19 Neb. App. at 560, 810 N.W.2d at 192-93.

## B. Failure to Provide Notice [Count I, Subpart D]

The inadequate notice claim is straightforward. Zoning Resolution Section 11.01(4)(B)(5-7) requires the Planning Commission to mail written notice to all owners of land within 1,000 feet of the area impacted by any proposed amendment. (ECF 143, Ex. B).

The Second Amended Complaint alleges that "Planning Commissioners did not provide the required notice to all owners of land within 1,000 feet of the area impacted by the Amendments or Ban in direct violation of the requirements of the Zoning Resolution." (*Id.*, ¶ 220). Nothing more is required at the pleading stage.

## C. Failure to Comply with the Comprehensive Plan [Count I, Subpart E]

The Second Amended Complaint plausibly alleges that the Amendments and Ban are void for failure to comply with the Comprehensive Plan. Nebraska law requires counties to adopt a comprehensive development plan, and zoning regulations must be consistent with it. Neb. Rev. Stat. § 23-114.03. Inconsistent regulations

15

constitute "an unreasonable and arbitrary exercise of zoning power [and are] void."

*Davis v. City of Omaha*, 153 Neb. 460, 471, 45 N.W.2d 172, 178 (1950).

Moreover, Neb. Rev. Stat. § 23-114.02 requires that the comprehensive plan

include:

> (3) When a new comprehensive plan or a full update to an existing comprehensive plan is developed, an energy element which: Assesses energy infrastructure and energy use by sector, including residential, commercial, and industrial sectors; ***evaluates utilization of renewable energy sources***; and promotes energy conservation measures that benefit the community. . .

*Id*. (emphasis added).

The Nebraska Supreme Court has repeatedly struck down zoning regulations

that fail to comply with the comprehensive plan. *See, e.g.*, *Deans v. West*, 189 Neb.

518, 522, 203 N.W.2d 504, 506 (1973) (voiding Scott Bluff County's zoning regulations

adopted prior to a comprehensive plan); *Enter. Partners v. Cnty. of Perkins*, 260 Neb.

650, 659, 619 N.W.2d 464, 470 (2000) (nullifying Perkins County zoning regulations

for same reason); *Vill. of McGrew v. Steidley*, 208 Neb. 726, 738, 305 N.W.2d 627, 634

(1981) (invalidating village zoning ordinance under Neb. Rev. Stat. § 19-901, the

equivalent of § 23-114.03 for municipalities, because the village had not adopted a

comprehensive plan).

The Second Amended Complaint plausibly alleges that the Amendments and

Ban do not comply with Neb. Rev. Stat. §§ 23-114.02 and 23-114.03. (ECF 143,

¶¶-233–44). Knox County never amended the Comprehensive Plan prior to the

Amendments. (*Id*.). Purported "revisions" prior to the Ban were likewise deficient.

16

(*Id*.). The "revisions" were not publicly available before the hearings. (*Id*.). Even once adopted, they remained unavailable for months. (*Id*.).

Indeed, though briefly available when Defendants opposed Plaintiffs' Motion to Amend, the Comprehensive Plan is currently unavailable. Knox County Comprehensive Plan (last accessed July 29, 2025), https://knoxcountyne.gov/pdfs/planning_zoning/regulations/comprehensive_plan%20amended.pdf.

The "revisions" purportedly consisted of incomplete redlines striking provisions of Chapter 9 regarding renewable energy, even though Neb. Rev. Stat. § 23-114.02 requires the Comprehensive Plan's energy section to evaluate the utilization of renewable energy sources, like CWECS. (ECF 143, ¶¶ 233–44). The revised Comprehensive Plan fails to include such an evaluation. (*Id*.).

Even as allegedly "redlined," many provisions of the Comprehensive Plan continue to support renewable energy. Chapter 11 lists Knox County's average spring wind speed at 14 miles per hour—the highest in the state. (*Id*., Ex. A, p. 67). Chapter 12's Land Use Plan provides principles and limitations for county zoning regulations across 11 land use categories (*Id*., p. 119). Photographs of solar panels are included. (*Id*., p. 119). Throughout the Comprehensive Plan, "renewable energy equipment" is designated a compatible use in areas of "primary agriculture," "transitional agriculture," "river protection corridor," "rural residential," and "commercial corridor." (*Id*., pp. 120-22, 125, & 127).

The Comprehensive Plan further states: "Knox County should review and accommodate, wherever possible, any new or alternative development concepts or proposals, provided such concepts or proposals are consistent with and do not compromise in any way the established disposition of land uses on the Land Use Map or the goals and policies of the Plan." (*Id.*, p. 130). The "Commercial Corridor Policies and Strategies" subsection adds that "[t]he county should encourage industrial development that bases its products on renewable and indigenous raw materials." (*Id.*, p. 131). The Amendments and Ban directly contradict these provisions, violating Neb. Rev. Stat. §§ 23-114.02 and 23-114.03.

Finally, the Comprehensive Plan, as allegedly amended, is not before the Court on the Motion to Dismiss. The claim thus requires discovery.

**III.    To the Extent the Partial Motion to Dismiss Addresses Count I, Subpart E, Knox County Misconstrues Nebraska Law and Its Authority Thereunder.**

Knox County's opening brief largely fails to rebut North Fork Wind and the Landowners' contention that the Amendments and Ban violate Nebraska law. (ECF 147, pp. 8-9). Nebraska law does not permit Knox County's effective and outright bans of CWECS.

The interpretive standards are familiar. "Statutory language is to be given its plain and ordinary meaning, and an appellate court will not resort to interpretation to ascertain the meaning of words which are plain, direct, and unambiguous." *Heiden v. Norris*, 300 Neb. 171, 176, 912 N.W.2d 758, 762 (2018) (citing *Davis v. Gale*, 299 Neb. 377, 908 N.W.2d 618 (2018)). "[W]hen construing a statute, [a] . . . court must look to the statute's purpose and give to the statute a

18

reasonable construction which best achieves that purpose, rather than a construction which would defeat it." *Johnson v. City of Fremont*, 287 Neb. 960, 966–67, 845 N.W.2d 279, 286 (2014) (citing *Hess v. State*, 287 Neb. 559, 562, 843 N.W.2d 648, 653 (2014)). And "components of a series or collection of statutes pertaining to a certain subject matter are *in pari materia* and should be conjunctively considered and construed to determine the intent of the Legislature, so that different provisions are consistent, harmonious, and sensible." *Wisner v. Vandelay Investments, L.L.C.*, 300 Neb. 825, 850, 916 N.W.2d 698, 719 (2018).

A ban on CWECS violates Nebraska law. Neb. Rev. Stat. § 23-114.02 requires all comprehensive plans to dedicate an entire section to, among other things, "evaluate[] utilization of renewable energy." That support for renewable energy projects, like the Wind Farm, is carried over into other sections. *See, e.g.*, Neb. Rev. Stat. § 66-901 (declaring the purpose of the broader statutory scheme to be the promotion of public health, safety, and welfare by protecting Nebraskans' access to solar and wind energy resources); § 66-913 (authorizing counties and municipalities to incorporate specific zoning considerations, such as height, setback, and use of structures and vegetation, that encourage the use of solar energy systems and wind energy conversion systems and protect access to those energy sources); § 66-914 (providing for variances or exceptions from zoning or subdivision regulations that would otherwise prevent or unduly restrict the installation and use of solar energy systems or wind energy conversion systems, thereby safeguarding property owners' access to solar and wind energy); & § 66-1001 (setting forth legislative findings that

19

energy conservation is one of the most prudent means of meeting the state's energy needs, that publicly owned electric utilities should fund energy efficiency investments to avoid the greater costs of building new generation facilities, and that utility involvement in conservation programs serves a public purpose). Finally, Neb. Rev. Stat. § 23-114(1) allows counties like Knox County to "regulate the location and height of buildings and other structures."

In context, these statutes confirm that North Fork Wind and the Landowners have satisfied their plausibility burden. The Nebraska Supreme Court has long interpreted the power to "regulate" as restricting the "mode and manner of conducting the business [in question]." *Phelps, Inc. v. City of Hastings*, 152 Neb. 651, 655, 42 N.W.2d 300, 303 (1950). In doing so, the Nebraska Supreme Court emphasized that prohibitory regulations, like the Amendments and Ban, are beyond a county's power:

> the regulatory body may ordinarily consider the character of those operating the business, the place and hours of operation, the type of building and the sanitary condition thereof, the number of places to be licensed, and any other reasonable regulation ***that is not prohibitory***.

*Id*. (emphasis added); *see, e.g., Hickory Wind, LLC v. Vill. of Cedar Point*, __ N.E.3d __, 2025 WL 2180622 (Ill. App. 2025) (invalidating a zoning ordinance that banned wind farms because Illinois law only permits villages to "regulate" wind farms and "regulation and prohibition are not the same thing"); Neb. Att'y Gen. Op. 19-008 (May 29, 2019) (opining "the right to conduct a lawful business is a constitutionally protected right" and a zoning regulation that bans an otherwise lawful land use like wind farms may exceed the county's constitutional and statutory authority).

20

The Second Amended Complaint plausibly alleges that the Amendments and Ban exceed Knox County's statutory authority to "regulate the location and height of buildings and other structures" by prohibiting CWECS county-wide. As the Nebraska Supreme Court has emphasized: "That which is allowed by the general laws of the state cannot be prohibited by ordinance, without express grant on the part of the state." *Butler Cnty. Dairy, L.L.C. v. Butler Cnty.*, 285 Neb. 408, 432, 827 N.W.2d 267, 287 (2013). That is precisely what Knox County has done. "[A]n ordinance . . . cannot prohibit what the Legislature has expressly licensed, authorized, or permitted." *State ex rel. City of Alma v. Furnas Cnty. Farms*, 266 Neb. 558, 569, 667 N.W.2d 512, 523 (2003).

The claim is plausibly supported by statutory language and Nebraska Supreme Court precedent, none of which Knox County addresses in the page and a half it devotes to the issue. North Fork Wind and the Landowners are entitled to develop their claim in discovery, including through legislative history and other interpretive evidence.

## IV. The Partial Motion to Dismiss Count I, Subpart (A) Applies the Wrong Standard to North Fork Wind and the Landowners' Substantive Due Process Claim Under Nebraska Law.

Defendants' Motion to Dismiss the substantive due process claim under the Nebraska Constitution relies on the wrong standard of review. Unlike its federal counterpart, the Nebraska Supreme Court has long applied a version of intermediate scrutiny to land use regulations. Neb. Const. art. I, § 3. The Nebraska Supreme Court's recent decision in N'Da v. Golden, 318 Neb. 680, 18 N.W.3d 570 (2025), leaves that standard undisturbed.

21

For over 50 years, the Nebraska Supreme Court has held that for land use regulations, "[t]he test of legitimacy is the existence of a real and substantial relationship between the exercise of those powers in a particular manner, and the peace, public health, public morality, public safety, or the general welfare of the city." *Stahla v. Bd. of Zoning Adjustment In & For Hall Cnty.*, 186 Neb. 219, 221, 182 N.W.2d 209, 212 (1970) (internal citations omitted).

The Court affirmed this standard verbatim in *Eckstein v. City of Lincoln*, 203 Neb. 741, 744, 277 N.W.2d 91, 93 (1979) (citing *Stahla,* 186 Neb. 219, 182 N.W.2d 209). Applying it, *Eckstein* overturned a Lincoln ordinance that—like Knox County's actions here—banned an entire category of previously permitted activities: wells within city limits. *Id.*

A four-judge concurrence confirmed that while ordinary economic regulations need only pass rational basis review, the substantial relationship test governs land use cases:

> Recognizing that a citizen's private property rights are cherished under our state Constitution, we do, in *Eckstein v. City of Lincoln*, insist upon a tighter nexus between the legitimate governmental purpose and the zoning ordinance at issue than the mere rational relationship identified in *State v. Michalski*.

*State v. Champoux*, 252 Neb. 769, 779, 566 N.W.2d 763, 769 (1997). As a result, the concurrence acknowledged, plaintiff was "correct in asserting that we required a real and substantial connection between the legitimate governmental interest and the challenged zoning ordinance in *Eckstein v. City of Lincoln, supra.*" *Id.*

22

Even as the Nebraska Supreme Court embraced rational basis review for traditional economic regulations in decisions *N'Da* relied on, it adopted the *Champoux* concurrence's position for land use cases. *Compare Scofield v. State, Department of Natural Resources*, 276 Neb. 215, 753 N.W.2d 345 (2008) (applying substantial relationship test to land use regulations), *with Keller v. City of Fremont*, 280 Neb. 788, 790, 790 N.W.2d 711, 712 (2010) (applying rational basis review to rental and hiring ordinance), and *Connelly v. City of Omaha*, 284 Neb. 131, 148, 816 N.W.2d 742, 758 (2012) (same).

The Nebraska Supreme Court again recognized the substantial relationship test for land use regulations in *Lingenfelter v. Lower Elkhorn Natural Resources District*, 294 Neb. 46, 881 N.W.2d 892 (2016). Lingenfelter challenged the Lower Elkhorn Natural Resources District's irrigation limitation, which prohibited irrigation of land unless previously categorized as irrigated in county assessor records. *Id.* at 49, 881 N.W.2d at 899. In unequivocal terms, the Court reaffirmed the substantial relationship standard: "To establish a substantive due process violation, the government's land-use regulation must be clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare." *Id.* at 74, 881 N.W.2d at 913. The Court then assessed the irrigation restriction under that standard. *Id.*

*Stahla, Eckstein, Scofield,* and *Lingenfelter* remain binding law for land use regulations. *N'Da* neither overruled nor, apart from a brief parenthetical about *Scofield,* mentioned any of those decisions. 318 Neb. at 703-05, 18 N.W.3d 587-88.

23

Moreover, *N'Da* by its terms applies only to facial challenges, not the as-applied challenge asserted here. *Id.*

The substantial relationship test, not rational basis review, governs North Fork Wind and the Landowners' substantive due process claim under the Nebraska Constitution. Indeed, Knox County does not even challenge the Second Amended Complaint under the substantial relationship test. (ECF 146, pp. 1-22). Nor could Knox County credibly do so. North Fork Wind and the Landowners have plausibly alleged that the Amendments and Ban are clearly arbitrary, unreasonable, and bear no substantial relationship to public health, safety, morals, or general welfare. (ECF 143, ¶¶ 195–210). The Amendments altered the Zoning Regulations for CWECS twice in less than two years. (*Id.*). The Ban then enacted a commercial renewable energy prohibition unprecedented in the State. (*Id.*). The Second Amended Complaint thus plausibly alleges a substantive due process violation under the Nebraska Constitution.

## V. North Fork Wind and the Landowners' Substantive Due Process Claims under Count I, Subpart (A), and Count III Are Plausible Under Any Standard of Review.

Rational basis is a more lenient standard. It is not, however, a rubber stamp for arbitrary government action. Even under rational basis review, the facts alleged satisfy the Rule 12(b)(6) burden. Under rational basis review, a challenged law is upheld "if there is any reasonably conceivable state of facts that could provide a rational basis." *F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993). When every asserted rationale is logically refuted, however, courts strike down the challenged law. *See, e.g., Town of Orangetown v. Magee*, 665 N.E.2d 1061 (N.Y. 1996) (revocation

24

of previously granted building permit denied substantive due process); *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 449-50 (1985) (home being too big not logical basis for permit denial when identical homes routinely granted permits); *Wheeler v. City of Pleasant Grove*, 664 F.2d 99, 101 (5th Cir. 1981) (enforcement of new ordinance that forbade construction of apartments denied substantive due process); *Chappelle v. Greater Baton Rouge Airport Dist.*, 431 U.S. 159 (1977) (ability to grasp politics not logically connected to land ownership); *U.S. Dep't of Agric. v. Moreno*, 413 U.S. 528, 534 (1973) (stimulating the agricultural economy not logically connected to whether people in a household are related or unrelated); *Turner v. Fouche*, 396 U.S. 346, 363-64 (1970) (no rational interest underlying property-ownership requirement for political office).

North Fork Wind and the Landowners have plausibly alleged facts demonstrating the Amendments and Ban are "truly irrational." *Anderson v. Douglas County,* 4 F.3d 574, 577 (8th Cir. 1993) (internal quotation omitted). Those facts are set forth in Section II(A). Two points bear emphasizing.

First, the Eighth Circuit has confirmed the viability of a substantive due process claim on facts like those alleged here. *In Koscielski v. City of Minneapolis*, 435 F.3d 898 (8th Cir. 2006), the court held that "[d]ue process claims involving local land use decisions must demonstrate the 'government action complained of is truly irrational, that is something more than . . . arbitrary, capricious, or in *violation* of state law,'" and that "[t]he action must therefore be so egregious or extraordinary as to shock the conscience." *Id.* at 902 (quoting *Anderson v. Douglas County,* 4 F.3d 574,

25

577 (8th Cir. 1993) and citing *County of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998)).

*Koscielski*'s primary claim was that the ordinance left only a "tiny handful of parcels in private land, most occupied by existing restaurants and adult entertainment establishments, not likely to move or become available at any time in the near future." The court held that "no reasonable juror could conclude the City's zoning ordinance was so irrational and egregious as to shock the conscience" on that ground alone. *Id.* at 903.

The court separately addressed a second theory—that the ordinance was "motivated by a personal and political animus, totally unrelated to any legitimate governmental function," like enacting a ban to prevail in litigation, thereby making the ordinance "truly irrational." *Id.* The court acknowledged the theory's viability as a substantive due process claim but disposed of it on summary judgment for lack of evidence. *Id.* (citing *Scott v. Greenville County*, 716 F.2d 1409 (4th Cir. 1983)).

In acknowledging the theory's viability, the court cited with approval the Fourth Circuit's *Scott* decision. *Id.* In *Scott*, the Fourth Circuit held that a developer stated a valid substantive due process claim when Greenville County's highest governing body unlawfully intervened to halt the ministerial processing of his building permit application for a 156-unit low-income apartment complex. *Id.* at 1412. That developer, like North Fork Wind, had spent years assembling the necessary approvals, financing, and federal subsidy commitments for his project on a parcel that was zoned to allow the use. *Id.* While his application was pending, the

26

City Council, responding to citizen opponents, as Knox County responded to the Wind Watchers, referred the matter to its Public Service, Planning and Development Committee, which issued a "permit freeze." *Id.* The moratorium directed lower officials to halt processing of building permits for the area of the project. *Id.* One official later testified that this was "the only occasion on which he had ever been instructed not to process a designated building permit." *Id.* at 1413. A state trial court subsequently ordered that the permit "immediately issue," finding "there was 'no legal basis for the intrusion by the County Council into the zoning certificate and building permit process.'" *Id.*

The developer sued in federal court and asserted a substantive due process denial. *Id.* The court found in his favor. *Id.* On the substantive due process claim, the court emphasized that "[t]he record unequivocally establishes that Scott [like North Fork Wind and the Landowners] was deprived of his building permit by the extraordinary and unlawful intervention . . ." *Id.* at 1419. Although the court acknowledged the general reluctance of federal courts to "'sit as 'zoning board[s] of appeals'" when presented with claims "at bottom amount[ing] only to 'the run of the mill dispute between a developer and a town planning agency,'" it recognized that "zoning action which is 'tainted with fundamental procedural irregularity, racial animus, or the like' does amount to an actionable denial of due process." *Id.* Where, as here, there is "fairly alleged a basis for finding either 'abuse of discretion [or] caprice in [a] zoning administrator's refusal to issue' a building permit, a Fourteenth

Amendment claim is properly stated." *Id.* (quoting *United Land Corp. of America v. Clarke*, 613 F.2d 497, 501 (4th Cir. 1980)).

The Fourth Circuit also relied on *Cordeco Development Corp. v. Vasquez*, 539 F.2d 256, 260 (1st Cir. 1976), to hold that local officials commit a constitutional violation by "singling out a permit applicant for adverse treatment due to illegitimate political or, at least, personal motives." *Scott*, 716 F.2d at 1419–1420 (internal quotations omitted). Such "'purposeful discrimination' against a particular individual" or entity violates the Constitution "even where no recognized class-based or invidious discrimination was involved." *Id.*

In support, the court noted that "the evidence indicates that the Council's moratorium on building permits was limited to the area in which Scott proposed to build, and that his was the only application pending in that area," concluding that "it therefore appears that the moratorium was directed solely to him." *Id.* at 1420. The court held "meritorious Scott's contention that, even if he fails to prove racially discriminatory motivation, he has been denied due process of law," because "[S]cott's property interest was taken from him by manifest arbitrariness and unfairness." *Id.* at 1420–21. The court expressly rejected the suggestion, like Knox County raised in its brief, "that there is no evidence showing the Council's action to have been extraordinary, extralegal, and in derogation of its regular practice of non-involvement in permit issuance." *Id.*

Second, Defendants' own authority shows dismissal is inappropriate at this stage. None of the cases on which Defendants rely were adjudicated on a Rule 12(b)(6)

28

motion. *See, e.g., Van Orden v. Stringer*, 937 F.3d 1162 (8th Cir. 2019); *Azam v. City of Columbia Heights*, 865 F.3d 980 (8th Cir. 2017); *Kansas City Taxi Cab Drivers Ass'n, LLC v. City of Kansas City, Mo.*, 742 F.3d 807 (8th Cir. 2013); *Singleton v. Cecil*, 176 F.3d 419 (8th Cir. 1999); *Koscielski*, 435 F.3d 898*; Chesterfield Dev. Corp. v. City of Chesterfield*, 963 F.2d 1102 (8th Cir. 1992). All of those cases advanced to summary judgment. *Van Orden* even proceeded to a bench trial.

While the Court highlighted, and Defendants stress, that rational basis review can be conducted at the pleading stage, those cases do not support denying discovery where the complaint plausibly alleges the challenged actions were taken for an illegitimate end. North Fork Wind and the Landowners have a right to develop evidence. *See, e.g., Cnty. Concrete Corp. v. Town of Roxbury*, 442 F.3d 159, 170 (3d Cir. 2006) (reversing dismissal of substantive due process claim where township was alleged to have rezoned lot historically in industrial district to rural residential to, like here, prevent previously permitted development activity); *MBSC Prop. S., LLC v. City of Myrtle Beach, S.C.,* No. 4:25-CV-1475-JD, 2025 WL 2484183, at *7 (D.S.C. Aug. 28, 2025) (denying motion to dismiss substantive due process claim alleging that city enacted ordinance to boost tourism revenue rather than promote health, safety, or welfare); *Grace Land II, LLC v. Bristol Twp.*, No. CV 18-5413, 2019 WL 4752026, at *6 (E.D. Pa. Sept. 30, 2019) (denying motion to dismiss substantive due process claim for arbitrary denial of building permits for outpatient recovery treatment facilities). Discovery is particularly critical where, as here, allegations are plausibly supported by on-the-record statements in public meetings, including the stated desire

29

to end this litigation through the Ban. (ECF 143, ¶¶ 79-143). Otherwise, rational basis review would be no review at all.

Indeed, the use of evidence to refute pretextual rationales is common where the most plausible explanation for a law is an illegitimate government interest. *See, e.g.*, *Cleburne*, 473 U.S. at 449 (citing record evidence to reject as pretext government's alleged interest in preventing bullying of mentally disabled by students from a nearby school as a justification for requiring a special use permit for a group home when the school already had mentally disabled students); *Plyler v. Doe*, 457 U.S. 202, 230 (1982) (record evidence cited to refute the assertion that illegal alien children are less likely to remain in state); *Craigmiles v. Giles*, 312 F.3d 220, 225 (6th Cir. 2002) (public-health justification for restricting casket sales refuted by evidence that retailers do not handle remains); *St. Joseph Abbey v. Castille*, 712 F.3d 215, 226 (5th Cir. 2013) (same).

Rational basis review was never intended as a smokescreen for commandeering public power for illegitimate ends, such as prevailing in active litigation or stopping an otherwise lawful development. *Kelo v. City of New London*, 545 U.S. 469, 477 (2005) ("[T]he City would no doubt be forbidden from taking petitioners' land for the purpose of conferring a private benefit on a particular private party."); *Cleburne*, 473 U.S. at 448.

In sum, North Fork Wind and the Landowners are entitled to discovery on their substantive due process claims, even under rational basis review.

30

**VI.    North Fork Wind and the Landowners Plausibly Alleged a Violation of the Dormant Commerce Clause in Count IV.**

Knox County's contentions on the Dormant Commerce Clause ignore the allegations of the Second Amended Complaint. North Fork Wind and the Landowners have plausibly alleged that the Amendments and Ban were impermissibly motivated by discrimination and protectionism—favoring local agriculture over out-of-state renewable energy companies—and excessively burden the interstate generation and sale of electricity. (ECF 143, ¶¶ 278–98). Those allegations must be presumed true at this stage.

A state law runs afoul of the negative implications of Congress' power "[t]o regulate Commerce among the several States" if its "practical effect" is to "control [commercial] conduct beyond the boundaries of the State." *Healy v. Beer Inst., Inc.*, 491 U.S. 324, 336 (1989). A state law is also unconstitutional when it imposes a burden on interstate commerce that is "clearly excessive in relation to the putative local benefits." *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970).

Where a complaint plausibly alleges impermissible discriminatory or protectionist intent, as here, the state or local actor cannot avoid Dormant Commerce Clause scrutiny by invoking the police power. The Second Amended Complaint alleges in detail that the Amendments and Ban "were motivated by economic protectionism and animus toward out-of-state businesses." (ECF 143, ¶¶ 278-298).

Allegations that show discriminatory intent include:

1. comments from Supervisors—like the intent to prevent another "company trying to ram another project down [the County's] throat"—and their legal counsel's statement that the Ban was

31

intended as the "final nail in the coffin" of North Fork Wind's case (*Id.*, ¶¶ 156 & 173);

2.  admissions from Knox County, in its brief, that it did not consider less restrictive options and instead perceives renewable energy as a "zero-sum game" and a "poor policy choice[]" by Nebraska public utilities to contract with "profit-seeking entities like [North Fork Wind]" (ECF 147, p. 19); and

3.  the Amendment and Ban's plain language and effect, to end commercial renewable energy in all of Knox County, while at the same time allowing non-commercial renewable energy infrastructure (ECF 143, ¶¶ 191, 282, Ex. K).

A claim that a law "constitutes proper exercise of police power is not final or conclusive," *Meyer v. Nebraska*, 262 U.S. 390, 400 (1923), regardless of whether it was enacted "in good faith" to "protect the health of the people." *Minnesota v. Barber*, 136 U.S. 313, 319 (1890). The mere "incantation of a purpose to promote the public health or safety does not insulate a state law from Commerce Clause attack." *Kassel v. Cons. Freightways Corp. of Del.*, 450 U.S. 662, 670 (1981) (plurality opinion); *see also Kan. City S. Ry. v. Kaw Valley Drainage Dist.*, 233 U.S. 75, 79 (1914) (emphasizing that a "state cannot avoid the operation of" the Commerce Clause "by simply invoking the convenient apologetics of the police power").

Knox County also cannot rely on *National Pork Producers Council v. Ross*, 598 U.S. 356 (2023). There, unlike here, the petitioners expressly disavowed any protectionism or discriminatory intent. *Id.* at 370 (emphasizing that petitioners "do not allege that California's law seeks to advantage in-state firms or disadvantage out-of-state rivals.").[4] By contrast, Knox County openly revealed its discriminatory and

---

[4] *National Pork Producers Council* did not even plausibly plead a substantial effect on interstate commerce, which North Fork Wind and the Landowners have done here. *Id.*, at 383; (ECF 143, ¶¶ 291-97).

32

protectionist intent at the hearings on the Amendments and Ban. (ECF 143, ¶¶ 121–92). That intent is further evidenced by the excessive burden on interstate commerce that *Pike* and its progeny have long recognized as actionable. "[T]he *Pike* line [of cases] serves as an important reminder that a law's practical effects may also disclose the presence of a discriminatory purpose." *Nat'l Pork Producers Council*, 598 U.S. at 377. *National Pork Producers Council* does not compel the Court to ignore that evidence, particularly at the pleading stage.

Finally, Knox County concedes that it did not explore less restrictive options. (ECF 147, p. 19). That concession is unavoidable given that the Zoning Resolution itself constituted a less restrictive option Knox County considered adequate less than two years before the Ban. (*Id.*). Today, Knox County impermissibly treats commercial renewable energy as a "zero-sum game" in violation of the Dormant Commerce Clause. (*Id.*). That "zero-sum game" mentality is exactly why North Fork Wind and the Landowners have a plausible Dormant Commerce Clause claim.

## CONCLUSION

For the reasons stated above, North Fork Wind and the Landowners request that the Court deny Knox County's Partial Motion to Dismiss and advance the matter to discovery.

Dated: February 27, 2026.

NORTH FORK WIND, LLC, Plaintiff,

By:     /s/Brian Barmettler
        Lindsay K. Lundholm (NE# 22224)
        Brian Barmettler (NE# 27017)
of      BAIRD HOLM LLP
        1700 Farnam Street, Suite 1500
        Omaha, NE 68102-2068
        Phone: 402.344.0500
        Fax: 402.344.0588
        Email: llundholm@bairdholm.com
        Email: bbarmettler@bairdholm.com

AND


GARNET A. ANDERSON; CHARLES L.M.
ANDERSON; HELEN CARLSON; MARDELL
HOCHSTEIN; MARVIN HOCHSTEIN; ELDON
KRONBERG; PATRICIA KRONBERG; RANDALL
REPENNING; DEAN STUECKRATH;
STEPHANIE STUECKRATH; ANGELA
WAMBERG; DAN WAMBERG; and WALTER
FAMILY FARM, LLC, Plaintiffs,


By:     /s/Steven G. Ranum
        Richard A. DeWitt (NE# 11002)
        Steven G. Ranum (NE# 24716)
of      CROKER HUCK LAW FIRM
        2120 S 72nd Street, Suite 1200
        Omaha, NE 68124
        Phone: 402-391-6777
        Email: rdewitt@crokerlaw.com
        Email: sranum@crokerlaw.com

34

**CERTIFICATE OF COMPLIANCE**

Pursuant to NECivR 7.1(d)(1)(D), I certify this brief complies with the requirements of NECivR 7.1(d)(1). Relying on the word-count function of Microsoft Word 365, this document contains 10,083 words. The word-count function was applied to all text, including the caption, heading, footnotes, and quotations.

**CERTIFICATE OF SERVICE**

I hereby certify that on the 27th day of February, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

David D. Begley
dbegley@lawyer.com


/s/Brian Barmettler

7077073.12

35