**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEBRASKA**

| | | |
|---|---|---|
| NORTH FORK WIND, LLC; et al., | ) | |
| | ) | |
| Plaintiffs | ) | Case no: 4:24-cv-03150 |
| | ) | |
| | ) | |
| | ) | **REPLY BRIEF** |
| | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| KNOX COUNTY, NEBRASKA; et al., | ) | |
| | ) | |
| Defendants. | ) | |

Prepared and submitted by:
David D. Begley, #16795
Special Knox County Attorney
dbegley@lawyer.com
4611 South 96th St., Ste 253
Omaha, NE 68127
(402) 915-0097

1

## ARGUMENT

### Section I

### A. Introduction

In the first instance, it must be noted that at the beginning of this litigation – and in the Second Amended Complaint ("SAC") – North Fork Wind ("NFW") alleged that the Amendments were so onerous that they would "render any conditional use permit application for the Wind Farm futile." Plaintiffs' brief in opposition to MTD SAC at 6 citing SAC ¶ ¶160-165 (hereinafter the "Feb. 27, 2026 brief").

NFW now complains about the Ban. But if NFW was unhappy with the Amendments and claims that they are an effective ban, then what's wrong with a total ban? There is no substantive difference between an effective ban and an actual ban. It's essentially the same thing. With the Ban, Knox County was open, obvious and transparent about its desire to get rid of wind energy in its county. And as the Court wrote at footnote 6 of the March 14, 2025 Order, "[t]here's no mechanism under Nebraska or federal law that prevents Knox County from banning commercial wind farms, *so long as is a conceivably or hypothetically rational reason to do so*." ECF #95 at 25-26. (emphasis added)

### A. Bad Faith [Count I, Subpart (C)]

*Dowd Grain Co. v. County of Sarpy*, 19 Neb. App. 550, 810 N.W.2d 182 (2012) stands for the proposition that a zoning ordinance in effect at the time of a trial court's decision on the merits controls. 19 Neb. App. at 559. Noteworthy in *Dowd Grain Co* is the fact that the Sarpy County Board enacted a revised zoning regulation **after** briefing in a

related appeal amongst the parties. *Id*. at 554. In other words, during active litigation the county government changed the zoning regulation. The Nebraska Court of Appeals had no problem with that and counsel for Dowd Grain didn't complain and allege bad faith.

If there really is a bad faith or "eleventh hour" rule in Nebraska, it certainly wasn't articulated in *Dowd Grain* and – according to the facts of that case and NFW's theory – it was ripe for announcing such a rule.

The key thing that NFW misses or ignores with its continued assertion that somehow Knox County has acted in bad faith is that Knox County's Ban promotes the general welfare. The *Dowd Grain Co*. court spoke clearly when it wrote that bad faith only comes into play, "if [the county] arbitrarily or unreasonably adopts a new regulation in order to frustrate an applicant's plans for development *rather than promote the general welfare*." *Id*. at 560. (emphasis added)

Knox County listed eighteen general welfare reasons to ban commercial wind energy. ECF #143, SAC, Ex. K. This case was never about stopping the development of a convenience store that some residents didn't like. The general welfare reasons for banning commercial wind energy in Knox County are substantial and cover a wide variety of legitimate items such as safety for crop dusters, viewscape pollution, changing the fundamental nature of the agricultural character of the county and economic harm to the county's tourism revenue. The Ban is entirely about the general welfare of Knox County; nothing more and nothing less. NFW insists that the Ban is all about it and that's not factual. The Ban applies equally to any developer who wants to despoil Knox County. Moreover, only commercial wind and solar projects are banned. Private use wind turbines

3

and solar panels are allowed. The pre-existing commercial wind projects have grandfather rights.

Of special note is the fact that since *Village of Euclid v. Ambler Realty Co.*, 272 U.S. 365, 395 (1926) the preservation of the character of neighborhood is a legitimate purpose for enacting a zoning ordinance.

A key thing that can't be forgotten in this litigation is that Knox County is an agricultural county and it wants to preserve that. NFW wants to convert Knox County into an industrial producer of electricity by expending $1.3 billion in order to generate 600 megawatts. SAC, ¶¶17, 70. Over 150 wind towers of a height exceeding our State Capitol building by over 200 feet can't be – under any stretch of the imagination – anything other than an industrial development.

NFW even recognized that Knox County doesn't have a personal animus towards it. At paragraphs 153 through 157 of the SAC, NFW discusses how the Board rejected a solar energy development proposed by a different company on September 18, 2024. The point here being that Knox County doesn't want industrial solar or wind developments in its rural county regardless of the identity of the developer; Nebraska-based or from another state.

An underlying assumption of NFW's counsel is that county boards have a statutory duty to approve conditional use permits or special permits if the application is complete and there is no request for a variance. That pet theory might well be decided by the Nebraska Supreme Court in *Topp et al. v. The County of Lancaster, et al.*, A 26-210. For

now, the point is that somehow NFW thinks it has an entitlement to build industrial facilities anywhere it wants. That's not the law and hasn't been since 1926.

At pages 13 and 14 of its brief, NFW cites cases about regulations that frustrate or delay a development. The Knox County Ban isn't about frustrating or delaying NFW's proposed development. The intent is to kill NFW's attempt to turn Knox County upside down and change its fundamental nature.

## B. Failure to Provide Notice [Count I, Subpart D]

Counsel is mindful that this is a Motion to Dismiss and evidence is not admissible, but the allegation that Knox County didn't mail written notice to all owners of land withing 1,000 feet of the area impacted is factually wrong.

## C. Failure to Comply with the Comprehensive Plan [Count I, Subpart E]

NFW asserts that Knox County is not in compliance "with its own Comprehensive Plan." February 27, 2026 brief at 14. Non-compliance is not the right word. Let's look at what the Comprehensive Plan actually says.

> Federal policy has a set a **goal** for 20% of all electricity, by 2020, in the United States to be from renewable sources such as solar and wind.
>
> So, what **can** Knox County do to be more sustainable? There are a number of activities that **can** be undertaken and pursued to make an impact. (emphasis added) SAC, Ex. A, p. 58.

Nothing in the Comprehensive Plan is mandatory. It is a wish list of goals and things that can or might be done but aren't required to be done. NFW, in fact, quoted the Comprehensive Plan's use of the word "encourage." SAC, ¶ 99.

5

The references to pre-existing wind energy developments in the Comprehensive Plan are simply historical facts. SAC, Ex. A, p. 60. NFW cited the two existing CWECS in Knox County. SAC, ¶ ¶ 67-68. But things have changed since Elkhorn Ridge and Crofton Bluffs were built. Knox County has learned from its mistakes and Knox County is not required to repeat its mistakes by allowing more wind developments. The best enterprises learn from their mistakes.[1]

NFW cites provisions of the Comprehensive Plan at paragraphs 82-99 of the SAC. Frankly, the Comprehensive Plan is a mostly worthless "make work" government document. The Knox County document itself inspires little confidence in the reader as the author repeatedly misspelled the word "intentionally."

*Deans v. West*, 189 Neb. 518, 203 N.W.2d 504 (1973) and *Enter. Partners v. Cnty of Perkins*, 260 Neb. 650, 619 N.W.2d 464 (2000) stand for the narrow proposition that a comprehensive plan has to be adopted before zoning regulations are enacted. Here, the Comprehensive Plan was in place before Knox County acted with the Ban.

Admittedly, Neb. Rev. Stat. §23-114.02 states that a comprehensive plan is to evaluate "utilization of renewable energy sources" but there's no requirement that a county has to approve of them. Renewable energy can be looked at, experimented with and then rejected after a county has experience with them. Every evaluation doesn't mandate approval. Moreover, a comprehensive plan is not a substitute for a county's regulations. The regulations control and opinions in a comprehensive plan about what

---

[1] "Don't turn one act of foolishness into two. Often we commit four to correct one. … The greatest of sages can commit one mistake, but not two; he may fall into error, but he doesn't lie down and make it his home." B. Gracian, *The Art of Worldly Wisdom* 121 (C. Mauer translation).

6

industrial developments might be compatible in an agricultural district are not binding on the county board.

Finally, Resolution 2025-19 states that the Comprehensive Plan "should encourage economic development projects that do not conflict with the agricultural character of the county." SAC, Ex. A, p. 36. On the one hand the Comprehensive Plan is supposed to look at renewable energy and, on the other hand, not encourage economic development projects that conflict with the agricultural character of Knox County. As a legal document, the Comprehensive Plan is hopelessly conflicted.

The most important point here is that the Knox County Board found, as a fact, that "Commercial WECS and CSCS panels are an industrial use that manufacture electricity which is inconsistent with the agricultural character of the county."  Resolution 2025-19 (10). That is a fact that NFW can't get around or ignore.

**Section II**

NFW slyly suggests that the Court was wrong when it wrote in footnote 6 that Knox County could ban commercial wind farms. Unless the Eighth Circuit says otherwise, footnote 6 is the law of the case.

At page 19 of its February 27, 2026 brief, NFW cites Neb. Rev. Stat. §23-114.02 that a comprehensive plan merely has to evaluate "utilization of renewable energy." With Resolution 2025-19, Knox County did evaluate renewable energy and found it wanting for good reasons, among them: decline in property values, danger to crop dusters, noise, shadow flicker, viewscape pollution, damage to substantial tourism revenue,

inconsistency with the county's agricultural character and the President's Executive Order encouraging the development of biofuels and fossil fuels.

*Hickory Wind, LLC v. Vill. of Cedar Point*, __ N.E.3d __ , 2025 IL. App. 3d 240513*, 2025 LX 392619, 2025 WL 2180622 (August 1, 2025) actually helps Knox County. The decision was premised upon what an Illinois non-home rule municipality can or cannot do. A Nebraska county has general zoning authority granted by state statute. Neb. Rev. Stat. §23-114.03.

But the main point of *Hickory Wind, LLC* was that the village's ordinance contradicted the clear public policy of the state of Illinois "to rapidly transition to 100% clean energy by 2050." P19. Nebraska has no such mandate. The citations by NFW to Chapter 66 do not begin to approach a Nebraska public policy requiring wind and solar energy. The Nebraska law of public policy was discussed at pages 8 and 9 of its January 23, 2026 brief.

*Butler Cnty. Dairy, L.L.C. v. Butler Cnty.*, 285 Neb. 408, 827 N.W.2d 512 (2013) doesn't help NFW as that case dealt with the narrow issue of whether a township had statutory authority to enact regulations that were not preempted by state laws or DEQ regulations. There's no state preemption issue here.

**Section III**

NFW asserts intermediate scrutiny is the test for land use regulations and that the rule hasn't changed after *N'Da v. Golden*, 318 Neb. 680, 18 N.W.3d 570 (2025). Assuming *arguendo* that the real and substantial relationship test applies for cases involving land use regulations, Knox County still prevails.

8

This Court's concurrence in *State v. Champoux*, 252 Neb. 769, 566 N.W.2d 763 (1997) noted that, "even accepting Champoux's bare assertion that his property rights have been abridged, I nonetheless conclude that the legitimate governmental interests identified by the city bear a real and substantial connection to the zoning ordinance at issue." 252 Neb. at 780.

The City of Lincoln zoning ordinance defined what was a family for purposes of a zoning district limited to single-family and two-family dwellings. A criminal complaint was filed and then a motion to quash based on the allegation that the ordinance was "unreasonable, arbitrary, in violation of the due process clause of the Nebraska constitution…." 252 Neb. at 770. The county court found the defendant guilty on stipulated facts. Both the district court and Supreme Court affirmed.

*Champoux* decided the legal question of whether the ordinance bore a substantial relationship to "the city's legitimate objectives of promoting community values and *a certain quality of living*…." *Id*. at 771. (emphasis added)

To prevail on a due process challenge to a zoning ordinance, "a litigant must prove that the conditions imposed by the city were unreasonable, discriminatory, or arbitrary and the regulation bears no relationship to the purpose or purpose sought to be accomplished by the ordinance." *Id*. Furthermore, "the ends-means fit need not be perfect; it need only be rational." *Id*. at 772.

In the present case, Knox County enacted Resolution 2025-19 per the authority granted to it under Neb. Rev. Stat. §23-114.03. Subsection (12) states that a specific purpose that promotes the health, safety, morals, convenience, order, prosperity, and

9

welfare of present and future Nebraskans includes "fostering the state's agriculture, recreation, and other industries." Subsection (13) encourages, "the most appropriate use of land in the county."

NFW has a giant problem with its claims of unconstitutionality as, "The validity of a zoning ordinance will be presumed in the absence of clear and satisfactory evidence to the contrary." *Id*. at 779 citing *Gas 'N Shop v. City of Kearney*, 248 Neb. 747, 539 N.W.2d 423 (1995).

Resolution 2025-19 (10) states that Knox County is agricultural in nature. Subsection (12) recites that, "the highest and best use of real estate in Knox County is for the efficient production of food rather than the inefficient production of electricity." These two provisions of the regulation exactly track Neb. Rev. Stat. §23-114.03 (12) and (13).  Just as with the Lincoln ordinance, the Knox County regulation promotes the public health and welfare and is rationally related to achieving those purposes. If the wind turbines are allowed to move into Knox County, the quiet and agricultural nature of the county will be destroyed and its valuable agricultural land will be put to an inefficient use. The City of Lincoln's ordinance wanted to preserve quiet neighborhoods and, frankly, not allow a number of rowdy undergrads living together in a single-family house. The quality of life in Knox County will be wrecked if NFW can build its 150 plus wind towers and *Champoux* says the that's a legitimate objective for the Ban.

This Court wrote in its *Champoux* concurrence about the litigant's "bare assertion" that the ordinance was violating his constitutional rights. NFW is doing the exact same thing with its *ipse dixit* assertions that "Amendments and Ban are clearly arbitrary, unreasonable, and bear no substantial relationship to public health, safety, morals, or

10

general welfare." Feb. 27, 2026 brief at 24. As this Court wrote in *Champoux*, "I nonetheless conclude that the legitimate governmental interests identified by the city bear a real and substantial connection to the zoning ordinance at issue." 252 Neb. at 780. The same result can be reached in this case.

## Section IV

In section V of its February 27, 2026 brief and on pages 24 to 30, NFW uses the words "irrational" and "illegitimate" six times. The use of these words betray the opinion and legal conclusions of a party that stands to make millions if this development is constructed. As Knox County has demonstrated repeatedly, the Ban is rational and related to its legitimate interests.

## Section V

The late Charlie Munger was a lawyer and his grandfather was a federal judge in Lincoln.[2] Charlie Munger was known for saying, when appropriate, "nothing to add" at the annual Berkshire-Hathaway meetings. Knox County has nothing to add to its previous discussion of the Dormant Commerce Clause.

## CONCLUSION

All of the Plaintiffs' claims and causes of action should be dismissed except for its Takings Claims that it alleges under the Fifth Amendment and Art. I, §21 of the Nebraska Constitution.

DATED: April 10, 2026.

---

[2] Judge Thomas Charles Munger served as a federal judge from 1907 to 1941.

11

KNOX COUNTY, NEBRASKA; THE
KNOX COUNTY BOARD OF
SUPERVISORS; THE KNOX COUNTY
PLANNING COMMISSION; MARTY
O'CONNOR; PATRICK J. LISKA; JAMES
SOKOL, JR.; DANNY SCHOLTE; and JIM
BORGMANN,
in their official capacities as KNOX
COUNTY SUPERVISORS; KELSY
JELINEK, KNOX COUNTY ZONING
ADMINISTRATOR; DOUG DESHAZER;
DEAN WILKEN; ROBERT GANZ; NEIL
CLAUSEN; ROBERT LARSEN; JIM
KOTROUS; KEITH NIELSEN; GREG
KUHLMAN; and DAVID A. ARENS, in their
official capacities as Members of the
KNOX COUNTY PLANNING
COMMISSION, Defendants

By:   /s/ David D. Begley
David D. Begley, #16795
Special Knox County Attorney
dbegley@lawyer.com
4611 S. 96th St., Suite 253
Omaha, NE 68127
(402) 915-0097
*Attorney for Defendants*

## CERTIFICATE OF COMPLIANCE

Pursuant to NECivR 7.1(d)(1)(D) I certify that this brief complies with the requirements of NECivR 7.1(d)(1). Relying on the word-count function of Microsoft Word 365, this document contains 2,926   words. The word-count function was applied to all text, headings, footnotes and quotations.

12

**CERTIFICATE OF SERVICE**

I hereby certify that on April 10, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which sent notification of such filing to all counsel of record.

/s/   David D. Begley