IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| NORTH FORK WIND, LLC, et al., | |
| Plaintiffs, | 4:24-CV-3150 |
| vs. | MEMORANDUM AND ORDER |
| KNOX COUNTY, NEBRASKA, et al., | |
| Defendants. | |

The plaintiffs are a commercial wind energy developer, North Fork Wind, LLC, and several landowners with whom North Fork Wind executed lease and easement agreements (collectively, "North Fork Wind"). North Fork Wind asserts the defendants, Knox County, the Knox County Planning Commission, the Knox County Board of Supervisors, and most of the individual members of those governmental bodies (collectively, "Knox County") wrongfully interfered with its planned development. This matter is before the Court on Knox County's second motion to dismiss (filing 146), following North Fork Wind's second amended complaint (filing 143).

## I. BACKGROUND

The facts of this case were detailed in the Court's previous orders. Filing 41; filing 142. In brief, North Fork Wind was pursuing a conditional use permit to begin building a commercial wind energy conversion system (colloquially, a wind farm) in Knox County. North Fork Wind had secured leases with landowners and had taken many of the prerequisite steps to obtain a permit to begin construction. But before North Fork Wind could apply for a permit, the county amended the zoning requirements related to the development. *See* filing

143 at 27. The amendments were enacted in response to the "Wind Watchers," a vocal group that opposed wind farm developments in Knox County, and specifically opposed North Fork Wind's planned development. *See* filing 143 at 24. North Fork Wind alleges, and Knox County does not dispute, that those amendments, enacted in June 2024, made the development economically unfeasible and otherwise made impossible the project as planned. Filing 143 at 34; *see* filing 147 at 13.

North Fork Wind filed the present lawsuit, asserting that the 2024 amendments violated certain state laws and infringed on various constitutional rights under both the Nebraska and federal constitutions. *See* filing 66. On Knox County's motion, the Court dismissed all but the claims under the Takings Clause of both the federal and Nebraska constitutions. *See* filing 95 at 1. The Court limited discovery to the single issue of whether North Fork Wind had vested a property interest in what became a non-conforming use of their property after the June 2024 amendments.

After discovery commenced, in July 2025, Knox County "adopted a permanent, county-wide ban on all commercial renewable energy developments". Filing 143 at 34. According to North Fork Wind, the stated goal of the ban was to "effectively terminate the ongoing litigation" and ensure North Fork Wind "could never develop the Wind Farm, irrespective of the outcome of the litigation." Filing 143 at 35. North Fork Wind alleges that at public hearings, members of both the public and the Planning Commission made discriminatory comments about North Fork Wind as an out-of-state company. *See* filing 143 at 37.

In response, North Fork Wind sought leave to amend their complaint. Over Knox County's opposition, the Court granted the motion. Filing 142. North Fork Wind's second amended complaint contains facts related to the

2

July 2025 ban and legal theories of relief. Knox County now moves to dismiss some of those additional claims.

## II. STANDARD OF REVIEW

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. While the Court must accept as true all facts pleaded by the non-moving party and grant all reasonable inferences from the pleadings in favor of the non-moving party, *Gallagher v. City of Clayton*, 699 F.3d 1013, 1016 (8th Cir. 2012), a pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. *Iqbal*, 556 U.S. at 678. Determining whether a complaint states a plausible claim for relief will require the reviewing court to draw on its judicial experience and common sense. *Id*. at 679.

## III. DISCUSSION

Knox County has properly moved to dismiss the following claims:

(1)   the zoning regulations violated North Fork Wind's substantive due process rights under both the Nebraska and federal constitutions, *see* filing 143 at 39, 54;

(2)   the zoning regulations are preempted by Nebraska law, filing 143 at 44; and

3

(3)    the zoning regulations violate the dormant Commerce Clause of the federal Constitution, filing 143 at 56.

Knox County did not address North Fork Wind's state law claims for bad faith, non-compliance with the Comprehensive Plan, and a lack of proper notice, in its opening brief. *See* filing 152 at 19; filing 147. While Knox County addressed those claims in its reply brief, filing 161, "a reply brief may not raise new grounds for relief." NECivR 7.1(c)(3). The Court considers Knox County to have abandoned its position on those issues by not initially briefing them. *See* NECivR 7.1; *accord Warren v. Nucor Corp.,* 150 F.4th 990, 996 n.4 (8th Cir. 2025); *cf. Smith v. United States,* 256 F. App'x 850, 852 (8th Cir. 2007).

Knox County appears to argue that some of North Fork Wind's claims are foreclosed by the "law of the case" doctrine, which may explain why it did not specifically seek to dismiss certain claims. *See* filing 147 at 2; filing 124 at 6. But as explained in the Court's earlier memorandum and order, that doctrine doesn't apply to interlocutory orders. Filing 142 at 4 n.1.

Relatedly, Knox County did not brief any of those claims for relief when it opposed as futile North Fork Wind's leave to amend their complaint. *See* filing 124. Despite numerous opportunities, Knox County has failed to directly confront and explain the purported deficiencies in North Fork Wind's claims, leaving the Court unable to rule completely in its favor.[1]

---

[1] In particular, the Court is skeptical that North Fork Wind's bad faith claim could survive a competently briefed motion to dismiss. North Fork Wind appears to argue that the Nebraska Supreme Court created a common-law standalone cause of action in *Whitehead Oil Co. v. City of Lincoln,* 515 N.W.2d 390 (1994), *see* filing 143 at 43. But *Whitehead Oil* explicitly applied now-abrogated federal takings law, *see* filing 95 at 15, and, "[t]o the extent *Whitehead Oil Co.* can be read as creating a 'due process takings' claim, it [has been] disapproved," *Scofield v. State, Dep't of Nat. Res.,* 753 N.W.2d 345, 357 (Neb. 2008). The Nebraska Supreme Court is

For the reasons explained below, the substantive due process, preemption, and Dormant Commerce Clause claims will be dismissed. North Fork Wind's claims for "bad faith," non-compliance with the Comprehensive Plan, and lack of notice, will proceed to discovery because Knox County didn't properly brief the reasons to dismiss those claims. North Fork Wind's preexisting Takings claim (*see* filing 95 at 38), will also continue to discovery for the reasons stated in the Court's previous ruling.

### 1. SUBSTANTIVE DUE PROCESS

### (a) Federal Constitution

The Court dismissed the substantive due process claims alleged in North Fork Wind's first amended complaint. Filing 95 at 30. North Fork Wind has renewed its claim as to the 2024 amendments, and raises a new one based on the 2025 ban. Filing 143 at 54-55. For the reasons articulated in the earlier order, North Fork Wind's substantive due process claim as to the 2024 amendments will be dismissed. Filing 95 at 27. The facts related to the 2025 ban likewise fail to state a claim as to substantive due process.

One point from the Court's earlier order needs clarifying. Substantive due process protects individuals from arbitrary government decisions, but there are two different analytical standards, depending on the type of government action challenged and/or the type of claim raised. *See Singleton v. Cecil*, 176 F.3d 419, 425 (8th Cir. 1999); *WMX Techs., Inc. v. Gasconade Cnty., Mo.*, 105 F.3d 1195, 1198 n.1 (8th Cir. 1997); *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998).

*Executive* actions are fatally arbitrary if government officials "used their

---

"not inclined" to create new common law rights, instead deferring to the Unicameral. *See Green Plains Trade Grp. LLC v. Archer Daniels Midland Co.*, 31 N.W.3d 577, 589 (Neb. 2026).

power in such an arbitrary and oppressive way that it shocks the conscience." *Azam v. City of Columbia Heights*, 865 F.3d 980, 986 (8th Cir. 2017); *Cnty. of Sacramento*, 523 U.S. at 846. On the other hand, absent a constitutionally protected "fundamental right," a *legislative* act is constitutional if it rationally furthers a legitimate state interest (generally known as the rational basis test or rational basis review). *E.g., Exec. Air Taxi Corp. v. City of Bismarck*, 518 F.3d 562 (8th Cir. 2008).

There's also some indication that, in the Eighth Circuit, the rational basis test applies to facial challenges, while the conscience-shocking standard controls as-applied challenges. *See WMX Techs., Inc.*, 105 F.3d at 1198 n.1; *Bellino Fireworks, Inc. v. City of Ankeny, Iowa*, 332 F. Supp. 3d 1071, 1095-96 (S.D. Iowa 2018); *Brasfield v. KGB City of Pine Bluff, Ark.*, No. 4:21-cv-918, 2024 WL 4350793, at *12 (E.D. Ark. Sept. 30, 2024). *But see Singleton*, 176 F.3d at 425; *Cnty. of Sacramento*, 523 U.S. at 846; *Grove Assisted Living, LLC v. City of Frontenac, Mo.*, No. 4:16-cv-1783, 2018 WL 3093520 (E.D. Mo. June 22, 2018). That makes some sense, as it is normally an "executive action" that "applies" a law to a particular person.

Most lawsuits based on zoning disputes arise because a permit is denied, which is executive action. Yet, the Eighth Circuit has used both the conscience-shocking standard and the rational basis test in reviewing facial challenges to zoning ordinances on substantive due process grounds. *See Koscielski v. City of Minneapolis*, 435 F.3d 898, 900 (8th Cir. 2006). In general, courts do not interrogate the true motivations behind passing legislation, but those reasons may be relevant under a conscience-shocking standard. *Compare, e.g., FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 315 ("it is entirely irrelevant for constitutional purposes whether the conceived reason for the challenged [regulation] actually motivated the legislature"), *with Chesterfield Dev. Corp.*

6

*v. City of Chesterfield*, 963 F.2d 1102, 1104 (8th Cir. 1992) ("fundamental procedural irregularity" or personal animus may implicate due process (quoting *Creative Env't, Inc. v. Estabrook*, 680 F.2d 822, 833 (1st Cir. 1982))).

So it's not entirely clear which standard—conscience-shocking or rational basis—applies to this case. Under Nebraska law, amendments to a zoning plan are legislative acts, *see Main St. Props. LLC v. City of Bellevue*, 968 N.W.2d 625, 676 (Neb. 2022), subject to rational basis review. And the alleged procedure Knox County used to promulgate those amendments, according to North Fork Wind, was tainted with unfairness, implicating the conscience-shocking standard. Assuming North Fork Wind has raised both facial and as-applied challenges to the ordinances,[2] for the reasons stated below, the facts alleged do not state a claim as to either.

### *Rational Basis*

North Fork Wind has no claim that it was deprived of a "fundamental right" enshrined in the Constitution. *See, e.g., Carpenter Outdoor Advert. Co. v. City of Fenton*, 251 F.3d 686, 689-90 (property rights are not created by the Constitution). It does not dispute that the rational basis test applies to its federal substantive due process claim. Filing 152 at 32-33. So, the claim will be dismissed if the law is hypothetically or conceivably related to legitimate

---

[2] To determine whether a challenge is facial or as-applied, courts look to the claim and the relief that would follow. *See Johnson v. Jacobson,* 804 F. Supp. 3d 927, 934 (D. Minn. 2025). If the claim and relief reach beyond the plaintiff, the challenge is facial, whereas an as-applied challenge limits relief to the party before the Court. *Id.* North Fork Wind's operative complaint seeks injunctive relief prohibiting Knox County from enforcing the challenged laws and a declaration that the laws are void, indicating only a facial challenge. *See* filing 143 at 60. But the facts alleged, and the arguments briefed, appear to implicate an as-applied challenge. *See, e.g.,* filing 152 at 32.

7

government interests. *E.g., Kan. City Taxi Cab Drivers Ass'n, LLC v. City of Kan. City,* 742 F.3d 807, 809 (8th Cir. 2013). A law will be upheld if *any* application is constitutional, and the burden is on the plaintiff to "negate every conceivable basis" for an ordinance's rationality. *Danker v. City of Council Bluffs, Iowa,* 53 F.4th 420, 423 (8th Cir. 2022); *WMX Techs.,* 105 F.3d at 1198. North Fork Wind argues that this is the rare case where a law cannot survive the extremely deferential standard.

The Court disagrees. The 2024 amendments survive this scrutiny for the reasons explained in the earlier order. *See* filing 95 at 24. The 2025 ban was similarly enacted because the Planning Commission found that wind farms "would significantly decrease property values," "emit constant noise and shadow flicker which disturbs nearby residents," "cause significant view-scape pollution," "present[] substantial health and safety issue[s] to crop dusting planes," etc. *See* filing 143-11 at 2. If even *one* of those justifications has some rational relationship to the enacted ban, the ordinance does not violate North Fork Wind's due process rights.

North Fork Wind does not substantively engage with any of these purported reasons. Rather, it argues that they were not the *true* motivations behind the 2025 ban, based on the Planning Commission's alleged bad faith. *See* filing 152 at 33. North Fork Wind relies on alleged statements by the lawmakers, the "timing" of the ban, the non-compliance with the comprehensive plan, and the "severity of the restrictions" compared to the original regulations. *See* filing 152 at 14-15. But none of that even tries to negate the conceivable, permissible reasons for enacting the ban—namely, aesthetics and safety.

As explained in the earlier order, even if the ban was allegedly enacted based on "false descriptions" or incorrect statements, a "legislative choice is not

8

subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data." Filing 95 at 24 (quoting *Beach Commc'ns*, 508 U.S. at 315). There is a conceivable relationship between aesthetics and safety—a legitimate governmental interest—and a ban on commercial wind farms. North Fork Wind has failed to state a claim under this theory of substantive due process.

*Conscience-Shocking*

A "run of the mill dispute between a developer and a town planning agency . . . not tainted with fundamental procedural irregularity, racial animus, or the like" is not sufficient to shock the conscience. *See Chesterfield,* 963 F.2d at 1104 (quoting *Creative Env't,* 680 F.2d at 833). North Fork Wind relies on *Scott v. Greenville County*, 716 F.2d 1409 (4th Cir. 1983), cited by the Eighth Circuit in *Koscielski*, to argue that a zoning authority's "purposeful discrimination" against a particular developer implicates due process. *See* filing 152 at 35-36.

But the holding in *Scott* did not rely on any animus against the developer; the analysis instead focused on the "procedural irregularity" in the government's "official permit processing actions." 716 F.2d at 1419. The Fourth Circuit determined that the plaintiff "was deprived of his building permit by the extraordinary and unlawful intervention of the county's highest governing body into the issuance process," 716 F.2d at 1419, and the evidence indicated a "moratorium on building permits was limited to the area in which [the plaintiff] proposed to build, and that his was the only application pending in that area . . . . Moreover, the city's zoning ordinance purported to remove all zoning enforcement powers from the City Council." *Id.* at 1420.

The facts alleged by North Fork Wind are not analogous. There was no "extraordinary and unlawful intervention" by some governmental body; rather,

the governmental body specifically tasked with promulgating zoning regulations amended its comprehensive plan in accordance with the applicable procedures. *See* filing 143-1 at 160 (procedure for amending Comprehensive Plan outside of Annual Review); Neb. Rev. Stat. § 23-114.01. While the Comprehensive Plan initially permitted developments like North Fork Wind's, Knox County held no fewer than five public hearings to consider whether to amend its zoning regulations in 2024 in response to vocal, organized opposition to the development. Filing 143 at 25-29. Following three public hearings, Knox County wholly banned developments like North Fork Wind's in 2025. Filing 143 at 34-38.

The facts alleged support an inference that North Fork Wind's planned development was the impetus for Knox County's zoning changes, but alleged animus towards wind farms is insufficient to demonstrate such "arbitrary and oppressive" government conduct that shocks the conscience. *See Azam,* 865 F.3d at 988. There is no "fundamental procedural irregularity" even when planning officials "clearly violate" or "distort" state law, nor when those officials allegedly exceed their authority. *Id.*; *see also Rozman v. City of Columbia Heights,* 268 F.3d 588, 593 (8th Cir. 2001) (en banc). Nor is a zoning ordinance invalid because of a lack of notice. *Chesterfield,* 963 F.3d at 1105.

While "there may be cases where land use decisions are so corrupted by the personal motives of local government officials that due process rights are implicated," those claims require more than allegations that "a land use planning decisionmaker does not like the plaintiff." *Bituminous Materials, Inc. v. Rice Cnty., Minn.,* 126 F.3d 1068, 1071 (8th Cir. 1997) (evidence of conflict of interest or intent to punish political opponent may qualify). Allegations of "personal animus" are insufficient, whether that animus is directed at a particular person, *see id.*, or at a particular type of development, *see Azam,* 865

10

F.3d at 986 (discussing *Gallagher v. Magner,* 619 F.3d 823 (8th Cir. 2010)).

Even if the Knox County officials harbored some animus against North Fork Wind's development specifically, it is not necessarily irrational or arbitrary for a government to amend its zoning laws in response to an unwanted pending or proposed development. *See Iowa Coal Min. Co. v. Monroe Cnty., Iowa,* 257 F.3d 846, 853 (8th Cir. 2001); *Koscielski,* 435 F.3d at 903; *Meyer v. City of Davenport,* No. 3:05-cv-106, 2007 WL 9711526, at *7 (S.D. Iowa Feb. 28, 2007) c*f. Doctor John's, Inc. v. City of Sioux City, Iowa,* 438 F. Supp. 2d 1005, 1035-36 (N.D. Iowa 2006) (substantive due process claim, with a First Amendment backdrop, survived summary judgment with evidence of "moving goal posts" and "irrational" content of ordinances "tailored" to unique characteristics of the plaintiff's "adult entertainment business").

The challenged ordinances were not designed to punish a political opponent, nor to favor an official with a conflict of interest. *Cf. Bituminous Materials,* 126 F.3d at 1071. Instead, the county acted in response to an unwanted development, in what it believed was in the best interest of the public. Such conduct does not shock the conscience in the constitutional sense. *Cf. Iowa Coal,* 257 F.3d at 853. North Fork Wind's due process rights are not offended.

### (b) Nebraska Constitution

North Fork Wind also argues its substantive due process rights under the Nebraska Constitution are infringed by the zoning ordinances. The analysis for such a claim is "coextensive with the analysis under the federal Due Process Clause." *N'Da v. Golden,* 18 N.W.3d 570, 587 (Neb. 2025). That is, in the absence of a fundamental right or suspect classification, an economic regulation is a valid exercise of police power if it is rationally related to a legitimate state interest. *Id.* at 588.

Before *N'Da*, Nebraska courts assessed substantive due process by considering whether "a real and substantial relationship" existed between the exercised police power and a legitimate state interest. *See id*; *accord Scofield, 753 N.W.2d at 357* ("To establish a substantive due process violation, the government's land-use regulation must be clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare."). Upon closer inspection, the *N'Da* court recognized that the phrase "real and substantial" as used in previous cases didn't actually signal a heightened standard of review. 18 N.W.3d at 588.[3]

North Fork Wind argues that *N'Da* only abrogated the due process standard for economic regulations, and left the analysis as applied to land use undisturbed. The Court is not persuaded. North Fork Wind points to *Lingenfelter v. Lower Natural Resource District,* wherein the Nebraska Supreme Court purportedly applied the "real and substantial" test to a land

---

[3] In the federal constitutional context, the "substantial relation" language is used to describe the rational basis standard; it does not signal some different, heightened standard. *E.g., Greenbriar, Ltd. v. City of Alabaster*, 881 F.2d 1570, 1577 (11th Cir. 1989) ("The relevant question for consideration is whether there existed a rational basis for the City's [action], or, phrased in the alternative, whether the City's action bore no substantial relation to the general welfare."); *Sylvia Landfield Tr. v. City of L.A.*, 729 F.3d 1189, 1193 (9th Cir. 2013) ("Governmental action is rationally related to a legitimate goal unless the action is clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare." (quotations omitted)); *S. Cnty. Sand & Gravel Co. v. Town of S. Kingstown*, 160 F.3d 834, 836 (1st Cir. 1998); *910 E Main LLC v. Edwards*, 481 F. Supp. 3d 607, 620 (W.D. La. 2020); *cf. Coal. for Equal Rts., Inc. v. Ritter*, 517 F.3d 1195, 1200 (10th Cir. 2008) (discussing historic conflation of standards); *Greater Chi. Combine and Ctr., Inc. v. City of Chi.*, 431 F.3d 1065, 1071 (7th Cir. 2005) (same); *accord Yim v. City of Seattle*, 451 P.3d 694, 701-02 (Wash. 2019) (en banc) ("the United States Supreme Court does not interpret the 'substantial relation' test as requiring heightened scrutiny" (collecting cases)).

12

use regulation proscribing irrigation on land unless it was historically classified as irrigated. 881 N.W.2d 892, 913 (Neb. 2016). But *Lingenfelter* also purported to apply the Eighth Circuit's standard: that government action only offends due process if it is so "egregious" or "irrational" that the "action exceeds standards of inadvertence and mere errors of law." *Id.* (quoting in *Condor Corp. v. City of St. Paul*, 912 F.2d 215, 220 (8th Cir. 1990) (describing conscience-shocking standard)). Ultimately, the court concluded:

> We cannot say that the [challenged] provision is so egregious and irrational that it exceeds standards of inadvertence and mere errors of law. To the contrary, it appears to be a reasonable means of conserving ground water, a resource essential to the general welfare. Because the look-back provision is not arbitrary or capricious in the constitutional sense, the district court did not err in rejecting Lingenfelter's due process challenge.

*Id.* at 914. This analysis indicates that the *Lingenfelter* court did not require more than a rational basis between the challenged law and the governmental interest. *Cf. N'Da*, 18 N.W.3d at 588 ("[W]e ultimately applied a rational basis test when we concluded that the ordinance at issue bears a reasonable relationship to the public's health, safety, and welfare." (discussing *Malone v. City of Omaha*, 883 N.W.2d 320 (2016))).

Neither North Fork Wind nor any of the cited cases actually describe what a "substantial relation" test requires. The focus of the analysis is the arbitrariness of the regulation, not the existence of a "substantial" relationship. *See, e.g., Scofield*, 753 N.W.2d at 358 ("the key inquiry in our analysis is simply whether the facts, as pled in the [plaintiffs'] complaint,

13

sufficiently allege an arbitrary and capricious act").

In response to vocal opposition to a proposed development, Knox County banned the type of project North Fork Wind sought to build. It cited concerns about property values, noises and "shadow flicker," safety issues related to crop dusting, and maintaining the agricultural character of the county. Filing 143-11. Those cited concerns are not subject to courtroom fact-finding, *see Beach Commc'ns,* 508 U.S. at 315, and are reasonably related to what Knox County has determined is best for the public good. *See Bucholz v. City of Omaha,* 120 N.W.2d 270, 275 (Neb. 1963). While there are allegations that the county was *also* concerned with this litigation, and that North Fork Wind's project motivated the changes in the law, the ordinance applies equally to any new commercial wind and solar developments in all of Knox County, and is not specifically targeted at North Fork Wind's development. The Court therefore rejects North Fork Wind's due process challenge under the Nebraska Constitution.

### 2. PREEMPTION

North Fork Wind asserts that the Knox County resolution banning commercial wind farms is void because it is preempted by state law. It argues that Knox County exceeded its statutory authority in banning wind farms because "[t]hat which is allowed by the general laws of the state cannot be prohibited by ordinance." Filing 152 at 29 (quoting *Butler Cnty. Dairy, LLC v. Butler Cnty.,* 827 N.W.2d 267, 287 (Neb. 2013)); *see also State ex rel. City of Alma v. Furnas Cnty. Farms,* 667 N.W.2d 512, 522 (Neb. 2003). Knox County argues that Nebraska does not have a universal policy promoting industrial wind developments. Filing 147 at 8.

The touchstone of the preemption analysis is legislative intent. The central question is not whether the legislature intended to grant authority to

14

municipalities to act concerning a particular matter, but whether the legislature intended to deny municipalities the right to legislate on the subject. *See City of Alma*, 667 N.W.3d at 521. Zoning regulations may be preempted in three circumstances: if the Unicameral explicitly declares its intent to preempt certain ordinances (express preemption), if such an intent can be inferred from a "comprehensive scheme of legislation" (field preemption), or if the regulation "actually conflicts with state law" (conflict preemption). *E.g., id.* at 522; *Butler Cnty. Dairy*, 827 N.W.2d at 287. Based on the propositions it cites, North Fork Wind appears to rely on conflict preemption. *See* filing 152 at 27.

The relevant statutes include § 23-114.02, which requires a county's comprehensive development plan to include "an energy element which: Assesses energy infrastructure and energy use by sector[;] . . . evaluates utilization of renewable energy sources; and promotes energy conservation measures that benefit the community[.]" Additionally, the Unicameral "authorized" counties to

> include considerations for the encouragement of . . . wind energy use . . . [including], but not be limited to, regulation of height, location, setback, and use of structures, the height and location of vegetation with respect to property boundary lines, the type and location of energy systems or their components, and the use of districts to encourage the use of solar energy systems and wind energy conversion systems and protect access to solar energy and wind energy. Comprehensive development plans *may* contain an element for protection and development of solar energy and wind energy access which will promote energy conservation and ensure

15

> coordination of solar energy and wind energy use with conventional energy use.

§ 66-913 (emphasis added). Counties are also "authorized" to grant a variance to existing zoning laws if such laws "would prevent or unduly restrict" the use of wind energy systems, "if such relief may be granted without substantial detriment to the public good and without substantially impairing the intent and purpose of such regulation or ordinance." § 66-914. The purpose of these statutes is "to promote the public health, safety, and welfare by protecting access to solar energy and wind energy." § 66-901.[4]

North Fork Wind would read these statutes as *requiring* counties to enact favorable zoning laws to wind energy developers. But that's contrary to their plain text. Counties are merely required to "assess" and "evaluate" renewable energy sources, not necessarily encourage them. § 23-114.02. The other statutes similarly "authorized" zoning authorities to encourage wind energy use in their regulations and variance decisions. §§ 66-913, 66-914. Nebraska law expressly recognizes that wind energy systems might pose risks to the public welfare, *see* § 66-914, so counties are in the best position to consider what is appropriate for their communities. The Unicameral chose to delegate to zoning authorities decisions about where wind farms should be allowed and what other restrictions should be placed upon them. While the state sought to "encourage" the use of wind energy, § 66-901, the Court can

---

[4] North Fork Wind also cites to § 66-1001, which encourages public utilities to fund "energy conservation" efforts. Filing 152 at 19-20. But neither that statute, nor the statutory scheme to which it is a part, concern where or how wind energy systems can be constructed or regulated. *See generally* §§ 66-1001 to 66-1011. The Court is not persuaded that such a provision is probative of a legislative intent to preempt county zoning of wind farms.

16

derive no legislative intent, implicit or explicit, to deny counties the right to prohibit wind energy if the county decides such a development would be a detriment to the public good in their jurisdiction. *See City of Alma,* 667 N.W.2d at 573.

North Fork Wind also cites an advisory opinion from the Nebraska Attorney General, which states: "if a county zoning regulation totally excluded a land use recognized by state law, that regulation might be found invalid." LB 373—County Zoning Provisions for Wind Energy Generation Projects, Neb. Att'y Gen. Op. No. 19-008 (May 29, 2019). But the Attorney General went on to opine that Nebraska law "allows, *but does not require,* counties to include considerations for the encouragement of solar energy and wind energy." *Id.* (emphasis added). That is in line with the plain reading of the statutes, which do not invalidate a county's decision to forbid certain types of land uses.

North Fork Wind continually cites the proposition that "an ordinance cannot prohibit what the Legislature has expressly licensed, authorized, or permitted," a proposition that arises in the conflict-preemption context. *See City of Alma,* 667 N.W.2d at 523 (citing *Herman v. Lee,* 316 N.W.2d 56, 59 (Neb. 1982)). But North Fork Wind has not identified a statewide law expressly licensing, authorizing, or permitting commercial wind farms in Knox County. *Cf. Arrow Club, Inc. v. Ne. Liquor Control Comm'n,* 131 N.W.2d 134, 138-39 (Neb. 1964) (city ordinance prohibiting sale of liquor on Sunday by certain conflicted with state law explicitly permitting such sales). Rather, the state left that process up to zoning boards. There is also no statute with which the Knox County resolution conflicts, such that it would be impossible for the resolution to coexist with the statute. *Cf. City of Alma,* 667 N.W.2d at 523.

North Fork Wind also argues that the power to "regulate" does not include the power to "prohibit," so the challenged ordinance is invalid under

17

Nebraska law. Filing 152 at 20 (citing *Phelps, Inc. v. City of Hastings,* 42 N.W.2d 300, 303 (1950)). But Nebraska counties are vested with more than the power to "regulate" commercial uses of land. Rather, county zoning boards have the comprehensive power to "regulate and restrict" uses of buildings and "the uses of land for agriculture, forestry, recreation, residence, industry, and trade." § 23-114(2). Counties may "regulate, restrict, or prohibit the erection, construction, reconstruction, alteration, or use of nonfarm buildings or structures and the use, conditions of use, or occupancy of land." § 23-114.03. This argument is unavailing.

The state of Nebraska has not expressly divested counties of the ability to regulate commercial wind energy, nor has it enacted a comprehensive scheme of legislation such that localities are prevented from legislating in that area. To the contrary, state law expressly "authorized" zoning authorities to legislate in this field. § 66-913; 23-114.02. A county allowed to promulgate certain regulations is not obligated to do so, so it also cannot be said that the Knox County ordinances conflict with any particular statute. North Fork Wind has not stated a claim that the Knox County laws are preempted by state law.

### 3. DORMANT COMMERCE CLAUSE

Finally, North Fork Wind asserts Knox County's total ban on commercial wind farm developments runs afoul of the dormant Commerce Clause. The Commerce Clause grants Congress the exclusive power to regulate commerce amongst the states. U.S. Const. art. I, § 8, cl.3. The dormant Commerce Clause is the Commerce Clause's negative implication that prevents local governments from enacting laws that discriminate against or unduly burden interstate commerce. *E.g., Paul's Indus. Garage, Inc. v. Goodhue Cnty.,* 35 F.4th 1097, 1099 (8th Cir. 2022); *see also Nat'l Pork Producers Council v. Ross,* 598 U.S. 356, 370 (2023).

According to North Fork Wind, Knox County was "motivated by economic protectionism and animus toward out-of-state businesses" in passing the July 2024 amendment and the July 2025 resolution. Filing 152 at 18. The facts in support of that contention are that one opponent of North Fork Wind's development "claimed North Fork Wind could not be trusted" because it was a "Delaware LLC," and "[o]ther commenters warned about the loss of crop land for corn production." Filing 143 at 37-38. It also alleges that a "local ban on any type of energy generation imposes a substantial burden on the interstate electrical grid and on interstate electrical load balancing." Filing 143 at 57.

A prerequisite to any dormant Commerce Clause claim is that the plaintiff must be a competitor with some entity allegedly receiving favorable treatment. *E.g., Paul's Indus. Garage*, 35 F.4th at 1099-1100. Any notion of discrimination "assumes a comparison of substantially similar entities," and, in the absence of any "actual or prospective competition" in a single market, there can be no unlawful local preference. *Id.* at 1100. The dormant Commerce Clause doesn't prohibit differential treatment of companies that perform different services. *See id.* at 1100.

North Fork Wind cannot make this foundational showing. If state and local governments are "free to treat vacation homes differently from primary residences, humane societies differently from for-profit breeders, and brick and mortar liquor stores differently from their online counterparts," *Paul's Indus. Garage*, 35 F.4th at 1100 (internal citations omitted), so too are counties permitted to treat commercial wind farms differently from, say, corn fields, or non-commercial wind energy systems, *see* filing 152 at 32.

The dormant Commerce Clause protects the interstate market, not particular interstate firms or existing structures or methods of operations, from prohibitive or burdensome regulations. *Exxon Corp. v. Governor of Md.*,

19

437 U.S. 117, 127–28 (1978); *LSP Transmission Holdings, LLC v. Sieben*, 954 F.3d 1018, 1023 (8th Cir. 2020). North Fork Wind argues that a "local ban on any type of energy generation imposes a substantial burden on the interstate electrical grid and on interstate electrical load balancing." Filing 143 at 57. It alleges that the "Southwest Power Pool maintains federally enforced generation requirements," and that a "lack of energy generation capacity in Nebraska limits the energy available" to consumers in other states. Filing 143 at 58.

"In our interconnected national marketplace, many (maybe most) state laws have the practical effect of controlling extraterritorial behavior." *Nat'l Pork Producers*, 598 U.S. at 374. In the absence of some indication that a local law insulates in-state businesses from out-of-state competition *in the same market*, the dormant Commerce Clause stays dormant. The balancing test from *Pike v. Bruce Church, Inc.*, 397 U.S. 137 (1970), on which North Fork Wind relies, is meant to sniff out discriminatory intent or effect. *See Nat'l Pork Producers*, 598 U.S. at 378. But there can be no discriminatory effect where there is no discrimination. Equal treatment of in-state and out-of-state businesses providing the same service or product is not a burden on interstate commerce; "rather, it is a burden on intrastate commerce, which is not protected under the dormant Commerce Clause." *Waste Connections of Neb., Inc. v. City of Lincoln*, 697 N.W.2d 256, 264 (Neb. 2005).

The effects on the ban apply equally to Nebraska-based and out-of-state wind developers. Such a law does not implicate the dormant Commerce Clause. *Cf. Exxon Corp.*, 437 U.S. at 126 (dormant Commerce Clause implicated where law enacts barriers against interstate dealers, prohibition of flow of interstate goods, added costs to interstate goods, or disparate treatment between in- and out-of-state companies in retail markets). North Fork Wind has failed to state

20

a claim on this issue.

## IV. CONCLUSION

As explained in the earlier memorandum and order, the judiciary does not "sit as a superlegislature to weigh the wisdom of legislation." *Exxon Corp.*, 437 U.S. at 124 (quoting *Ferguson v. Skrupa*, 372 U.S. 726, 731 (1963)). Courts may not strike down laws because they may be "unwise, improvident, or out of harmony with a particular school of thought." *Ferguson*, 372 U.S. at 731-32. Whether Knox County's ban on renewable energy is *actually* in the public interest is a question to be challenged in the political process, not a legal one. Similarly, whether it is in North Fork Wind's best interest to continue to pursue the Knox County development in court, rather than selecting a more accommodating site, is a question best left to its stakeholders.

IT IS ORDERED:

1. Knox County's motion to dismiss (filing 146) is granted in part.

2. This matter is referred to the Magistrate Judge for case progression.

Dated this 12th day of August, 2026.

BY THE COURT:

John M. Gerrard
Senior United States District Judge

21