**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEBRASKA**

| | | |
|---|---|---|
| NORTH FORK WIND, LLC; et al.<br><br>Plaintiffs,<br><br>vs.<br><br>KNOX COUNTY, NEBRASKA; et al.<br><br>Defendants. | ) | 4:24-cv-3150<br><br>**ANSWER TO SECOND AMENDED COMPLAINT AND COUNTERCLAIM** |

COMES NOW the Defendants, and per the Court's Memorandum and Order (filing #164), and submit their Answer to the remaining causes of action in the Plaintiffs' Second Amended Complaint ("SAC") by admitting, denying and otherwise averring as follows:

1. Paragraph 1 is the opinion and legal conclusion of the Plaintiffs and Defendants therefore deny the same.

2. Defendants admit that Knox County passed Resolution 2025-19 and that it bans industrial wind energy (the "Ban") and that it enacted zoning regulations in July 2024 (the "Amendments") but denies that the Amendments were unduly restrictive.

3. Denies paragraph 3.

4. Admits paragraph 4.

5. Denies that Plaintiffs ever had a protected property interest and that it vested prior to the Amendments or the Ban. Memorandum and Order (filing #95) at 13.

*Whitehead Oil Co. v. City of Lincoln* (*Whitehead Oil I*), 234 Neb. 527, 451 N.W.2d 702, 706 (1990); *County of Saunders v. Moore*, 182 Neb. 377, 155 N.W.2d 317 (1967); *Worthwhile Wind LLC v. Worth Cnty*. *Bd. of Supervisors*, 34 N.W.3d 782 (Iowa, April 24, 2026).

6. Denies paragraph 6.

7. Admits that in paragraph 7 the Plaintiffs correctly cited and quoted two Nebraska cases but denies that the cases are relevant to this lawsuit.

8. Admits that in paragraph 8 the Plaintiffs correctly cited and quoted an opinion of the Nebraska Attorney General but denies that it is relevant to this lawsuit.

9. Admits that in paragraph 9 the Plaintiffs correctly cited and quoted a Nebraska case but denies that it is relevant to this lawsuit.

10. Admits that in paragraph 10 the Plaintiffs correctly cited and quoted a Fourth Circuit case but denies that it is relevant to this lawsuit.

11. In light of the Court's decision regarding the Plaintiffs' substantive Due Process rights, Defendants do not need to respond to paragraph 11.

12. In light of the Court's decision regarding the Plaintiffs' rights under the Dormant Commerce Clause, Defendants do not need to respond to paragraphs 12, 13 and 14.

13. Defendants deny paragraph 15.

14. Admits paragraphs 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51 and 52. Further

avers that Kelsy Jelinek is no longer employed by Knox County and that the position of Knox County Zoning Administrator is currently vacant.

15. Admits paragraphs 53 - 57.

16. Admits paragraphs 58 - 65.

17. Admits paragraph 66, but the use of the words “deeply” and “harvest” are opinions of the Plaintiffs which Defendants deny.

18. Admits paragraph 67 but asserts that since the construction of the 80-megawatt Elkhorn Ridge facility and 40-megawatt Crofton Bluffs facility the opinion of Knox County Board of Supervisors has changed regarding costs and benefits of industrial wind energy.

19. Admits paragraph 68 but alleges that facts and opinions of the majority of Knox County residents have since changed after Elkhorn Ridge was built.

20. Paragraph 69 is the opinion of the Plaintiffs and the Defendants are not required to admit or deny it.

21. Admits paragraph 70 to the extent that NFW intends to spend $1.3 billion, but Defendants can neither admit or deny whether the Wind Farm is Geronimo’s Power’s flagship project.

22. Denies paragraph 71.

23. Admits paragraph 72.

24. Admits paragraph 73.

25. Admits that the Wind Farm, if built, would supply electricity to the grid. Defendants allege that the federal tax credits for renewable energy production and investment for wind energy per 26 U.S.C. §§ 45 & 48 were phased out on July 4, 2026; reflecting a change in federal law. Admits that the Plaintiffs have accurately quoted Neb. Rev. Stat. § 66-901, but that the use of the words "can," "should," "encourage," and "possibility" in the statute renders it meaningless. Defendants deny that Nebraska and federal law and policy encourage wind energy production. Defendants, therefore, deny paragraph 74.

26. Paragraphs 75, 76, 77 and 78 relate to the Plaintiffs' Dormant Commerce Clause cause of action which the Court dismissed. Therefore, the Defendants are not required to admit or deny same.

27. Admit paragraph 79.

28. Admits paragraph 80 but allege that opinions of the Defendants changed when more facts regarding the Wind Farm were learned.

29. Paragraphs 81 – 99 all relate to the Comprehensive Plan. The Comprehensive Plan is not binding on the Knox County Board of Supervisors. *Smith v. City of Papillion*, 270 Neb. 607, 705 N.W.2d 584 (2005). Defendants therefore deny these paragraphs.

30. Admits paragraphs 100 – 107. Defendants further allege that Defendants learned new information after November 2023 regarding NFW's Wind Farm and that the Zoning Resolution is irrelevant to this case.

31. Defendants are without sufficient information to admit the allegations of paragraphs 108 and 109 and, therefore, deny same.

32. Defendants are without sufficient information to admit the allegations of paragraph 110 and, therefore, deny same.

33. Admit paragraphs 111 and 112. Defendants further allege that NFW's expenses alleged in these paragraphs are entirely "soft costs" of the Wind Farm.

34. Admit paragraph 113 and further allege that NFW's actual cost to construct two meteorological towers in Knox County was $53,208; this sum of money being the entire expense for the "hard costs" of the Wind Farm.

35. Admits that as alleged in paragraph 114, NFW hired consultants as part of its "soft costs" incurred for the Wind Farm development, but Defendants allege that any consultant expense NFW incurred to estimate anticipated economic and tax impacts was not required by the Knox County regulations or Nebraska law. Defendants deny any liability to NFW for same.

36. Admits paragraphs 115, 116 and 117, but denies that the Defendants have any liability to NFW for same.

37. Defendants are without sufficient information to admit or deny paragraph 118 and, therefore, denies same.

38. Admits paragraph 119. Defendants further allege that NFW's expenses alleged in this paragraph are entirely "soft costs" of the Wind Farm. Defendants deny any liability to NFW for same.

39. Admits paragraph 120 but denies that Defendants have any liability to NFW for "soft costs" incurred for the Wind Farm.

40. Notwithstanding opinions and legal conclusions, and except as further alleged in this paragraph, Defendants admit the factual allegations of paragraphs 121 – 143. With

respect to paragraph 126, Defendants allege that the meeting notice and agenda for the May 14, 2024 meeting was not required by Nebraska law to include the text of any proposed changes. With respect to paragraph 130, Defendants allege that it was not required by Nebraska law to direct any written notice to any impacted landowner in advance of the meetings of May 14, 2024, and June 11, 2024. With respect to paragraph 131, both sides of the issue discussed were limited in their time to speak.

41. Denies paragraph 144.

42. Denies paragraph 145 as it takes the written comments of former County Attorney Thomas out of context.

43. Admits paragraph 146.

44. Denies paragraph 147.

45. Admits paragraphs 148 and 149.

46. Denies paragraph 150 as it contains the opinion of NFW. Defendants allege that they fully complied with the public records request.

47. Admits paragraph 151.

48. Denies paragraphs 152, 153, 154, 155 and 156 as they relate to an unrelated solar project and have no relevance to this litigation. Defendants further allege that it had no legal duty to grant a conditional use permit to that applicant in light of the character and behavior of the management of that applicant. *Herink v. Bluestem Energy Sols.*, LLC, 32 Neb. App. 410, 999 N.W.2d 147 (2023).

49. Paragraph 157 contains the legal conclusions and opinions of Plaintiffs and, therefore, Defendants deny same.

50. Denies paragraph 158 and further allege that NFW and the Landowners do not have vested property rights per the Court's Memorandum and Order (filling #95) and *Moore* and *Worthwhile Wind, LLC*.

51. Denies paragraph 159.

52. Defendants are without sufficient information to admit or deny paragraph 160 and, therefore deny same.

53. Paragraphs 161 – 165 contains the legal conclusions and opinions of Plaintiffs and, therefore, Defendants deny same.

54. Paragraph 166 contains the opinion of NFW and Defendants is not required to admit or deny same.

55. Admits paragraph 167.

56. With respect to paragraphs 168 – 192, the Court upheld the constitutionality of the Ban in its Memorandum and Order of August 12, 2026. Filing #164. Defendants therefore deny same. Paragraphs 182, 183 and 188 all relate to Plaintiffs' Dormant Commerce Clause cause of action which was dismissed on August 12, 2026.

57. With respect to paragraphs 193 – 210, the Court dismissed the Plaintiffs' state law substantive Due Process claim and, therefore, Defendants are not required to answer these allegations. Filing #164.

58. Denies paragraphs 212 – 215 and further allege that NFW and the Landowners do not have vested property rights per the Court's Memorandum and Order (filling #95) and *Moore* and *Worthwhile Wind, LLC*.

59. Denies paragraphs 216 – 218 and further allege that the Court upheld the constitutionality of the Ban in its Memorandum and Order. Filing #164.

60. Denies paragraphs 219 – 221.

61. With respect to paragraphs 222 – 245, the Court dismissed the Plaintiffs' Preemption claim per its Memorandum and Order dated August 12, 2026. Filing # 164. As such, Defendants are not required to answer these allegations. Defendants further allege that the Comprehensive Plan is not binding on the Knox County Board of Supervisors. *Smith v. City of Papillion*, 270 Neb. 607, 705 N.W.2d 584 (2005). Defendants therefore deny those paragraphs referencing the Comprehensive Plan.

62. With respect to paragraphs 246 – 269, Defendants deny that the Plaintiffs had any vested rights under the Takings Clause and, therefore, deny all allegations. NFW has never applied for a conditional use permit and all but $53,208 of NFW's expenses were for "soft costs." Since NFW has not incurred "hard costs" for actual construction of the Wind Farm, NFW has no vested rights as a matter of law. *Worthwhile Wind, LLC, supra*. NFW never expended substantial money on hard costs and, thus, Defendants had no notice that NFW's Wind Farm was coming to the neighborhood. As such, Defendants do not have vested rights under the Takings Clause. *Moore*.

63. With respect to paragraphs 270 – 276, the Court dismissed the Plaintiffs' substantive federal Due Process claim and, therefore, Defendants are not required to answer these allegations. Filing #164.

64. With respect to paragraphs 277 – 298, the Court dismissed the Plaintiffs' Dormant Commerce Clause claim and, therefore, Defendants are not required to answer these allegations. Filing #164.

## AFFIRMATIVE DEFENSES

65. By way of affirmative defense, to the extent that Nebraska law requires publication of zoning ordinances Defendants allege that they complied with Nebraska law, substantially complied with Nebraska law or will cure any non-compliance by publication.

66. By way of affirmative defense, NFW constructed two meteorological ("met") towers in Knox County. Knox County consists of 1,140 square miles and is divided into 30 townships. The met towers are 198.25 feet in height. The cost of each met tower was $26,514. One met tower is located in 28-32-2 on land owned by Terrance Thunker. The other met tower is located in 27-30-2 on land owned by Dan Wamburg. Both met towers are approximately two miles distant from the county road and are surrounded by growing crops for most of the year.

NFW's proposed Wind Farm consists of 150-plus wind towers in Knox County. The Wind Farm's towers would run up the north-south spine of Knox County for nearly its full length of 28 miles. Based upon the location and construction of NFW's two met towers two miles distant from the county road, NFW's proposed physical use of the land was not made known to the neighborhood that all 150-plus sites (as yet unknown) would be used for a commercial wind farm.

67. By way of affirmative defense, NFW has never applied for a conditional use permit and all but $53,208 of NFW's expenses were for "soft costs." The fact that NFW has not incurred "hard costs" for actual construction for the Wind Farm, NFW has no vested rights as a matter of law. *Worthwhile Wind, LLC, supra*.

WHEREFORE, having fully answered the SAC, Defendants request that the Court deny Plaintiffs' request for relief, dismiss the SAC with prejudice and at Plaintiffs' costs, and grant Defendants such further relief as the Court deems just and equitable.

## COUNTERCLAIM

COMES NOW the Defendants and for their Counterclaim against North Fork Wind, LLC, state and allege as follows:

1. North Fork Wind, LLC ("NFW") is a Delaware corporation with its principal place of business in Minnesota. The Landowners own real estate in Knox County. NFW and the Landowners filed their Complaint on August 23, 2024. At that time, NFW was a wholly owned subsidiary of National Grid Renewables Development, LLC, a United Kingdom corporation. National Grid Renewables Development, LLC was a subsidiary of National Grid, plc, a United Kingdom corporation that is publicly owned with its stock traded on the London Stock Exchange. National Grid is one of the largest investor-owned utilities in the world.

On May 29, 2025, National Grid Renewables Development, LLC was purchased by Brookfield Asset Management ("Brookfield"), a Canadian company, for the reported price of approximately $1.4 billion. National Grid Renewables Development, LLC changed its name to Geronimo Power, LLC. ("Geronimo Power").

As of August 2024, Geronimo Power had developed 13 wind energy projects in the United States and was growing its revenue and profitability by developing wind energy and other energy projects. More recent data suggests that Geronimo Power has 2 GW of

energy generation built, 1 GW under construction and 20 GW in the development pipeline. Upon information and belief, Geronimo Power has approximately 300 employees.

Geronimo Power sits inside a private Brookfield fund and there are no Securities and Exchange Commission reports of its financials. But it is estimated that Geronimo Power has current gross annual revenue in the range of $200 million to $350 million per year. If all 20 GW of its development projects are completed, it is estimated that Geronimo will have gross revenue of $2.5 billion to $3.5 billion per year and that revenue would produce a competitive ROI in the range of 12% to 15% per year; the ROI being Brookfield's stated target.

2. Approximately 8,300 people live in Knox County. The county government has 63 full-time employees. For the fiscal year 2024-2025, Knox County's revenue from taxes and other sources was approximately $14.6 million.

3. NFW desires to build a Wind Farm (as defined by NFW) in Knox County consisting of 150-plus wind turbines of a height of 600-650 feet tall. The projected cost of the Wind Farm is $1.3 billion. The Wind Farm has a nameplate capacity of 600 MW.

4. On July 24, 2024, Knox County amended its zoning regulations which increased the setback requirements for wind turbines and added some other new regulations regarding insurance, decommissioning and other matters (the "Amendments"). On June 11, 2025, per its Resolution 2025-19, Knox County banned industrial wind energy (the "Ban").

5. Plaintiffs' Complaint, First Amended Complaint ("FAC") and Second Amended Complaint ("SAC") have all consistently asserted that NFW's Fifth Amendment rights

under the Takings Clause and Neb. Const. Art. I, § 21 have been violated by the Defendants via government action in enacting the Amendments and the Ban. The Fifth Amendment is applicable to the states via the Fourteenth Amendment. 42 U.S.C. § 1983 allows a plaintiff to collect damages if rights guaranteed by the United States Constitution are violated. See, SAC, Count II; FAC, Count I, Complaint, Count I.

6. Plaintiffs' Complaint, FAC and SAC all alleged NFW had a **vested** right to complete development of the Wind Farm by virtue of substantial, lawfully made expenditures in developing the Wind Farm.

7. NFW alleged that it had spent $19.3 million to develop the Wind Farm prior to filing the Complaint. SAC, ¶115. NFW further alleged that it will need to spend $5.4 million before submitting a conditional use permit. SAC, ¶116. Finally, NFW claims it will need to spend $7.9 million in the future to complete its submission to Knox County. SAC, ¶119. All of these expenses are "soft" costs, that is, they are for items such as securing NFW's place in the Southwest Power Pool queue, engineering costs, lease payments, surveying, title work and the like. In other words, NFW has not expended money for the physical construction of the wind towers by purchasing and installing concrete, steel, wires and the like. Furthermore, no construction equipment or construction labor expenses to build the Wind Farm are included in the money spent by NFW. Within the construction industry, these type of expenses are known as "hard" costs.

8. At no time has NFW applied to Knox County for a conditional use permit for its proposed Wind Farm.

9. The only hard costs NFW has incurred was for the construction of two temporary meteorological towers at the total expense of $53,028.

10. NFW has alleged that Knox County will receive $2,820,000 per year in new tax revenue from the nameplate tax and yearly donations of $150,000 to the local charitable fund. These proposed payments are NFW's "carrot" to Knox County as a *quid pro quo* for a conditional use permit to build its Wind Farm.

11. In the Complaint, FAC and SAC, NFW prayed for all damages as allowed by law and all attorneys' fees, court costs, and any expert fees allowed by 42 U.S.C. § 1988. Defendants fairly understand that NFW alone is claiming damages of at least $32.6 million. These alleged damages are the "stick" that NFW is using to obtain a conditional use permit from Knox County via this litigation.

12. On March 14, 2025, the Court issued its Memorandum and Order (filing #95) with respect to the Defendants' Motion to Dismiss. At pages 13-18, the Court informed NFW of its holding on the issue of vested property rights. *Whitehead Oil Co. v. City of Lincoln* (*Whitehead Oil I*), 234 Neb. 527, 451 N.W.2d 702, 706 (1990) and *County of Saunders v. Moore*, 182 Neb. 377, 155 N.W.2d 317 (1967) were analyzed. NFW was told what the law of Nebraska is. After March 14, 2025, NFW was on notice that its vested property rights theory under the Fifth Amendment to the United States Constitution and Neb. Const. Art. I, § 21 was no longer warranted under existing Nebraska law.

13. On June 30, 2025, Defendants filed their motion for summary judgment (filing #107) with evidence and a brief. The brief (filing #108) discussed *Moore* and applied its holding to the facts of this case. The prayer of the motion for summary judgment was to

dismiss NFW's Fifth Amendment and Nebraska corollary cause of action; Count I of the FAC.

14. On July 8, 2025, Plaintiffs filed a motion for leave to file a Second Amended Complaint. Filing #115. The Court granted that motion on December 5, 2025. Filing #142. The Plaintiffs filed their Second Amended Complaint on December 10, 2025. Filing #143. In the SAC, the Plaintiffs continued to assert that it had vested property rights under the Fifth Amendment to the United States Constitution and Neb. Const. Art. 1, § 21 and that it had suffered damages. SAC, Count II.

15. On January 23, 2026, Defendants dismissed, without prejudice, their Motion for Summary Judgment in light of the Court's decision to grant Plaintiffs leave to file the SAC. Filing #142.

16. On April 25, 2026, Defendants filed a motion for leave to file a supplemental brief regarding *Worthwhile Wind LLC v. Worth Cnty. Bd. of Supervisors*, 34 N.W.3d 782 (Iowa, April 24, 2026). Filing #162. The motion contained the citation and link to the Iowa Supreme Court case. Opposing counsel received a copy of the motion. The Court denied the motion on April 27, 2026. Filing #163.

17. NFW and its lawyers knew, or should have known, that without a valid conditional use permit, the expenses that NFW incurred do not support a vested property right claim. *Worthwhile Wind LLC*. NFW and its lawyers, knew, or should have known, that in order to have a legally valid claim of a vested property rights the facts must show that there was a physical change to the use of the land that was made known to the neighborhood. *County of Saunders v. Moore*, 182 Neb. 377, 155 N.W.2d 317 (1967).

Furthermore, the Court wrote, "But generally, a landowner has no vested right in the continuity of zoning in a particular area so as to preclude changes to the zoning laws. *Whitehead Oil Co. v. City of Lincoln*, (*Whitehead Oil I*), 451 N.W.2d 702, 706 (Neb. 1990). A person who purchases or leases land *intending* to use it in a way that later becomes nonconforming has no vested interest in the nonconforming use. *See id*.; *Saunders Cnty. v. Moore*, 155 N.W.2d 317, 319 (Neb. 1967); *City of Omaha v. Glissmann*, 39 N.W.2d 828, 833 (Neb. 1949)." Filing #95 at 13. (emphasis in original)

18. The "stick" part of NFW's carrot and stick litigation tactic was premised upon legal claims that were not warranted by existing Nebraska law. Once NFW was informed by the Court of existing Nebraska law on its Takings Claim under the federal and state constitutions, NFW could no longer assert a vested property rights claim. NFW's carrot and stick litigation tactic has worked a type of lawfare on Defendants.

19. The stick part of NFW's carrot and stick litigation tactic was presented for an improper purpose, that is, to intimidate and threaten a small rural county with potential damages in excess of the more than twice its annual tax revenue unless NFW received its conditional use permit for its Wind Farm notwithstanding the fact that the political will of Knox County was opposed to the Wind Farm and that there are legal, substantial and constitutionally-protected rights of Knox County to protect the health, safety and general welfare of Knox County residents. Knox County Resolution 2025-19 sets forth the good faith and legally recognized reasons why Knox County enacted the Ban to stop NFW from building its Wind Farm.

20. NFW's continued persistence claiming that it has a legitimate and legally recognized claim for money damages against Knox County for a federal and state Takings

Clause causes of action and that it had vested property rights due to the Amendments and Ban is bad faith in light of the Court's citation and analysis of *Moore* in its Memorandum and Order (filing #95) and the on all fours decision from Iowa in *Worthwhile Wind LLC*. NFW's failure to acknowledge the Court's holding regarding its Takings Clause decision is bad faith. *Lutheran Medical Center v. City of Omaha*, 229 Neb. 802, 429 N.W.2d 347 (1988).

21. The Eighth Circuit Court of Appeals has no authority to change the substantive law of a state regarding vested property rights and it only interprets state law as decided by a state's highest court.

22. Defendants have suffered damages as a result of NFW's actions and inactions set forth above.

WHEREFORE, Defendants pray that pursuant to F.R. Civ. P. 11 and the Court's inherent equitable powers, that the Court grant Defendants their attorney's fees and treble them in order to punish NFW for its actions in this litigation and to deter it from engaging in similar conduct in Nebraska and for such other and further relief as is just and equitable in the premises.

DATED: August 26, 2026.

KNOX COUNTY, NEBRASKA; THE KNOX COUNTY BOARD OF SUPERVISORS; THE KNOX COUNTY PLANNING COMMISSION; MARTY O'CONNOR; KEVIN G. MLADY, JAMES SOKOL, JR.; DANNY SCHOLTE; and JIM BORGMANN, in their official capacities as KNOX COUNTY SUPERVISORS; KELSY JELINEK, KNOX COUNTY ZONING ADMINISTRATOR, DOUG DESHAZER;

DEAN WILKEN; ROBERT GANZ; NEIL CLAUSEN; ROBERT LARSEN; JIM KOTROUS; KEITH NIELSEN; GREG KUHLMAN; and DAVID A. ARENS, in their official capacities as Members of the KNOX COUNTY PLANNING COMMISSION, Defendants

By: s/ David D. Begley

David D. Begley, #16795
Special Knox County Attorney
dbegley@lawyer.com
4611 S. 96th St., Suite 253
Omaha, NE 68127
Phone: 402-915-0097

**CERTIFICATE OF SERVICE**

I hereby certify that on the 26th day of August, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which send notification of such filing to the following:

Brian Barmettler
bbarmettler@bairdholm.com

Lindsay K. Lundholm
llundholm@bairdholm.com

Richard A. DeWitt
rdewitt@crokerlaw.com

Steven G. Ranum
sranum@crokerlaw.com

/s David D. Begley